UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

BEAUFORT DIVISION


United States of America,       )
                                )
          vs.                   ) 9:22cr00658-RMG-1
                                )
Russell Lucius Laffitte,        )
                                )
              Defendant.        ) July 27, 2022


TRANSCRIPT OF INITIAL APPEARANCE

BEFORE THE HONORABLE MOLLY H. CHERRY
United States Magistrate Judge, presiding


A P P E A R A N C E S:

For Government:          Emily Limehouse, Esquire
                         US Attorneys Office
                         151 Meeting Street, Suite 200
                         Charleston, SC 29401

                         Winston D. Holliday, Esquire
                         US Attorneys Office
                         1441 Main Street, Suite 500
                         Columbia, SC 29201


For Defendant:           Edward Bart Daniel, Esquire
                         Marshall Austin, Esquire
                         Nelson Mullins Riley and Scarborough
                         151 Meeting Street, Sixth Floor
                         Charleston, SC 29401


Recorded by Doneshia Gardner
Transcribed by Teresa B. Johnson, CVR-M-CM, RVR, RVR-M
U.S. District Court Reporter
300 E. Washington Street, Room 304
Greenville, S.C. 29601


Proceeding recorded by electronic sound recording, transcript
produced by transcription service.

P R O C E E D I N G S

1

2    (Proceeding begins at 10:19 a.m.)

3        **THE COURT:**  Good morning, Mr. Daniel.

4        **MR. DANIEL:**  Good morning, Your Honor.

5        **THE COURT:**  Mr. Austin.

6    Mr. Lafitte --

7        **THE DEFENDANT:**  Yes, ma'am.

8        **THE COURT:**  -- the purpose of this proceeding this

9    morning is to advise you of your rights, to advise you of the

10   charges against you in the indictment and the maximum penalties

11   associated with those charges and to make a decision about

12   release, if appropriate, in your case.  This is not a trial

13   that we're here for this morning.

14       You have the right to remain silent.  You do not have

15   to speak.  Anything that you do say may be used against you in

16   this proceeding and any future proceedings.  Do you understand

17   that?

18       **THE DEFENDANT:**  Yes, ma'am.

19       **THE COURT:**  Okay.  You have the right to have an

20   attorney to represent you.  I understand that Mr. Daniel and

21   Mr. Austin are here as your attorneys.  If, at any point in

22   time this morning, you need to speak privately with them, you

23   just need to let me know that and you -- you may do that.  All

24   right?

25       **THE DEFENDANT:**  Yes, ma'am.

1          **THE COURT:**  Now, Mr. Lafitte, did you receive a copy

2     of your indictment in this matter?

3          **THE DEFENDANT:**  I did.

4          **THE COURT:**  And have you had an opportunity to go

5     over the charges in the indictment with your attorneys?

6          **THE DEFENDANT:**  Yes, ma'am.

7          **THE COURT:**  Do you understand the charges against you

8     in the indictment?

9          **THE DEFENDANT:**  Yes, ma'am.  I do.

10         **THE COURT:**  Would you like for the Court to read the

11    charges in the indictment to you?

12         **THE DEFENDANT:**  No, ma'am.

13         **THE COURT:**  Okay.  All right.

14         Now, Ms. Limehouse, could you please go over the

15    penalties associated with those charges?

16         **MS. LIMEHOUSE:**  Yes, Your Honor.  The count is a --

17    the indictment is a five-count indictment.  The first count is

18    a violation of 18 U.S.C. 1349.  It charges conspiracy to commit

19    both wire fraud and bank fraud.  Count 2 is a substantive bank

20    fraud charge.  Count 3 is a substantive wire fraud charge.  And

21    Counts 4 and 5 charge misapplication of bank funds.  The

22    penalties for all of these charges are the same, Your Honor.  A

23    maximum term of imprisonment of 30 years, fine of a million

24    dollars, supervised release of five years, and a special

25    assessment of $100.

4

1          **THE COURT:**  Thank you.

