IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | CRIMINAL. NO. <u>9:22-cr-00658-RMG</u> |
| | ) | 18 U.S.C. § 2 |
| | ) | 18 U.S.C. § 656 |
| **vs.** | ) | 18 U.S.C. § 1343 |
| | ) | 18 U.S.C. § 1344 |
| | ) | 18 U.S.C. § 1349 |
| | ) | 18 U.S.C. § 981(a)(1)(C) |
| | ) | 18 U.S.C. § 982(a)(2) |
| | ) | 28 U.S.C. § 2461(c) |
| | ) | |
| **RUSSELL LUCIUS LAFFITTE** | ) | **SUPERSEDING INDICTMENT** |

**THE GRAND JURY CHARGES:**

At all times relevant to this Indictment:

1.     The Defendant, RUSSELL LUCIUS LAFFITTE, and his coconspirator, hereinafter referred to as "the Bank Customer", and others known and unknown to the Grand Jury, knowingly and intentionally devised a scheme and artifice to obtain money from the Bank Customer's personal injury clients. RUSSELL LUCIUS LAFFITTE used his position as director and employee of the Palmetto State Bank, while serving as the personal representative and conservator for the personal injury clients, to obtain money in the care, custody, and control of the bank, belonging to the personal injury clients.

<u>BACKGROUND</u>

2.     Palmetto State Bank ("PSB"), headquartered in Hampton, South Carolina, is a financial institution, as defined by Title 18, United States Code, Section 20, with deposits insured by the Federal Deposit Insurance Corporation ("FDIC").

3.     The Defendant, RUSSELL LUCIUS LAFFITTE, began working at PSB in 1997 where he served as a bank teller and loan officer until he became the Executive Vice President and

Chief Operating Officer in 2015. In 2020, RUSSELL LUCIUS LAFFITTE became the Chief Executive Officer of PSB. RUSSELL LUCIUS LAFFITTE also served on PSB's Executive Committee, responsible for reviewing and approving large loan applications, as well as on its Board of Directors. In early 2022, PSB terminated RUSSELL LUCIUS LAFFITTE's employment. At all times relevant to this Indictment, RUSSELL LUCIUS LAFFITTE served as an officer, director, agent, or employee of an FDIC-insured financial institution, as defined under Title 18. As both a director and executive officer, RUSSELL LUCIUS LAFFITTE was responsible for managing PSB's Hampton Branch, including its day-to-day operations, and keeping members of PSB's Executive Committee and Board of Directors informed about PSB's financial condition.

4. The Bank Customer was a personal injury attorney with the "Law Firm," located in Hampton, South Carolina. The Bank Customer, the Law Firm, and the Law Firm's other law partners maintained bank accounts at PSB and were long-time clients of the bank.

5. Given the Bank Customer's long-standing relationship with PSB and RUSSELL LUCIUS LAFFITTE, and RUSSELL LUCIUS LAFFITTE's role as manager of the Hampton branch, the Bank Customer and RUSSELL LUCIUS LAFFITTE established a close "professional" relationship. RUSSELL LUCIUS LAFFITTE handled nearly all of the Bank Customer's banking needs, including negotiating checks and extending loans, serving as the Bank Customer's primary point of contact at PSB.

6. The Bank Customer and the Law Firm asked RUSSELL LUCIUS LAFFITTE to serve as personal representative and conservator for various personal injury clients of the law firm; specifically, the Bank Customer's personal injury clients. RUSSELL LUCIUS LAFFITTE served as personal representative for A.P., H.P., N.T., H.P.Y., and M.W., persons known to the Grand Jury. RUSSELL LUCIUS LAFFITTE also served as conservator for the Estate of D.B., a person

known to the Grand Jury. RUSSELL LUCIUS LAFFITTE collected approximately $391,781.07 in fees as personal representative and conservator for the Bank Customer's personal injury clients.

### The Scheme to Defraud

7.    From in or around July 2011 through a date unknown to the Grand Jury, but up to at least October 2021, in the District of South Carolina, the Defendant, RUSSELL LUCIUS LAFFITTE and his coconspirators, the Bank Customer and others known and unknown to the Grand Jury, knowingly and intentionally combined, conspired, confederated, agreed and had tacit understanding with others, both known and unknown, and engaged in a scheme, plan, and artifice to defraud the Bank Customer's personal injury clients, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, by making false and misleading statements, and omitting facts necessary to make the statements truthful and not misleading.

