IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CRIMINAL NO. 9:22-cr-00658-RMG |
| | ) | |
| vs. | ) | **MOTION TO QUASH SUBPOENA** |
| | ) | **FILED ON BEHALF OF JOHN** |
| RUSSELL LUCIUS LAFFITTE. | ) | **NICHOLS** |
| _____ | ) | |

Movant John Nichols, Disciplinary Counsel at the Supreme Court of South Carolina's Office of Disciplinary Counsel ("ODC"), hereby moves to quash the subpoena issued by the United States.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

**I.    The Supreme Court of South Carolina and Richard Alexander Murdaugh**

On September 8, 2021, upon request of ODC, the Supreme Court of South Carolina ("Supreme Court") suspended Richard Alexander Murdaugh ("Murdaugh") on an interim basis from the practice of law. *In re Murdaugh*, 863 S.E.2d 335 (S.C. 2021).

On June 16, 2022, the Supreme Court issued an Order outlining Murdaugh's arrest and the various admissions of misconduct that he made in court proceedings. *In re Murdaugh (II)*, 875 S.E.2d 58 (S.C. 2021). The Supreme Court found Murdaugh had "admitted to conduct that amounts to clear and convincing evidence of dishonesty in violation of the Rules of Professional Conduct." *Id.* at 59. As a result, the Supreme Court held Murdaugh's "admissions in the criminal proceedings that he engaged in conduct that violates the Rules of Professional Conduct satisfies ODC's burden of proving that same misconduct in connection with the pending disciplinary proceedings." *Id.* Thus, the Supreme Court held that an evidentiary hearing before the Commission on Lawyer Conduct ("Commission") was "unnecessary for disposition of the pending discipline, as the only remaining issue to be decided [was] the legal question of determining the appropriate

sanction, a matter left to the discretion of th[e] Court under the Constitution." *Id.* The Supreme Court then "dispensed with further proceedings before the Commission" and ordered Murdaugh to appear at the Supreme Court "to present legal argument on the question of whether th[e] Court should disbar [him] from the practice of law." *Id.* at 59–60.

In response to that Order, Murdaugh "filed an affidavit waiving all rights to a hearing and stating he did not contest the Court's 'authority and decision' to disbar him from the practice of law." *In re Murdaugh (III)*, 875 S.E.2d 625, 626 (S.C. 2022). The Supreme Court then issued an Order on July 12, 2022, which noted that Murdaugh had been indicted on "more than eighty criminal charges arising from various ongoing investigations" and made admissions "in various court proceedings and filings that he engaged in financial misconduct involving theft of money from his former law firm; that he solicited his own murder to defraud his life insurance carrier; and that he is liable for the theft of $4,305,000 in settlement funds." *Id.* at 625–26. Based on this "admitted reprehensible misconduct," the Supreme Court disbarred Murdaugh from the practice of law in South Carolina. *Id.* at 626. Importantly, however, the Supreme Court emphasized that its decision "turn[ed] not on [Murdaugh's] concession, but rather derives from [the Court's] constitutional authority and duty to protect the public from attorneys who are not fit to practice law." *Id.*

The Supreme Court concluded its Order by noting:

In removing [Murdaugh] from the legal profession, we note his misconduct re-mains under investigation by the Office of Disciplinary Counsel (ODC), and our decision today in no way concludes, limits, restricts, or otherwise impacts the on-going ODC investigation, which we trust will continue without undue delay. For purposes of transparency and accountability, if additional acts of misconduct by [Murdaugh] are discovered in the ODC investigation, we will issue supplemental order(s) detailing any such additional acts of misconduct and imposing additional sanctions where appropriate.

*Id.* (emphasis added).

2

II.    **The State and Federal Prosecutions of Russell Lucius Laffitte**

Defendant Russell Lucius Laffitte ("Laffitte") was the former Chief Executive Officer of Palmetto State Bank ("PSB"). *See* ECF No. 2 at 2. The South Carolina State Grand Jury has returned several indictments, which allege that Laffitte "conspired with Alex Murdaugh to commit financial crimes." ECF No. 30 at 4.

