IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION

| | |
|---|---|
| United States of America, | Case No. 9:22-cr-00658-RMG |
| v. | |
| Russell Lucius Laffitte, | |
| Defendant. | |

**Defendant's Motion for Production of Grand Jury Transcripts
and Memorandum in Support**

The Government has acknowledged that the Superseding Indictment contains factual errors. The shadows that such inaccuracies cast over the case the Government presented to the Grand Jury hamper Mr. Laffitte's ability to prepare his defense because he does not know what information or evidence, if any, may have improperly been presented to the grand jury to cause such inaccuracies.

For the reasons below, Mr. Laffitte moves the Court to compel production of the grand jury transcripts under Fed. R. Crim. P. 6(e)(3)(E)(i).[1] His particularized need for those transcripts outweighs any of the traditional policy reasons for grand jury secrecy. As a result, he requests that the Court compel production of the transcripts under an appropriate protective order.

**Factual and Procedural Background**

**A.     Indictment and Superseding Indictment**

On July 19, 2022, a federal grand jury returned a five-count Indictment charging Mr. Laffitte with Conspiracy to Commit Wire Fraud and Bank Fraud in violation of 18 U.S.C. § 1349

---

[1] Mr. Laffitte has conferred with the Government to seek production of these transcripts absent Court intervention, but the Government has refused, necessitating this motion.

(Count 1); Bank Fraud in violation of 18 U.S.C. § 1344(2) (Count 2); Wire Fraud in violation of 18 U.S.C. § 1343 (Count 3); and two counts of Misapplication of Bank Funds in violation of 18 U.S.C. § 656 (Counts 4 and 5). He was arraigned on July 27, 2022.

On August 16, 2022, the grand jury returned a six-count Superseding Indictment against Mr. Laffitte. According to the Government, the Superseding Indictment supplemented conduct to the scheme and artifice of the Conspiracy to Commit Wire Fraud and Bank Fraud charge (Count 1) and added another count for Misapplication of Bank Funds in violation of 18 U.S.C. § 656 (Count 6). Mr. Laffitte was arraigned on the Superseding Indictment on August 24, 2022.

**B.     Current and Future Inaccuracies in the Indictment**

The same day as his arraignment of the Superseding Indictment, the Government confirmed to Mr. Laffitte's counsel that "a portion of the [superseding] indictment is inaccurate," (*see* Superseding Indictment ¶ 8(r), ECF No. 25), and that the Government would notify Mr. Laffitte's counsel "if [the Government] learn[ed] of any other inaccuracies with the Superseding Indictment." (Exhibit 1) Paragraph 8, subparagraph "r" of the superseding indictment alleges that Mr. Laffitte "signed documents to close out the conservatorships" of victims H.P.Y. and N.T. and "represent[ed] that H.P.Y. and N.T. were eighteen years old." (ECF No. 25 at 9.) The Government alleged in the Superseding Indictment that N.T. was "only fifteen years old" at the time. As it turns out, however, the Government has confirmed that N.T. was actually 18 years old then, so the Superseding Indictment is wrong.[2] (Exhibit 1)

The Government contacted Mr. Laffitte's counsel over the phone shortly after learning of the error.[3] In an email later that day, the Government stated that it plans to "re-present" the

---

[2] The same factual error is in paragraph "q" of the original indictment. (ECF No. 2 at 9.)

[3] Even though the error was also in the original indictment, Mr. Laffitte has no doubts that the Government acted promptly when it learned of the error. He likewise does not believe that the

indictment to the grand jury to fix this error. (*Id.*) The Government also noted that it would let undersigned counsel know if it learns of any other inaccuracies in the Superseding Indictment when preparing witnesses for trial. (*Id.*)

Despite Mr. Laffitte's request in accordance with L. Crim. R. 12.02, however, the Government refused to produce the grand jury transcripts for the original and subsequent presentment. (*Id.*) This refusal necessitated this motion to seek production of the grand jury transcripts under an appropriate protective order.

## Argument

Courts may order the disclosure of grand jury proceedings "preliminarily to or in connection with a judicial proceeding." Fed. Rule Crim. Proc. R. 6(e)(3)(E)(i). Disclosure of grand jury transcripts is appropriate when the defendant shows a "particularized need" for the materials that outweighs the policies underlying grand jury secrecy. *Douglas Oil Co. v. Petrol Stops Nw.*, 441 U.S. 211, 223–24 (1979). The party seeking the transcripts bears the burden of making the requisite showing, *In re Grand Jury Proc.*, 800 F.2d 1293, 1299 (4th Cir. 1986); however, "the standard for establishing a right to disclosure under Rule 6(e) is not an excessive one but rather 'is a highly flexible one, adaptable to different circumstances and sensitive to the fact that the requirements of secrecy are greater in some situations than in others.'" *Id.* (quoting *United States v. Sells Eng'g, Inc.*, 463 U.S. 418, 445 (1983)).