2          And Mr. Lafitte, do you understand the penalties

3   associated with the charges against you in the indictment?

4          **THE DEFENDANT:**  I do.

5          **THE COURT:**  At this time, I'm going to ask the clerk

6   to enter a "not guilty" plea for you.  That will preserve all

7   of your rights in this matter, your right to review the

8   evidence the government has against you, and your right to a

9   trial.

10          **THE DEFENDANT:**  Thank you.

11          **THE COURT:**  In accordance with the Due Process

12  Protections Act and Rule 5(f) of the Federal Rules of Criminal

13  Procedure, the Court confirms the government's obligation to

14  disclose to the defendant all exculpatory evidence, that is

15  evidence that favors the defendant or cast doubt on the

16  government's case as required by Brady versus Maryland and its

17  progeny and hereby orders the government to do so.  Failure to

18  do so in a timely manner may result in serious consequences

19  including but not limited to exclusion of evidence, adverse

20  jury instructions, dismissal of charges, contempt proceedings,

21  disciplinary action, or sanctions by the Court.

22          Ms. Limehouse, what is the government's position on

23  bond?

24          **MS. LIMEHOUSE:**  Yes, Your Honor.  As you know from

25  review of the pretrial services report, Mr. Lafitte is facing

1  charges related to the conduct charge in this federal

2  indictment out of the State Grand Jury.  He has appeared on

3  those charges already and posted a substantial bond.  He was

4  given a million dollars' bond and, I believe, posted about

5  $200,000 to get bond in those charges.

6          Our request is only that you impose a relatively

7  nominal secured bond in addition to the state bond with some

8  special conditions that we would review with Your Honor and

9  that we have the opportunity to acknowledge that there may be a

10  change in circumstances, should his bond be reduced on the

11  state side, we might want to revisit the bond imposed by

12  Your Honor.

13          I will note for the record, Your Honor, that we do

14  have some victims here today that would like to be heard on the

15  matter.  Mr. Eric Bland is here on behalf of some of the

16  victims and he'd like to speak on their behalf.

17          **THE COURT:**  Okay.

18          **MR. BLAND:**  Good morning, Your Honor.

19          **THE COURT:**  Good morning, Mr. Bland.

20          **MR. BLAND:**  This is Alania Spohn.  She is one of the

21  victims.  Her sister Hannah Plyler is also a victim.  She's a

22  deputy sheriff with the Lexington County Sheriff's Department.

23  Her husband David back there is a deputy with the Richland

24  County Sheriff's Department.  This is my partner Ronnie Richter

25  and --

1        **MR. RICHTER:**  Good morning, Your Honor.

2        **THE COURT:**  Good morning.

3        **MR. BLAND:**  -- we're honored to represent them.

4        Your Honor, this is not the Alex Murdaugh case where

5   we argued on December 13 that he should not get bond.

6   Mr. Lafitte should get bond.  But this is not a parking ticket

7   case, Your Honor.

8        Mr. Lafitte was a conservator for these young women

9   when they were small children and multi-million-dollar recovery

10  was -- occurred.  Mr. Lafitte as a conservator, borrowed money

11  for himself from the conservator funds without any approval

12  from the probate court, not an order for the probate court.  In

13  addition, he loaned these girls' funds to Alex Murdaugh.  And

14  he charged himself and Alex Murdaugh a below-market interest

15  rate at the same time when the bank was getting loans to these

16  girls for litigation expenses at a 25 percent interest rate

17  when he was only charging himself a 2.25 percent interest rate.

18  They borrowed over $1.4 million from these girls without any

19  approval, without any consent, without any loan committee

20  approval in a direct conflict of interest.