8.    The Defendant, RUSSELL LUCIUS LAFFITTE, and members of the conspiracy, by means of false and fraudulent pretenses, made materially false and misleading statements and representations and did omit material information in an effort to obtain money and property from the Bank Customer's personal injury clients and the Law Firm, money which was owed by and in the care, custody, and control of PSB. To further the scheme, various members of the conspiracy at various times and places took the following actions:

### RUSSELL LUCIUS LAFFITTE actions as conservator for H.P. and A.P.

a.  The Bank Customer requested that RUSSELL LUCIUS LAFFITTE serve as conservator for his personal injury clients, A.P. and H.P., who received funds following settlements of civil lawsuits. As conservator, RUSSELL LUCIUS LAFFITTE maintained bank accounts at PSB for the conservatorship. RUSSELL LUCIUS

LAFFITTE collected $140,441.00 in conservator fees from A.P. and $113,314.00 in conservator fees from H.P.

b. While serving as conservator for H.P., beginning on July 18, 2011, RUSSELL LUCIUS LAFFITTE extended eight loans from the conservatorship accounts to himself, totaling $355,000.00. RUSSELL LUCIUS LAFFITTE never sought approval from the probate court to extend these loans, he never notified the Law Firm of the loans, and he never notified H.P. of the loans. RUSSELL LUCIUS LAFFITTE used his conservatorship and personal representative fees from other personal injury clients to pay off some of the loans. When H.P. turned eighteen years old, RUSSELL LUCIUS LAFFITTE had to pay back the entirety of the loans. RUSSELL LUCIUS LAFFITTE credited his conservator fees as H.P.'s conservator to reduce the amount owed on the loans. He then received a $245,000.00 private loan from a third-party to pay back the loans to H.P. in full. RUSSELL LUCIUS LAFFITTE is still paying off the private loan from the third-party.

c. While serving as conservator for H.P., RUSSELL LUCIUS LAFFITTE extended fourteen unsecured loans to the Bank Customer, totaling $990,000.00, from H.P.'s conservatorship account.

d. RUSSELL LUCIUS LAFFITTE extended the first loan to the Bank Customer from H.P.'s conservatorship account on September 14, 2011. At the time, the Bank Customer was overdrawn on his personal checking account at PSB. RUSSELL LUCIUS LAFFITTE transferred the loaned funds from H.P.'s conservatorship account into the Bank Customer's personal checking account to cover the overdraft. Thereafter, RUSSELL LUCIUS LAFFITTE continued to extend the Bank Customer hundreds of

thousands of dollars in unsecured loans, transferring the loaned funds into the Bank
Customer's personal checking account. Each time RUSSELL LUCIUS LAFFITTE
transferred funds from H.P.'s conservatorship account, the Bank Customer was
overdrawn on his personal checking account, often by tens of thousands of dollars.
RUSSELL LUCIUS LAFFITTE extended each loan to cover the Bank Customer's
overdrawn personal checking account.

e.  RUSSELL LUCIUS LAFFITTE never sought permission from the probate court to
extend these loans and never notified H.P. of the loans. RUSSELL LUCIUS
LAFFITTE never submitted a Petition for Expenditures or Order Allowing Purchases
to the probate court for approval of the loans.

f.  The Bank Customer used funds stolen from other personal injury clients to pay back
the loans to H.P. The Bank Customer presented RUSSELL LUCIUS LAFFITTE with
checks from the Estate of D.B, N.T., H.P.Y., and M.W., persons known to the Grand
Jury, disbursed following settlements of civil lawsuits. All of these checks referenced
the client on the memo line. RUSSELL LUCIUS LAFFITTE negotiated and distributed
all of the checks from funds the Bank Customer stole to repay his loans from H.P. After
the Bank Customer presented the disbursement checks, RUSSELL LUCIUS
LAFFITTE transferred the funds into H.P.'s conservator account, totaling
approximately $663,646.00.

g.  When H.P. turned eighteen and the Bank Customer had to pay off the remainder of the
loans from H.P.'s conservatorship account, RUSSELL LUCIUS LAFFITTE extended
a $500,000 line of credit to the Bank Customer, for purposes of "farming." Thereafter,
RUSSELL LUCIUS LAFFITTE issued a cashier's check from the line of credit totaling

$284,787.52, equal to the outstanding balance owed to H.P. by the Bank Customer. The Bank Customer then used those funds to pay off the remainder of the loan balance.