On July 20, 2022, Laffitte was indicted by a federal grand jury for Conspiracy to Commit Wire Fraud and Bank Fraud, Bank Fraud, Wire Fraud, and two counts of Misapplication of Bank Funds. *See* ECF No. 2. The Indictment does not name Murdaugh, and instead refers to an unindicted co-conspirator as a "Bank Customer [who] was a personal injury attorney with [a] Law Firm, located in Hampton, South Carolina." *Id.* at 2 (internal quotation marks omitted).

On August 17, 2022, the grand jury returned a Superseding Indictment, which added a third count of Misapplication of Bank Funds. *See id.* at ECF No. 25, at 16.

III.    **The Government Issues a Trial Subpoena to Disciplinary Counsel John Nichols**

On August 24, 2022, the Government obtained a trial subpoena directed to Movant John Nichols in his official capacity as the Disciplinary Counsel at ODC. *See* Subpoena, attached as **Exhibit A**. The subpoena is titled, "Subpoena to Testify at a Hearing or Trial in a Criminal Case," and directs Movant Nichols to appear at the Hollings Judicial Center, 85 Broad Street, Charleston, SC 29401 on September 7, 2022, at 10:00 a.m. *Id.* Additionally, the subpoena directs Movant Nichols to "provide transcripts of Russell Laffitte' s (sic) testimony in the investigation of Alex Murdaugh and any other related investigations." *Id.* Assistant United States Attorney Emily Limehouse served the subpoena on Movant Nichols by email on the morning of Friday, August 26, 2022.

## LEGAL STANDARD

Federal Rule of Criminal Procedure 17 authorizes parties in criminal proceedings to serve subpoenas to obtain testimony and documents. *See* Fed. R. Crim. P. 17(a), (c). The proponent of a trial subpoena duces tecum bears the burden "of showing that the material [she] has subpoenaed meets the requirements of '(1) relevancy; (2) admissibility; [and] (3) specificity.'" *United States v. Richardson*, 607 F.3d 357, 368 (4th Cir. 2010) (quoting *United States v. Nixon*, 418 U.S. 683, 700 (1974)) (alteration in original). "The subpoena duces tecum must be 'made in good faith and [must] not [be] intended as a general fishing expedition.'" *Id.* (quoting *Nixon*, 418 U.S. at 700) (alterations in original) (internal quotation marks omitted).

"On motion made promptly, the court may quash or modify the subpoena if compliance would be unreasonable or oppressive." Fed. R. Crim. P. 17(c)(2). "Courts have recognized various ways in which a subpoena may be unreasonable or oppressive under Rule 17(c)." *In re Grand Jury, John Doe No. G.J.2005-2*, 478 F.3d 581, 585 (4th Cir. 2007). "Rule 17(c) offers a vehicle for a subpoenaed party to assert a constitutional, statutory, or common-law privilege." *Id.* However, even in the absence of a privilege, "a subpoena may still be unreasonable or oppressive under Rule 17(c) if it is irrelevant, abusive or harassing, overly vague, or excessively broad." *Id.* (citations omitted). "In that vein, a fundamental concern is that the subpoena duces tecum is not intended to provide a means of pretrial discovery; rather its primary purpose is simply 'to expedite the trial by providing a time and place *before* trial for the inspection of subpoenaed materials." *Richardson*, 607 F.3d at 368 (quoting *Nixon*, 418 U.S. at 689–99).