As shown below, Mr. Laffitte needs the Grand Jury transcripts to evaluate the origins and persistence of the erroneous information provided to the Grand Jury resulting in the factual errors within the original and superseding indictments. This particularized need outweighs the policies underlying grand jury secrecy, and any particular concerns the Government may have about the

---

Government intentionally misrepresented the ages in the indictments.

production of the transcripts can be addressed in an appropriate protective order. *See Dennis v. United States*, 384 U.S. 855, 875 (1966). Thus, the Court should grant Mr. Laffitte's motion and require production here.

**I.      The Grand Jury transcripts are necessary to evaluate the source and pervasiveness of the Government's confirmed inaccuracies in the indictments.**

"'Problems concerning the use of the grand jury transcript at the trial to impeach a witness, to refresh his recollection, to test his credibility . . .' are 'cases of particularized need where the secrecy of the proceedings is lifted discretely and limitedly.'" *Dennis*, 384 U.S. at 870 (quoting *United States v. Procter & Gamble Co.*, 356 U.S. 677, 681 (1958)). But the list of examples set forth by the Supreme Court in *Procter & Gable* is not exhaustive—showing of a particularized need may also include other situations in which more than a generalized desire for the transcripts is present. For example, in *Dennis*, the U.S. Supreme Court held that the defendant showed a "particularized need" and made a showing "substantially beyond the minimum required by Rule 6(e)" when he requested the grand jury transcripts to ensure the accuracy of the testimony about certain statements made by others in advancing the conspiracy charged. *Dennis*, 384 U.S. at 874. The Court recognized that disclosure was needed because, in conspiracy cases, uncorroborated testimony can be key given "the question of guilt or innocence may turn on exactly what was said [and] the defense is clearly entitled to all relevant aid which is reasonably available to ascertain the precise substance of these statements." *Id*. at 872–73. The Court reasoned that in our adversary system it is "rarely justifiable for the prosecution to have exclusive access to a storehouse of relevant fact." *Id*. at 873.

Similar to the conspiracy charges present in *Dennis*, the circumstances of this case involve "the inevitable risk of wrongful attribution of responsibility to one or more of the multiple defendants . . ." *Dennis*, 384 U.S. at 873. Even though "Bank Customer" curiously remains

unindicted for conduct involving the same victims as a present here, his presence looms large in the Government's prosecution of Mr. Laffitte. He is mentioned than 64 times in the Superseding Indictment, and the Government has invoked his name in all of the hearings to date. Indeed, just this week, the Government's cross-examination of Mr. Laffitte centered on many of the alleged actions of "Bank Customer." Contrary to Mr. Laffitte's defense, the Government's theory is that he and "Bank Customer" joined together a decade-long conspiracy and acted in tandem. Mr. Laffitte plans to establish this is not true—that actions are wrongfully being attributed to him than others—which is why the exact testimony of the actions before the grand jury is required here, especially given the factual inaccuracies present in the original and superseding indictments.

The risk of mis-attributing improper acts to Mr. Laffitte instead of others as it relates to the relevant guardianship and related accounts has already been illustrated in this case. As explained in his First Motion for Bond Modification, even those presenting argument before the Court have mistaken Mr. Laffitte's actions for others. (Mot. Bond Modification at 6–7, ECF No. 30; Reply in Supp. Mot. Bond Modification at 8, ECF No. 40.) The risk of misattribution has also manifest itself in the inaccuracy about N.T.'s age present in both the original and superseding indictments. (Superseding Indictment ¶ 8(r), ECF No. 25.)

The Government has maintained that the continued misattribution has been merely a mistake. Yet the inadvertence of the misstatements is immaterial. Indeed, courts have granted even more far-reaching relief based on misstatements to the grand jury—Mr. Laffitte is not seeking such drastic relief here, only production of the grand jury transcripts. *See*, *e.g.*, *United States v. Samango*, 607 F.2d 877, 882 (9th Cir. 1979) ("Although deliberate introduction of perjured testimony is perhaps the most flagrant example of misconduct, other prosecutorial behavior, *even if unintentional*, can also cause improper influence and usurpation of the grand jury's role."