21       In addition, when it came time to pay the girls off

22  when they turned 18 years old when they were due their money,

23  the allegations in the indictment are that they went to other

24  conservator custodian accounts and took money from Arthur

25  Badger and from the Pinckney accounts to pay these girls off.

1        During the course of seven years, there were hundreds

2    of overdraft fees that these girls had to pay because

3    Mr. Lafitte over drafted their account.  There were NSF checks

4    written.  And during this time, Mr. Lafitte, in addition to

5    collecting over $300,000 worth of conservator fees when the

6    settlements occurred from the accident that their mother and

7    their brother and they had significant personal injuries, he

8    was charging five percent a year for conservatorship fees which

9    he was applying against his loan balance.  So at this time,

10   there is still money that's owed to these girls.  Yes, they

11   were paid a lion's share of it from theft that occurred from

12   other accounts.

13       But Your Honor, in addition to being a banker,

14   Mr. Lafitte was an officer of the court.  You need to look at

15   him the same way you would look at a lawyer standing before you

16   who misappropriated and stole money.  He's an officer of the

17   court.  He swore an oath that he was going to follow the rule

18   of law, that he would come to the Court and ask permission from

19   the Court to do these things.  It was not done.

20       So we would ask that there be an additional bond, not

21   just a nominal bond, but a significant bond that needs to send

22   a message to people who take the oath before the Court that

23   they're going to honor the law.  And I would ask you,

24   Your Honor, to impose that type of bond that sends the message

25   to everybody who is going to be a personal representative,

1   who's going to be a conservator that when you take the oath,

2   it's not your money.  It belongs to the people who lost family

3   members, people who are suffering.  And that's what I would ask

4   Your Honor.

5           Mr. Richter, do you have anything to say?

6           **MR. RICHTER:**  Your Honor, if you could just indulge

7   me briefly.  Alania and her sister were only 9 and 12 years old

8   when they -- when their mother and brother died in that

9   accident.  They were -- they were rear seat passengers.  They

10  were seriously injured.

11          Substantial settlements were obtained.  There's no

12  question about that.  In part, the settlements were used to buy

13  annuities on the girls' behalf.  And those annuities provided

14  monthly payments that would have more than accounted for any

15  foreseeable need that they had.  But yet the decision was made

16  at that time to hold back a substantial sum of money.  And that

17  decision appears to have been made by Alex Murdaugh and by

18  Russell Laffitte.  Cause he would ask:  Why do you need to hold

19  back this substantial sum of money when they have an annuity

20  that's paying them a monthly benefit that's more than

21  sufficient to cover any foreseeable need?  The history kind of

22  plays out why that decision was made.

23          So it appears that over the passage of years, not

24  less than six loans were made from Russell Lafitte to -- to

25  himself.  Not less than eight loans were made from Russell

1    Lafitte to Mr. Murdaugh without -- without security, without

2    court approval, without -- without him being bonded by the

3    Court.  When the time came to repay those loans and they were

4    short, the answer was simply, "We'll -- we'll just take the

5    money from other accounts that we have in management."

6         And the other thing that we think is important for

7    you to understand in this setting is their mother is gone.

8    Their relationship with their father is not great.  Russ

9    Lafitte becomes a literal father figure to these girls.  "Can I

10   have a cell phone?  Can I have an allowance?  Can I have money

11   for school clothes?  Can I have money to buy Christmas gifts?"

12   This is the level of trust that they were reposing into

13   Mr. Lafitte that was abused.  All the time that they are

14   applying to him, "Can I use my money to go to Disney World?"

15   they have no idea that he's using that money to make pocket

16   loans to himself and to his friend Alex Murdaugh.

17        And we just want the Court to be aware of the full

18   context of the behavior here in this setting.  Obviously, we

19   entrust it to the good discretion of the Court.  Thank you,

20   Your Honor.

21        **THE COURT:**  Thank you.

22        **MS. LIMEHOUSE:**  Your Honor, in addition to the

23   $25,000 secured that we are requesting, we do ask that

24   Mr. Lafitte be ordered to forfeit his passport and an any

25   firearms that are currently in the home.  There is a -- he's

1  currently under house arrest is my understanding on the state

2  charges.  We request that we have a location monitoring order

3  in place.  My understanding is that the property is large and

4  that he does need to go about the property for farming

5  purposes.  We have not objection to drawing that perimeter sort

6  of around the exterior of that property so that he does have

7  the ability to -- to farm the property.