RUSSELL LUCIUS LAFFITTE's actions as personal representative for estate of D.B.

h. The Bank Customer requested that RUSSELL LUCIUS LAFFITTE serve as personal representative for the Estate of D.B. RUSSELL LUCIUS LAFFITTE collected $35,000 for his role as personal representative, although he did not manage any money for the Estate of D.B. and had very limited interaction with the beneficiaries of the Estate.

i. As personal representative for the Estate of D.B., RUSSELL LUCIUS LAFFITTE received disbursements from the Law Firm following the settlement of a civil lawsuit. Following the settlement, the Law Firm issued one large check for $1,325,000.00 to PSB to fund a structured settlement. The Bank Customer directed RUSSELL LUCIUS LAFFITTE to email him and request that the Law Firm re-cut the check in amounts determined by the Bank Customer. RUSSELL LUCIUS LAFFITTE complied with the Bank Customer's demand and sent him a separate email requesting that the disbursement check be re-cut accordingly. The Bank Customer then forwarded RUSSELL LUCIUS LAFFITTE's email to the Law Firm's employees, and the check was thereafter divided.

j. RUSSELL LUCIUS LAFFITTE then negotiated and distributed the checks at the Bank Customer's direction, including:

　　i. $388,687.50 money order to a third-party individual to repay a private loan;

　　ii. $482,124.35 transfer to H.P.'s account to repay loans RUSSELL LUCIUS LAFFITTE extended as conservator for H.P.;

　　iii. $75,000.00 money order to the Bank Customer's father;

　　iv. $7,500.00 money order to the Bank Customer's wife;

v.      $34,000.00 wire transfer to 4M Iron LLC;

vi.     $8,200.00 money order to third individual associated with Bank Customer;

vii.    $29,000.00 money order to Honey Creek Motors;

viii.   $49,500.00 wire transfer to Southern Crane; and

ix.     $250,987.35 in deposits and transfers into the Bank Customer's personal checking accounts and cash back.

Each check issued from the Law Firm to PSB referenced the Estate of D.B. and/or beneficiaries of the Estate on the memo lines, individuals to whom RUSSELL LUCIUS LAFFITTE owed a duty as conservator for the Estate.

k.   On October 28, 2021, RUSSELL LUCIUS LAFFITTE wrote a check for $680,000.00 to the Law Firm for his role in negotiating the checks from the Estate of D.B. settlement. RUSSELL LUCIUS LAFFITTE initiated the payment without consultation with, approval from, or notice to the PSB Board of Directors. RUSSELL LUCIUS LAFFITTE also concealed his involvement in negotiating the disbursement checks from the Estate of D.B. settlement and distributing them at the Bank Customer's direction.

RUSSELL LUCIUS LAFFITTE's actions as conservator for M.W.

l.   The Bank Customer requested that RUSSELL LUCIUS LAFFITTE serve as conservator for M.W., a person known to the Grand Jury. RUSSELL LUCIUS LAFFITTE collected a $3,025.96 fee as conservator. RUSSELL LUCIUS LAFFITTE extended a $40,000.00 unsecured loan to the Bank Customer from M.W.'s conservatorship account. RUSSELL LUCIUS LAFFITTE did not seek permission from the probate court to extend this loan, nor did he notify M.W. of the loan.

RUSSELL LUCIUS LAFFITTE never submitted a Petition for Expenditures or Order Allowing Purchases to the probate court for approval of the loan.

m. The Bank Customer used funds stolen from another client to repay the M.W. loan. RUSSELL LUCIUS LAFFITTE negotiated a bank money order from the client's stolen funds, referencing the client's name, to pay off the loan to M.W.