4

### ANALYSIS

The Government's subpoena seeks documents[1] from a pending and confidential attorney disciplinary proceeding. The only plausible justification for the Government's subpoena is to gather evidence for its case-in-chief or impeachment evidence about Defendant Laffitte. However, the Supreme Court of the United States and the Fourth Circuit Court of Appeals have repeatedly and unequivocally held that trial subpoenas are not discovery devices or investigative tools. *See Nixon*, 418 U.S. at 689–99; *Richardson*, 607 F.3d at 368. These holdings alone provide a sufficient justification for quashing the subpoena. However, even if documents requested by the Government could properly be the subject of a trial subpoena, requiring Movant Nichols to appear and produce them amidst a pending attorney disciplinary investigation and in clear violation of the Rules for Lawyer Disciplinary Enforcement ("RLDE") would be both unreasonable and oppressive. Respectfully, the Court should quash the subpoena.

**I.     The Government's subpoena is procedurally deficient.**

Prior to addressing the substantive grounds for Movant Nichols' Motion to Quash, there are several procedural infirmities that render the Government's subpoena invalid or serve as an alternative basis to quash the subpoena. First, the trial subpoena requires Movant Nichols to appear at a federal courthouse with documents on a date and time for which no formal proceeding is scheduled. Second, the Government apparently did not file a motion to secure the subpoena and, instead, is attempting to obtain information and/or documents about a pending and confi-

---

[1] As discussed below, Movant Nichols is prohibited by the Rules for Lawyer Disciplinary Enforcement ("RLDE"), which are found in Rule 413 of the South Carolina Appellate Court Rules ("SCACR") from disclosing any information about a pending lawyer disciplinary proceeding. *See* Rule 12(a), (b), RLDE, Rule 413 SCACR. This prohibition includes disclosing or acknowledging the existence of any "documents related to the proceedings." *See id.* Accordingly, the following discussion of the Government's request for documents is not an admission that <u>any</u> documents responsive to the subpoena exist.

dential disciplinary proceeding without any Court intervention or oversight. These procedural deficiencies render the subpoena invalid or, in the alternative, are sufficient grounds to quash the subpoena.

### A. There is no trial or adversarial hearing scheduled in this case for the date and time on the subpoena.

Rule 17 "permits a subpoena ad testificandum or a subpoena duces tecum to be issued only for the purpose of compelling the attendance of witnesses or the production of evidence at a formal proceeding." *United States v. Keen*, 509 F.2d 1273, 1275 (6th Cir. 1975); *see also United States v. LaFuente*, 991 F.2d 1406, 1411 (8th Cir. 1993) ("Several courts have interpreted Rule 17 to permit a subpoena to be issued only for the purpose of compelling the attendance of witnesses or the production of evidence at formal proceedings, such as grand jury proceedings, preliminary hearings, and trials."). Because "[a] subpoena *duces tecum* is tied inextricably to a trial or adversarial hearing," many courts have found that subpoenas violate Rule 17(c) when they do not command appearance at a scheduled trial or other formal proceeding. *See United States v. Cartagena-Albaladejo*, 299 F. Supp. 3d 378, 385 (D.P.R. 2018) (holding the issuance of Rule 17(c) subpoenas was improper "when plea negotiations [we]re ongoing and no trial or formal hearing [wa]s scheduled").

Here, the subpoena commands Movant Nichols to appear at the Hollings Judicial Center in Charleston, South Carolina on September 7, 2022, at 10:00 a.m. and "remain at the court until the judge or a court officer allows [him] to leave." Ex. A. However, there are no hearings or other formal proceedings scheduled in this case for September 7, 2022. The only hearings currently scheduled are a Motion to Modify Conditions of Release with United States Magistrate Judge Cherry on September 6, 2022, and a telephone conference with the Court on September 12, 2022. *See* ECF Nos. 23, 37. In the absence of a scheduled trial or other formal proceeding, Mo-

vant Nichols—or any other subpoenaed witness—could be left to remain at a courthouse indefi-

nitely absent the Court involvement that Rule 17 requires. Accordingly, the Court should find the

subpoena invalid or, alternatively, quash the subpoena for being unreasonable and oppressive

pursuant to Rule 17(c)(2).