(footnote omitted) (emphasis added)); *United States v. Hogan*, 712 F.2d 757, 762 (2d Cir. 1983) (dismissing indictment in part because "appellants were prejudiced by the [inadvertent] misstatements of important facts and the grand jury's independent role was impaired.").

For these reasons, Mr. Laffitte has made a particularized showing sufficient to reach the minimal threshold necessary under Rule 6(e). *Dennis*, 384 U.S. at 875.

## II. The need for the Grand Jury transcripts outweighs the policy of grand jury secrecy.

Mr. Laffitte's need for the grand jury transcripts outweighs the policy and traditions underlying grand jury secrecy. The policy reasons for grand jury secrecy are

> (1) To prevent the escape of those whose indictment may be contemplated;
>
> (2) to [ensure] the utmost freedom to the grand jury in its deliberations, and to prevent persons subject to indictment or their friends from importuning the grand jurors;
>
> (3) to prevent subornation of perjury or tampering with the witnesses who may testify before [the] grand jury and later appear at the trial of those indicted by it;
>
> (4) to encourage free and untrammeled disclosures by persons who have information with respect to the commission of crimes;
>
> (5) to protect innocent accused who is exonerated from disclosure of the fact that he has been under investigation, and from the expense of standing trial where there was no probability of guilt."

*Douglas Oil*, 441 U.S. at 219 n.10 (quoting *United States v. Rose*, 215 F.2d 617, 628–629 (3d Cir. 1954)) (alterations in original). Despite these policy considerations, courts must also be mindful that the grand jury's secrecy is not absolute. *United States v. Colonial Chevrolet Corp.*, 629 F.2d 943, 948 (4th Cir. 1980). The grand jury also "functions as a shield, standing between the accuser and the accused, protecting the individual citizen against oppressive and unfounded government prosecution." *United States v. Hogan*, 712 F.2d 757, 759 (2d Cir. 1983).

The balancing required under Rule 6(e) is not exacting, but is adaptable to the needs of a particular case once the minimal need—as here—is shown. *In re Grand Jury Proc.*, 800 F.2d at 1299 (quoting *Sells Eng'g, Inc.*, 463 U.S. at 445). As shown above, the inaccuracies identified to date outweigh the need for grand jury secrecy because of the risk that trial will be permeated with similar errors flowing from the information presented to the Grand Jury, which differ from that which conforms to the actual facts. These inaccuracies—similar to those previously presented to this Court that remain uncorrected—are undermining Mr. Laffitte's right to a fair trial. This is especially true given the Government has left open the possibility that more inaccuracies could surface, which will only compound Mr. Laffitte's ability to adequately prepare his defense.

As a result, the need to access the grand jury transcripts to evaluate and correct inaccuracies in the indictments outweigh the policy considerations underlying the need for grand jury secrecy.

## III.     The Court may appropriately limit disclosure of the grand jury transcripts.

The Supreme Court has explained that generally "disclosure, rather than suppression, of relevant materials ordinarily promotes the proper administration of criminal justice." *Dennis*, 384 U.S. at 870. To advance the proper administration of justice, disclosure to Mr. Laffitte and his counsel is all that is sought here. But Mr. Laffitte recognizes that the Government will still maintain the need to protect the grand jury transcripts from dissemination to others even in the face of the admitted inaccuracies. As a result, he moves to compel production of the grand jury transcripts under an appropriate protective order entered by the Court. Such a remedy is contemplated by both *Dennis v. United States*, 384 U.S. 855, 875 (1966) and Fed. R. Crim. P. 16(d)(1). Such a protective order can assuage any fears the Government's may have that the grand jury transcripts will be released to the media or others.

**Conclusion**

For the reasons set forth above, the Court should grant Mr. Laffitte's motion and order the production of the grand jury transcripts.

                NELSON MULLINS RILEY & SCARBOROUGH LLP

                By: */s/ E. Bart Daniel*
                    E. Bart Daniel
                    Federal Bar No. 403
                    E-Mail: bart.daniel@nelsonmullins.com
                    Matt Austin
                    Federal Bar No. 11435
                    E-Mail: matt.austin@nelsonmullins.com
                    151 Meeting Street / Sixth Floor
                    Post Office Box 1806 (29402-1806)
                    Charleston, SC  29401-2239
                    (843) 853-5200

                *Attorneys for Russell Lucius Laffitte*

Charleston, South Carolina
September 9, 2022