8         The other sort of condition that I think has also

9  similarly been imposed on the state charges.  This indictment

10  relates to charges that -- conduct that occurred while he was

11  an executive at the Palmetto State Bank.  He has many family

12  members including his father and sister who are still employees

13  and shareholders in that same bank.  My understanding is that

14  Mr. Lafitte remains a shareholder to this day in that bank.  We

15  do request that you order him not to communicate with his

16  family members or any employees, board members, shareholders,

17  or bank executives about the nature of these charges or about

18  the pending case, Your Honor, with the understanding that given

19  that he is still a shareholder, there may be some involvement

20  still in place with Palmetto State Bank.  But that he not be

21  able to discuss any of the conduct outlined in the indictment,

22  Your Honor.

23         **THE COURT:**  Thank you, Ms. Limehouse.  Anything

24  further, Ms. Limehouse, from the government?

25         **MS. LIMEHOUSE:**  Nothing further, Your Honor.

1          **THE COURT:**  Okay.

2          Mr. Daniel.

3          **MR. DANIEL:**  Your Honor, I'd defer to Mr. Austin.

4          **THE COURT:**  Okay.

5          **MR. AUSTIN:**  Good morning, Your Honor.

6          **THE COURT:**  Good morning.

7          **MR. AUSTIN:**  Your Honor, I'll start with you on

8    Mr. Lafitte's background and his personal characteristics.  As

9    the PSR, or the pretrial services report, reflects, he's a

10   lifelong resident of South Carolina in Hampton County

11   specifically.  He's only gone as far away as Newberry for

12   college.  And he has no desire to leave South Carolina.  He has

13   a substantial amount of family, a number of whom are here right

14   behind me.  And he has a ton of support in the community and

15   across the state.  He doesn't want to leave.  He's been

16   extremely active within his community both as CEO of the bank

17   but also just as a community member in general.

18          And so, Your Honor, with regard to some of the

19   allegations that are floating around in this case, it makes it

20   somewhat of an unusual case where it already is obviously very

21   unusual with the amount of publicity and pretrial attention.

22   But what's also strange is that there's very little

23   disagreement about the basic facts of the case.  Mr. Lafitte

24   doesn't deny serving as conservator or PR for a number of these

25   victims.  And he truly feels sorry for the victims and does not

1  deny that he was involved.  The only question is whether he

2  thought he was committing a crime.  And he adamantly contest

3  the allegations that he did.

4        We look forward to trying the case and him getting to

5  explain his side of the story because the amount of publicity

6  that has come down has been pretty overwhelming.  And much of

7  it is negative.  I mean, much of it is untrue.

8        And so, Your Honor, with regard to the bond,

9  Mr. Lafitte first met with SLED back in September 2021, I

10  believe over the phone.  In November, he met with them in

11  person and had a videotaped interview and he's had a number of

12  proffer interviews since.  He's met with the FBI and SLED and

13  the US Attorney's Office and the A.G.'s office together.  He's

14  also met and cooperated with ODC in their investigation as

15  well, I believe three different times.  And so he's not hiding

16  from anything.  He -- he's ready to accept responsibility.  He

17  just contests whether he's trying to commit a crime or not.

18        If he was a flight risk, I think that the government

19  in the state would have asked for him to -- would have gotten a

20  warrant for his arrest much earlier.  Instead, he's been

21  allowed to turn himself in every step of the way.  There's

22  never been any -- any indication that he wants to flee, wants

23  to hide from this.  If he did, he probably would have done it

24  back in September last year.  Instead, he's cooperated, like I

25  said, every single step of the way.

1          And so with regard to the state bond, we have a

2   motion pending.  I believe the hearing is going to be held next

3   week to modify the conditions of that bond.  While it is high,

4   what's interesting too is that in the previous hearing, no

5   evidence was put forward suggesting that he was a danger to the

6   community or a flight risk.  There's no testimony.  There was

7   not one piece of evidence offered.  It's just arguments of

8   counsel.  And so to piggy back on that, I think would be doing

9   him injustice because simply the fact that there's serious

10   allegations aren't enough to warrant limiting him the way that

11   he's being limited right now.