RUSSELL LUCIUS LAFFITTE's Actions as Conservator for N.T. and H.P.Y.

n. The Bank Customer requested that RUSSELL LUCIUS LAFFITTE serve as conservator for H.P.Y. and N.T. Despite a multi-million-dollar settlement, none of the funds went through the conservatorship accounts, and RUSSELL LUCIUS LAFFITTE never managed any money.

o. As conservator for H.P.Y. and N.T., RUSSELL LUCIUS LAFFITTE received disbursements following the settlement of civil lawsuits. In his role as conservator for H.P.Y. and N.T., RUSSELL LUCIUS LAFFITTE signed disbursement sheets indicating that H.P.Y. and N.T. would receive disbursement checks in the amount of $309,581.46 and $325,000.00 respectively, issued to PSB, for the conservatorship accounts. The checks issued pursuant to the disbursements referenced H.P.Y. and N.T.'s names, individuals to which RUSSELL LUCIUS LAFFITTE owed a duty as their conservator.

p. Upon receipt of the disbursement checks, rather than distributing the funds into H.P.Y. and N.T.'s conservatorship accounts, RUSSELL LUCIUS LAFFITTE then negotiated and distributed the funds at the Bank Customer's direction, as follows:

    i.    $10,000.00 deposit made to the Bank Customer's wife's account;

    ii.    $9,500.00 money order;

    iii.    $920.29 principal payment to a loan regarding Bank Customer's boat;

    iv.    $3,137.30 interest payment of loan for the Bank Customer's boat;

    v.    $100,000.00 money order to RUSSELL LUCIUS LAFFITTE's father to pay off personal loan;

    vi.    $50,135.61 money order to H.P. account to repay loans RUSSELL LUCIUS LAFFITTE extended as conservator for H.P.;

    vii.    $91,220.57 money order to H.P. account to repay loans RUSSELL LUCIUS LAFFITTE extended as conservator for H.P.;

    viii.    $329,500.00 money order to Bank Customer's father; and

    ix.    $40,167.69 money order to M.W. to repay loans RUSSELL LUCIUS LAFFITTE extended as conservator for M.W.

q.  NT received additional settlement funds totaling $25,245.06. RUSSELL LUCIUS LAFFITTE negotiated the settlement funds as follows:

    i.    $9,000.00 cashed out by an unknown person;

    ii.    $16,245.08 money order payable to PSB;

    iii.    $9,000.00 bank money order cashed by unknown person; and

    iv.    $7,245.08 money order cashed by unknown person.

r.  RUSSELL LUCIUS LAFFITTE collected a $60,000 fee as conservator for H.P.Y. and a $15,000.00 fee as conservator for N.T. On January 4, 2021, one day after depositing his conservatorship fees into his personal account, RUSSELL LUCIUS LAFFITTE signed documents to close out the conservatorships, representing that H.P.Y. and N.T. were eighteen years old. At the time, N.T. was only fifteen years old. That same day, RUSSELL LUCIUS LAFFITTE used his fees to pay off a portion of the personal loans he extended himself from H.P.'s conservatorship account.

## COUNT 1
### Conspiracy to Commit Wire Fraud and Bank Fraud, 18 U.S.C. § 1349

9.     The allegations contained in paragraphs 1 through 8, including all subparts, are incorporated by reference as if set forth fully herein.

10.     From a time beginning no later than July 2011, and continuing until at least October 2021, in the District of South Carolina, the Defendant, RUSSELL LUCIUS LAFFITTE, and others, knowingly and intentionally combined, conspired and agreed to:

a.   knowingly devise a scheme and artifice to defraud and to obtain money and property by means of false and fraudulent pretenses, representations, and promises, and transmit and cause to be transmitted by means of wire, radio, or television communication in interstate commerce, writings, signals, pictures or sounds for the purpose of executing the scheme and artifice, in violation of Title 18, United States Code, Section 1343; and

b.   knowingly execute and attempt to execute a scheme and artifice to obtain property held by PSB, a financial institution insured by the FDIC, and obtain the moneys, funds, credits, assets, securities, and other property owned by and under the custody and control of PSB, by means of materially false and fraudulent pretenses, representations and promises and failing to disclose material information and fraudulently concealing material information, in violation of Title 18, United States Code, Section 1344(2).