## B. The Government did not seek advance leave of the Court for issuance of the subpoena.

Federal Rule of Criminal Procedure 17(c)(1) states that "[t]he court may direct the wit-

ness to produce the designated items in court before trial or before they are to be offered in evi-

dence. When the items arrive, the court may permit the parties and their attorneys to inspect all

or part of them." This language unambiguously requires the involvement of the Court when a

subpoena duces tecum is returnable before trial. Indeed, "[a]lthough most of Rule 17(c) was a

restatement of prior law, the third sentence of Rule 17(c)(1) was an innovation by providing a

method by which the court may permit either side to inspect subpoenaed documents or objects

prior to the trial <u>under the supervision of the court</u>." 2 Fed. Prac. & Proc. Crim. § 275 (4th ed.)

(internal footnote omitted) (emphasis added).

While Rule 17 does not expressly require leave of court for issuance of a subpoena duces

tecum, "[s]ome courts hold that the court's discretion must be invoked by motion in advance if a

subpoena is to be made returnable in advance of the trial." *Id.* Most notably, in *United States v.*

*Beckford*, a district court in the Fourth Circuit addressed the issue of "the proper procedure for

obtaining a subpoena duces tecum returnable before trial."[2] 964 F. Supp. 1010, 1020 (E.D. Va.

---

[2] The Court analyzed the text of Rule 17(c) prior to the 2002 Amendments, which only amended "[t]he language of Rule 17 . . . as part of the general restyling of the Criminal Rules to make them more easily understood and to make style and terminology consistent throughout the rules." Fed. R. Crim. P. 17, 2002 Amends. The only substantive change was the addition of the word "data" to "the list of matters that may be subpoenaed." *Id.* Thus, *Beckford*'s analysis would apply with equal force to the current version of Rule 17.

1997). The court agreed with the "nearly unanimous[]" recognition that "the use of a *motion* as the procedural means for invoking the court's discretion in advance of issuance of a pre-trial subpoena duces tecum is an orderly and desirable procedure and one frequently followed." *Id.* at 1021 (internal quotation marks omitted) (collecting cases). Indeed, the court held that Rule 17(c)'s "requirement of court intervention in the process is not a mere formality." *Id.* at 1022. "To the contrary, it represents a 'vital protection against misuse or improvident use of such subpoenas duces tecum.'" *Id.* (quoting *United States v. Ferguson*, 37 F.R.D. 6, 8 (D.D.C. 1965)). Accordingly, relying in large part on Rule 17(c)'s mandate "that only the court may 'direct' or 'permit' such pre-trial production and inspection," the court held that "Rule 17(c) requires a motion as the procedural vehicle to secure a pre-trial subpoena duces tecum . . . ." *Id.* at 1024–25.

Movant Nichols urges the Court to adopt the reasoning of *Beckford* and require a party in a criminal proceeding to seek leave of court to serve a subpoena duces tecum that is returnable before trial. Such a procedure would comply with Rule 17(c)(1)'s requirement of court involvement and supervision, avoid unnecessary and costly third-party motions to quash, and ensure the proponent of the subpoena satisfies its burden. *See Beckford*, 964 F. Supp. at 1023 ("[A]lthough in some cases reliance upon the filing of a motion to quash or modify by the opposing party or subpoenaed entity may provide adequate assurance that the pre-trial subpoena satisfies the *Nixon* standard, there is no certainty that any such motion will be filed."). Accordingly, Movant Nichols respectfully requests the Court hold the subpoena is invalid because the Government did not seek advance approval.

## II. The Court should quash the Government's subpoena because compliance would be unreasonable and oppressive.

In the event the Court concludes the subpoena is procedurally proper, it should nonetheless conclude that the Government has not satisfied its burden for sustaining the subpoena. In

*Nixon*, the Supreme Court held a subpoena duces tecum is "unreasonable or oppressive" unless the proponent demonstrates:

> (1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general "fishing expedition."

*Nixon*, 418 U.S. at 699–700. "Against this background, the [Government], in order to carry [its] burden, must clear three hurdles: (1) relevancy; (2) admissibility; [and] (3) specificity." *Id.* at 700. As detailed below, the Government's subpoena fails to satisfy these requirements.