12          He's not trying to -- all he wants to do is work and

13   work and prepare for his defense.  And being able to

14   communicate with the witnesses in this case, which happen to be

15   family members and employees of the bank, is a critical part of

16   that.  So we would ask that he be allowed to, in a limited way,

17   whether it's through counsel or another avenue that the Court

18   sees fit to be able to meet and discuss the operative facts of

19   this case so he can prepare a defense.  So we would ask that he

20   not be limited in that way.  And I believe that's it,

21   Your Honor.

22          **THE COURT:**  Okay.  Thank you, Mr. Austin.

23          Ms. Limehouse, let me hear from you in terms of the

24   practical reality that Mr. Austin has just raised in terms of

25   preparing a defense and communicating with individuals.

1          **MS. LIMEHOUSE:**  I understand that his attorneys might

2    need to communicate with witnesses and their attorneys about

3    this case in preparation for this trial.  I stringently oppose

4    Mr. Lafitte being able to communicate with any family members,

5    any employees, bank executives, or shareholders about the facts

6    of this case.  And we stand by that objection, Your Honor.

7    There -- we acknowledge that there are family relationships and

8    we can't ask him to not communicate with those individuals as

9    family members.  But regarding the allegations contained in

10   this indictment, we stringently oppose Mr. Lafitte's request

11   individually to do so.

12         **THE COURT:**  Okay.  And Ms. Limehouse, I'm -- I'm

13   really considering more the practical reality behind -- I -- I

14   am going to restrict him from directly or indirectly contacting

15   any of these individuals with regard to the nature of the

16   charges in this case.  But indirect, in theory, could cover

17   counsel.  So I am going to carve out an exception --

18         **MS. LIMEHOUSE:**  Understood.

19         **THE COURT:**  -- for counsel to be able to adequately

20   prepare their defense of the -- the case.

21         **MS. LIMEHOUSE:**  Understood.

22         **THE COURT:**  All right.  Anything further, Mr. Austin,

23   before -- in light of the government's position, I am going to

24   give Mr. Lafitte a bond and a secured bond and I'll go over the

25   conditions.  But anything further before I do?

1          **MR. DANIEL:**  Your Honor, I have an issue.  We can do

2    it after bond or we can do it -- we can address it now, however

3    the Court pleases.

4          **THE COURT:**  Is -- does it potentially impact

5    conditions I impose?  How about if I go through my

6    conditions --

7          **MR. DANIEL:**  Yes.  Yes.  Yes.

8          **THE COURT:**  -- and then if it's something we need to

9    navigate, I'll --

10          **MR. DANIEL:**  That works.

11          **THE COURT:**  -- hear from you.

12          **MR. DANIEL:**  Thank you.

13          **THE COURT:**  All right.  Mr. Lafitte, so I am going to

14    give you a bond and release you in this matter.  I'm going to

15    give you a secured bond.  And the purpose of this bond -- my

16    considerations in giving a bond are -- you've heard the phrase

17    "flight risk" and "safety to the community." So those are the

18    factors that I am trying to balance in terms of the bond.  As I

19    indicated before, this is not the trial of your case.

20          So with that having been said, I'm going to give you

21    a secured bond in the amount of $500,000.  I'm going to require

22    $25,000 to be deposited into the court.  Okay.  So the bond is

23    secured, but I'm only requiring you to put $25,000 into court

24    in support of that bond.  But what that means, Mr. Lafitte, is

25    if you violate a condition of my bond, in addition to, in

1    essence, forfeiting the $25,000, the government can seek to

2    recover the remainder of that bond from you.  And I want to

3    make sure you understand that.

4              **THE DEFENDANT:**  Yes.