### Object of the Conspiracy

11.     The object of the conspiracy was for the Defendant, RUSSELL LUCIUS LAFFITTE, and the Bank Customer to obtain money and property by means of false and fraudulent pretenses, representations, and promises, and to defraud the Bank Customer's personal injury clients.

Overt Acts in Furtherance of Conspiracy

12.     In furtherance of the conspiracy, the Defendant, RUSSELL LUCIUS LAFFITTE, committed the following overt acts in furtherance of the conspiracy:

a.  On or about December 21, 2011, RUSSELL LUCIUS LAFFITTE negotiated and distributed, and caused to be negotiated and distributed, checks for $309,581.46.00 and $325,000.00, funds belonging to H.P.Y. and N.T., as directed by the Bank Customer;

b.  On or about August 20, 2012, and continuing through September 4, 2012, RUSSELL LUCIUS LAFFITTE negotiated and distributed, and caused to be negotiated and distributed, a check for $25,245.06, funds belonging to N.T., as directed by the Bank Customer;

c.  On or about February 8, 2013, RUSSELL LUCIUS LAFFITTE negotiated and distributed, and caused to be negotiated and distributed, $151,726.05 to H.P., at the Bank Customer's direction, knowing that the money belonged to the Estate of D.B.;

All in violation of Title 18, United States Code, Section 1349.

## Count 2
### Bank Fraud, 18 U.S.C. § 1344(2)

THE GRAND JURY FURTHER CHARGES THAT:

13.    The allegations contained in paragraphs 1 through 8, including all subparts, are incorporated by reference as if fully set forth herein.

14.    On or about September 13, 2013, in the District of South Carolina, the Defendant, RUSSELL LUCIUS LAFFITTE, with the Bank Customer and others known and unknown to the Grand Jury, knowingly executed and attempted to execute a scheme and artifice to obtain money and funds under the custody and control of PSB, an FDIC-insured financial institution, by means of false and fraudulent pretenses, representations and promises, and aided and abetted the Bank Customer, by negotiating and distributing a check totaling $101,369.49 to H.P., knowing that the funds belonged to the Estate of D.B.;

In violation of Title 18, United States Code, Sections 1344(2) and 2.

**Count 3**
**Wire Fraud, 18 U.S.C. § 1343**

THE GRAND JURY FURTHER CHARGES THAT:

15.     The allegations contained in paragraphs 1 through 8, including all subparts, are incorporated by reference as if fully set forth herein.

16.     On or about September 13, 2013, in the District of South Carolina, the Defendant, RUSSELL LUCIUS LAFFITTE, with the Bank Customer and others known and unknown to the Grand Jury, having devised a scheme and artifice to defraud and to obtain money and property by means of false and fraudulent pretenses, representations, and promises, transmitted and caused to be transmitted by means of wire in interstate commerce, writings, signs, and signals, for the purpose of executing such a scheme and artifice, in that he obtained funds, as personal representative, belonging to the Estate of D.B., and distributed $33,789.83 to the Bank Customer's personal account, affecting a financial institution;

In violation of Title 18, United States Code, Sections 1343 and 2.

## Count 4
## Misapplication of Bank Funds, 18 U.S.C. § 656

THE GRAND JURY FURTHER CHARGES THAT:

17.    The allegations contained in paragraphs 1 through 8, including all subparts, are incorporated by reference as if set forth fully herein.

18.    On or about October 28, 2021, in the District of South Carolina, the Defendant, RUSSELL LUCUIS LAFFITTE, being an officer, director, agent, and employee of PSB, a financial institution insured by the FDIC, with the intent to injure and defraud PSB, willfully misapplied, abstracted, and purloined moneys, funds, and credits entrusted to the custody and care of PSB, in that the Defendant, RUSSELL LUCIUS LAFFITTE, distributed $680,000.00 of PSB funds to the Law Firm, without notice to or consent from the PSB Board, knowing that he had fraudulently transferred the money to the Bank Customer;

In violation of Title 18, United States Code, Sections 656 and 2.