The Government's subpoena summarily seeks "transcripts of Russell Laffitte' s (sic) testimony in the investigation of Alex Murdaugh and any other related investigation." Ex. A. This excessively vague and broad request does not seek any documents with specificity. Instead, it is a fishing expedition into an active and confidential investigation that is being conducted by Movant Nichols and ODC. *See in re Murdaugh (III)*, 875 S.E.2d at 626 (stating that Murdaugh's "misconduct remains under investigation by the Office of Disciplinary Counsel" and that its decision to disbar Murdaugh did not "impact[] the ongoing ODC investigation"). The Fourth Circuit has emphasized that a subpoena duces tecum "is not a discovery device." *United States v. Fowler*, 932 F.2d 306, 311 (4th Cir. 1991). Indeed, "a Rule 17 subpoena *duces tecum* cannot substitute for the limited discovery otherwise permitted in criminal cases[,] and the hope of obtaining favorable evidence does not justify the issuance of such a subpoena." *United States v. Caro*, 597 F.3d 608, 620 (4th Cir. 2010).

Similarly, to the extent there are any transcripts of Laffitte's testimony, the Government has the burden of demonstrating they would be relevant and admissible in a federal criminal proceeding. The most plausible rationale for the Government's request is a desire to obtain Laffitte's

testimony to use as impeachment evidence in this criminal prosecution. But the Supreme Court has held that "[g]enerally, the need for evidence to impeach witnesses is insufficient to require its production in advance of trial." *Nixon*, 418 U.S. at 701; *see also United States v. Jenkins*, 895 F. Supp. 1389, 1393–94 (D. Haw. 1995) ("Courts have repeatedly held that Rule 17(c) subpoenas should not be used to obtain, before trial, materials to be used for impeachment purposes.").

At bottom, the Supreme Court has held the proponent of the subpoena has the burden of establishing relevancy, admissibility, and specificity. *Nixon*, 418 U.S. at 700. The Government's skeletal subpoena does not clear any of those three hurdles,[3] and is instead an improper attempt to use a trial subpoena as a discovery device or investigatory tool during a pending prosecution.[4]

### A. The Government's subpoena seeks documents that are confidential under the South Carolina Rules for Lawyer Disciplinary Enforcement.

Additionally, to the extent there may be documents responsive to the Government's subpoena, any documents would be confidential under state law. Under Rule 12(a), RLDE, Rule 413, SCACR, ODC and others who may have access to information "shall not in any way reveal the existence of the complaint, while the matter remains confidential, except to persons directly involved in the matter and then only to the extent necessary for a proper disposition of the matter." The RLDE prescribes when documents related to misconduct proceedings become public:

> When formal charges are filed regarding allegations of misconduct, the formal charges, any answer, and all other documents related to the proceedings that were filed with or issued by the Commission [on Lawyer Conduct] following the filing of the formal charges shall become public 30 days after the filing of the answer or, if no answer is filed, 30 days after the expiration of the time to answer under

---

[3] To the extent the Government attempts to meet its burden in response to this Motion, Movant Nichols requests leave to file a reply brief.

[4] The Government has a variety of investigative tools at its disposal. For example, it can have agents interview witnesses and can even provide those witnesses with immunity or other incentives. Of course, any attempt to interview Movant Nichols or any ODC staff regarding an ongoing disciplinary investigation would encounter the same hurdles this subpoena confronts.

> Rule 23. Thereafter, except as otherwise provided by these rules or the Supreme
> Court, all subsequent records and proceedings relating to the misconduct allega-
> tions shall be open to the public inclusive of a letter of caution or admonition is-
> sued after the filing of formal charges.