5              **THE COURT:**  Now, I'm also going to require you to

6    submit to supervision by the U.S. Probation Office.  And that

7    means if the officer tells you to do something or not do

8    something, you need to listen to the probation officer.  All

9    right?

10              **THE DEFENDANT:**  Yes, ma'am.

11              **THE COURT:**  I am going to order location monitoring

12   in this matter along with home detention.  That will allow you

13   to leave for attorney visits, doctor's appointments, things of

14   that nature.  So you are allowed to leave for those.  Also, in

15   recognition of what the government has highlighted, you will be

16   allowed to help on the farm or the property so you can move

17   around the property.  And so I'll make sure that's clear.  In

18   the bond, you're allowed to do that as well.

19              With regard to the location monitoring, I am going to

20   require you to pay for that monitoring service.  The probation

21   office will go over with you -- they've got a scale in terms

22   of --

23              **MR. DANIEL:**  Judge, may we point out something?  He

24   is currently on location monitoring.  He actually wears an

25   ankle bracelet for that purpose.  Can we remain on that same

1  one?  I don't -- we don't want a second one.  We don't want to
2  pay for a second one.
3          **THE COURT:**  Well, my concern is Mr. Austin just said
4  that you-all are going to seek to modify the conditions of the
5  state bond and I've got no control over that.  So I don't think
6  there's any way --
7          Ms. Broughton, can the probation office piggy back
8  any way off of the state system?
9          **THE PROBATION AGENT:**  No, Your Honor.  We are not --
10 we -- we have no control over that location monitoring that's
11 put on by the state.  Often, it's put on by bondsmen and we
12 cannot monitor that at all.
13         **THE COURT:**  Yeah.
14         **THE PROBATION AGENT:**  In the past, and Ms. Limehouse
15 can speak to this, we've had -- we've asked for it to be
16 removed by the state --
17         **MS. LIMEHOUSE:**  Yes.  What I'm willing to do is I
18 would much prefer that they do the monitoring rather than a
19 bondsman or someone on the state side.  What I'm willing to do
20 is reach out to the prosecutors on the state side once this
21 condition is imposed and his monitor is set up and ask that the
22 state monitor be removed.  I'm fine with consenting with that.
23         **THE COURT:**  Okay.  All right.  And I appreciate
24 the --
25         **MR. DANIEL:**  Yes, Your Honor.

1          **THE COURT:**  -- the reality behind that, Mr. Daniel.

2    Thank you for raising that.

3          **MR. AUSTIN:**  Judge, I have one thing to add to.  So

4    just by the nature of the work that he's doing on the farm, he

5    has to go to part stores and get, you know, various parts for

6    different machinery on the farm.  He's also got to go to -- we

7    have a list of places that he's been going that the current

8    electronic monitoring people are aware of.  And so we just ask

9    that those be included.  We can provide a list of those places

10   as well to probation.

11         **THE COURT:**  Ms. Limehouse, any objection from the

12   government?

13         **MS. LIMEHOUSE:**  I'll defer to probation in terms of

14   what they approve of for his leaving the area.

15         **THE COURT:**  Okay.  Is that something that we can

16   monitor?

17         **THE PROBATION AGENT:**  With home detention with

18   approval by the probation officer, he will be allowed to tend

19   to his work.  He'll just have to give a schedule in advance --

20         **THE COURT:**  Okay.

21         **THE PROBATION AGENT:**  -- of what that looks like.

22         **THE COURT:**  Okay.  All right.  So I will -- I will

23   include a condition that he is allowed for purposes of work

24   related to the farm on the condition that probation approves in

25   advance.  So you'll need to give a list of that to probation.

1    And I'm going to rely on approval from probation for that.  All

2    right?

3                **MR. AUSTIN:**  Thank you, Your Honor.

4                **THE COURT:**  Does that clarify --

5                **MR. AUSTIN:**  Yes, ma'am.

6                **THE COURT:**  -- or address that concern, Mr. Austin?

7    All right.

8                I'm also going to require you to surrender any

9    passport that you may have, Mr. Lafitte, and you're not allowed

10   to apply for any passport or international travel document.