**Count 5**
**Misapplication of Bank Funds, 18 U.S.C. § 656**

THE GRAND JURY FURTHER CHARGES THAT:

19.     The allegations contained in paragraphs 1 through 8, including all subparts, are incorporated by reference as if set forth fully herein.

20.     On or about July 15, 2021, in the District of South Carolina, the Defendant, RUSSELL LUCUIS LAFFITTE, being an officer, director, agent, and employee of PSB, a financial institution insured by the FDIC, with the intent to injure and defraud PSB, willfully misapplied, abstracted, and purloined moneys, funds, and credits entrusted to the custody and care of PSB, in that the Defendant, RUSSELL LUCIUS LAFFITTE, caused PSB to fund a $750,000.00 commercial loan to the Bank Customer for beach house renovations and expenses, with preferential lending terms, including insufficient collateral, knowing that the loan was essentially unsecured and that loan proceeds would be and were used for other purposes, namely to pay Attorney 1 and to cover hundreds of thousands of dollars in overdraft charges on the Bank Customer's personal account at PSB;

In violation of Title 18, United States Code, Sections 656 and 2.

## Count 6
## Misapplication of Bank Funds, 18 U.S.C. § 656

THE GRAND JURY FURTHER CHARGES THAT:

21.    The allegations contained in paragraphs 1 through 8, including all subparts, are incorporated by reference as if set forth fully herein.

22.    On or about February 20, 2015, in the District of South Carolina, the Defendant, RUSSELL LUCUIS LAFFITTE, being an officer, director, agent, and employee of PSB, a financial institution insured by the FDIC, with the intent to injure and defraud PSB, willfully misapplied, abstracted, and purloined moneys, funds, and credits entrusted to the custody and care of PSB, in that the Defendant, RUSSELL LUCIUS LAFFITTE, caused PSB to fund a $500,000.00 line of credit to the Bank Customer for "farming," and thereafter issued a $284,787.52 cashier's check knowing that the loan proceeds would be and were used for other purposes, namely to pay off loans previously extended from H.P.'s conservatorship account;

In violation of Title 18, United States Code, Sections 656 and 2.

## FORFEITURE

CONSPIRACY/ FRAUD/ THEFT, EMBEZZLEMENT BY BANK EMPLOYEE:

Upon conviction for violations of Title 18, United States Code, Sections 656, 1343, 1344 and 1349 as charged in this Indictment, the Defendant, RUSSELL LUCIUS LAFFITTE, shall forfeit to the United States, any property, real or personal, which constitutes, is traceable, or is derived from proceeds traceable to such violations.

PROPERTY:

The property subject to forfeiture pursuant to 18 U.S.C. §§ 981(a)(1)(C) and 982(a)(2), and 28 U.S.C. § 2461(c) includes, but is not limited to, the following:

Proceeds/ Forfeiture Judgment:

A sum of money equal to all proceeds the Defendant obtained, directly or indirectly, from the offenses charged in this Indictment, that is, a minimum of $400,000.00 in United States currency, and all interest and proceeds traceable thereto, and/or such sum that equals all property derived from or traceable to his violations of Title 18.

SUBSTITUTE ASSETS:

If any of the property described above as being subject to forfeiture, as a result of any act or omission of the Defendant-

A.    Cannot be located upon the exercise of due diligence;
B.    Has been transferred or sold to, or deposited with, a third person;
C.    Has been placed beyond the jurisdiction of the court;
D.    Has been substantially diminished in value; or
E.    Has been commingled with other property which cannot be subdivided without difficulty.

it is the intention of the United States, pursuant to Title 18, United States Code, Section 982(b)(1), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the Defendant up to the value of the forfeitable property.

Pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and 982(a)(2), and Title 28, United States Code, Section 2461(c).

A _True_ _____ BILL


FOREPERSON


ADAIR F. BOROUGHS
UNITED STATES ATTORNEY
By: /s/ *Emily Evans Limehouse*
Emily Evans Limehouse (Fed. ID #12300)
Winston D. Holliday, Jr. (Fed. ID #7597)
Assistant United States Attorney
151 Meeting Street, Suite 200
Charleston, SC 29401
Tel.:    (843) 727-4381
Fax:    (843) 727-4443
Email: Emily.Limehouse@usdoj.gov