Rule 12(b), RLDE, Rule 413 SCACR. The Department of Justice and its attorneys are not per-

mitted special access to confidential, ongoing disciplinary investigations. Indeed, Rule 12 of the

RLDE is contained within the section of the South Carolina Appellate Court Rules titled "Rules

Governing the Practice of Law" and is applicable to all lawyers. *See* 28 U.S.C. § 530B ("An at-

torney for the Government shall be subject to State laws and rules, and local Federal court rules,

governing attorneys in each State where such attorney engages in that attorney's duties, to the

same extent and in the same manner as other attorneys in that State.").

Moreover, the trial subpoena in this case was issued by the Clerk pursuant to Rule 17.

Therefore, the Supremacy Clause issues that are, at times, implicated with grand jury subpoenas

do not bear on the analysis here.[5] *See, e.g., United States v. Colorado Supreme Court*, 189 F.3d

1281, 1288–89 (10th Cir. 1999) (holding that Colorado Rule of Professional Conduct 3.8, which

places limitations on prosecutors in criminal proceedings who seek to subpoena attorneys to give

information about a current or former client, did not conflict with Federal Rule of Criminal Pro-

cedure 17, "which details only the procedures for issuing a proper subpoena").

**B.  Public policy considerations and comity favor quashing the Government's subpoena.**

Finally, Movant Nichols contends that public policy considerations and comity render the

Government's subpoena unreasonable and oppressive. The Government's subpoena—if sus-

tained—would set a dangerous precedent that would impede ODC's ability to investigate attor-

---

[5] To be clear, Movant Nichols maintains that the documents requested by the Government would also not be returnable pursuant to a grand jury subpoena. However, that question is not at issue in this case.

ney misconduct effectively and confidentially. The RLDE exist to provide structure and a fair process in misconduct investigations. Confidentiality is of tantamount importance to those investigations, as it simultaneously engenders cooperation and candor while protecting the professional, personal, and reputational interests of all lawyers and witnesses who come before ODC or the Commission. Permitting the Government—or any other party to a court proceeding—to subpoena these confidential records would stymie the ability of ODC and the Commission to investigate attorney misconduct. It would also have far-reaching consequences, including allowing parties to seek access to information in ongoing and confidential judicial misconduct investigations. *See* Rule 12, RJDE, Rule 502, SCACR (establishing the confidentiality requirements for judicial investigations).

The Fourth Circuit has specifically recognized the importance of these confidentiality and investigative considerations when balanced against a Government subpoena. In *In re Grand Jury*, 478 F.3d 581 (4th Cir. 2007), a district court quashed a federal grand jury subpoena issued to a City Police Department "to obtain the records of the Department's internal investigation into a complaint filed against an officer." *Id.* at 582. The City argued, *inter alia*, "that compliance would destroy the confidentiality of the internal investigation and would thus severely undermine the Department's ability to conduct such investigations effectively." *Id.* at 583.

In affirming the district court, the Fourth Circuit noted that—because a grand jury subpoena was at issue—the City bore the burden of proving unreasonableness. *See id.* at 585. Nonetheless, the Fourth Circuit recognized "the City's very real concern that the Police Department preserve its ability to police itself by maintaining the confidentiality of its investigations." *Id.* at 586. The Court further held the district court properly "recognize[d] that handing the statements over to an outside party or agency, including one involved in criminal investigations, would be

perceived by cooperating officers as a serious compromise of confidentiality, notwithstanding the provisions of Federal Rule of Criminal Procedure 6(e)."[6] *Id.*

## CONCLUSION

Respectfully, for the reasons detailed above, Movant Nichols asks the Court to quash the Government's subpoena.

Respectfully Submitted,

/s/ John L. Warren III
John L. Warren III (Federal ID No. 12164)
Email: jw@billnettleslaw.com
Law Office of Bill Nettles
2008 Lincoln St.
Columbia, SC 29201
Tel: (803) 814-2826

Attorney for Movant John Nichols, in his Official Capacity as the Disciplinary Counsel for the Office of Disciplinary Counsel

September 2, 2022

---

[6] Federal Rule of Criminal Procedure 6(e) outlines the parameters of grand jury secrecy.

13