11               **MR. DANIEL:**  Your Honor, that's already been done,

12   for the Court's benefit.

13               **THE COURT:**  Okay.  Thank you.

14               And you heard me talk earlier.  I am going to

15   prohibit you from contacting or communicating directly or

16   indirectly with any bank board members or family members

17   regarding the nature of the charges against you or the charges

18   in this indictment or this case.  I am going to carve out an

19   exception.  Your attorneys may do so in order to prepare your

20   defense in this case.  And I also recognize that there may be a

21   need to interact with them with regard to bank business.  That

22   is allowed, but you are not allowed to discuss the nature of

23   these charges or the indictment in this case.  That, you're not

24   allowed to discuss directly or indirectly with any of these

25   individuals.  Do you understand that, Mr. Lafitte?

1          **THE DEFENDANT:**  Yes, ma'am.

2          **THE COURT:**  Okay.  You may not possess a firearm,

3   destructive device, or other weapon.  If there are guns or any

4   other weapon in the home, those will need to be removed.

5          You may not use alcohol excessively.  And you must

6   report as soon as possible to the probation officer any

7   interaction that you have with law enforcement, any traffic

8   stop questioning, anything of that nature.  I realize that you

9   are, in essence, on home detention.  But there will be some

10  exceptions that allow you to travel for things related to the

11  farm.  So should you interact with law enforcement in any way,

12  you need to report that as soon as possible to the probation

13  office.

14         **THE DEFENDANT:**  Yes, ma'am.

15         **THE COURT:**  Ms. Limehouse, is there anything further

16  from the government regarding these conditions?

17         **MS. LIMEHOUSE:**  The only thing I'd like to clarify is

18  the issue of the passports just to notify them who has custody

19  of the passport so they can confirm.

20         **THE COURT:**  Okay.  So Mr. Daniel, it has not been

21  turned over to the probation office.

22         **MR. DANIEL:**  It's been turned over -- Your Honor,

23  that happened in the state proceeding.  Ms. Peggy Self, the

24  clerk of the State Grand Jury has possession of the passport.

25         **THE COURT:**  Okay.

1        And Ms. Broughton, is that satisfactory for probation

2    or do we need further confirmation?

3        **THE PROBATION AGENT:**  Yes, Your Honor.  We will

4    confirm.

5        **THE COURT:**  Okay.  All right.

6        Anything further, Ms. Limehouse?

7        **MS. LIMEHOUSE:**  Nothing further, Your Honor.  Thank

8    you.

9        **THE COURT:**  And Mr. Daniel or Mr. Austin, any issues

10   or concerns regarding these conditions?

11       **MR. DANIEL:**  Yes, Your Honor.  One issue.

12   Your Honor, the -- the victim's lawyers have been here today

13   and they have every right to make -- be here and represent

14   their victims here -- the victims have that right -- and to

15   make judicial statements.  However, they do not have a right to

16   make extra judicial statements or statements outside of this

17   court or some other court.  And disappointingly for our client

18   and also for our profession, there have been statements made by

19   some of the counsel in these related cases that, quite frankly,

20   aren't true.  They may not know they're not true, but they're

21   not true.

22       And while they have a right to make statements in

23   court, they don't have a right to make statements out of court.

24   Because our client Mr. Lafitte -- and with all this publicity

25   generated, we're going to fight and do our darndest to make

1   sure he gets a fair trial.  And I would ask the Court to assist

2   us in making sure he gets a fair trial by an impartial jury.

3          And -- and what I'm asking the Court, then, is in

4   this particular case, Your Honor, as cases in point, some of

5   the plaintiff's lawyers, who ever -- also represent the victims

6   have been having ongoing media interviews and doing press

7   conferences with Dick Harpootlian and the Murdaugh team.  We

8   haven't made any extra judicial statements.  All we ask is that

9   they be -- they be required to follow the rules.  Our client's

10  got that constitutional right to a fair trial and we demand

11  that he be given that right and he demand -- we demand the

12  protections.

13         We're not asking the court for a gag order,

14  Your Honor.  All we're asking is that the lawyer's involved in

15  this case follow the Rules of Professional Conduct which are

16  the rules that govern our profession.  And we would ask that

17  they maintain silence outside of the court proceeding.  Thank

18  you, Your Honor.

19         **THE COURT:**  Okay.  Thank you, Mr. Daniel.  Now, with

20  regard to compliance with any of the Rules of Professional

21  Conduct, that's a requirement of membership in our bar as are

22  several other oaths.  So I don't know that there's a necessary

23  order from the Court.  And I do not understand you to be

24  seeking a gag order at this time.  I will highlight I don't

25  think a district judge has been assigned to this case yet.

1       **MS. LIMEHOUSE:**  Judge Gergel, Your Honor.

2       **THE COURT:**  He has -- he does have it?

3       Then I think Judge Gergel would -- since he is going

4   to be the trial attorney in this case, would be the

5   appropriate -- trial judge in this case would be the

6   appropriate judge to address a gag order should that become

7   something either side anticipates needing in this matter.

8       **MR. DANIEL:**  Yes, Your Honor.  And if there's more

9   statements, then we'll take that issue with -- we appreciate

10  it, Your Honor.

11      **THE COURT:**  Certainly.  Certainly.  Anything further,

12  Mr. Daniel or Mr. Austin?

13      **MR. AUSTIN:**  No, Your Honor.

14      **THE COURT:**  Anything further, Ms. Lime house?

15      **MS. LIMEHOUSE:**  Nothing further, Your Honor.  Thank

16  you.

17      **THE COURT:**  So now, Mr. Lafitte, do you have any

18  questions for me regarding the terms of your release that I

19  went over with you?

20      **THE DEFENDANT:**  No, ma'am.

21      **THE COURT:**  Okay.  I just need to go over with you

22  some penalties and sanctions to which you'll be subject if you

23  violate a condition of your release 'cause I want to make sure

24  you understand those as well.

25      If you do, an arrest warrant may be issued for you

1   and you could be detained pending trial.  Further, you could be

2   prosecuted for contempt of court which could result in

3   imprisonment or a fine.  If you commit a crime while you're on

4   this bond, you could be sentenced to an additional term of

5   imprisonment to be served consecutive to any other sentence you

6   might receive.

7          There are further additional penalties for

8   intimidating or attempting to intimidate a witness, a juror, or

9   an officer of the court; obstructing a criminal investigation;

10  or tampering with or retaliating against a witness, a victim,

11  or an informant.

12         After you are released, if you fail to appear for

13  court at any time or if you fail to report to begin service of

14  any sentence that may be imposed, you could be prosecuted for

15  failure to appear and receive a consecutive sentence for that

16  offense.  Do you understand the penalties and sanctions that

17  I've just gone over with you?

18         **THE DEFENDANT:**  Yes, ma'am.

19         **THE COURT:**  Do you have any questions for me?

20         **THE DEFENDANT:**  No, ma'am.

21         **THE COURT:**  All right.  Ms. Limehouse, anything

22  further from the government?

23         **MS. LIMEHOUSE:**  Nothing further, Your Honor.  Thank

24  you.

25         **THE COURT:**  Okay.  And Mr. Daniel or Mr. Austin,

1    anything further?

2         **MR. DANIEL:**  Nothing further, Your Honor.

3         **THE COURT:**  All right.  This matter is adjourned.

4       (Proceeding concludes at 10:49 a.m.)

5

6                        * * * * * * * *

7                  **C E R T I F I C A T E**

8       I, Teresa B. Johnson, Official Reporter for the U.S.

9    District Court, District of South Carolina, hereby certify that

10   the foregoing is a true and correct transcript of the

11   electronically-recorded above proceedings, to the best of my

12   ability.

13

14   _____          ___08/02/2022___

15   Teresa B. Johnson, CVR-M-CM, RVR, RVR-M          Date

16

17

18

19

20

21

22

23

24

25