IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** )<br>)<br>vs. )<br>)<br>)<br>**RUSSELL LUCIUS LAFFITTE** )<br>) | CRIMINAL NO. 9:22-658-RMG |

**GOVERNMENT'S MOTION TO COMPEL EVIDENCE IN SUPPORT OF ADVICE-OF-COUNSEL DEFENSE**

During a hearing on Defendant Russell Lucius Laffitte's Motion for Bond Reconsideration, Laffitte admitted that he negotiated dozens of checks worth millions of dollars that belonged to Alex Murdaugh's clients—clients to whom Laffitte owed a fiduciary duty as conservator or personal representative. But, Laffitte claimed he acted because his "attorney," Alex Murdaugh, told him to do so. *See* Bond Reconsideration Hr'g Trans. 13:7–9, 37:5, 55:19–56:7, 58:7–11. The Government has not uncovered any evidence that Laffitte acted in good faith reliance on the advice of counsel. Moreover, Laffitte's own testimony contradicts his contention that he was acting on the advice of his "attorney."[1] Nevertheless, based on Laffitte's testimony, the Government expects him to assert an advice-of-counsel defense at trial. But a defendant cannot assert an advice-of-counsel defense unless there are sufficient facts in the record to support such a defense, placing the burden of production on the defendant and requiring him to produce all evidence in support of

---

[1] For example, despite Laffitte's testimony that Murdaugh was his attorney because he was the conservator for these cases, *see* Bond Reconsideration Hr'g Trans. 13:7–9, Laffitte repeatedly testified that he did not see the clients' names on the memo lines of the checks, *id.* at 36:19–37:9, 42:19–22; 50:7–12.

1

that defense to the Government. Therefore, as fully set forth below, the Government requests that the Court order Laffitte to inform the Government as to whether he plans to assert an advice-of-counsel defense and to produce any documents and materials in support of that defense by October 28, 2022.

## I.     Background

On July 19, 2022, a federal grand jury returned a five-count Indictment charging Laffitte with Conspiracy to Commit Wire Fraud and Bank Fraud, in violation of 18 U.S.C. § 1349 (Count 1); Bank Fraud, in violation of 18 U.S.C. § 1344(2) (Count 2); Wire Fraud, in violation of 18 U.S.C. § 1343 (Count 3); and two counts of Misapplication of Bank Funds, in violation of 18 U.S.C. § 656 (Counts 4 and 5). On August 16, 2022, the same federal grand jury returned a six-count Superseding Indictment against Laffitte. The Superseding Indictment supplemented conduct to the scheme and artifice of the Conspiracy to Commit Wire Fraud and Bank Fraud charge (Count 1) and added an additional count for Misapplication of Bank Funds, in violation of 18 U.S.C. § 656 (Count 6). Thereafter, the Government presented the Second Superseding Indictment to the same federal grand jury on September 20, 2022. The trial is scheduled to begin on November 8, 2022.

Counts One through Three of the Second Superseding Indictment allege that Laffitte, while an employee, officer, and director of Palmetto State Bank ("PSB"), conspired with Murdaugh to defraud personal injury clients of nearly $2 million. As part of the scheme, Laffitte served as conservator and personal representative for Murdaugh's personal injury clients, including the Estate of D.B., H.P., A.P., H.P.Y., N.T., and M.W. Beginning in July 2011, and while serving as conservator for H.P., Laffitte extended himself eight loans at favorable rates from H.P.'s conservatorship account, totaling $355,000. In addition to the loans Laffitte personally took from H.P.'s conservatorship account, Laffitte extended sixteen unsecured loans to Murdaugh, totaling

$963,500.00. Similarly, while serving as conservator for M.W., Laffitte extended a $40,000.00 unsecured loan to Murdaugh from M.W.'s conservatorship account.

To pay back the loans Laffitte extended to Murdaugh from H.P. and M.W.'s conservatorship accounts, Laffitte negotiated settlement checks of funds belonging to Murdaugh's other personal injury clients, individuals to whom Laffitte owed a duty as personal representative or conservator. Laffitte also fraudulently directed the settlement funds to Murdaugh and his family members. For example, in December 2011, Laffitte negotiated more than $630,000 in checks for Murdaugh, funneling the money to Laffitte's family member, Murduagh's family members, and to H.P. and M.W. to pay off loans from their conservatorship accounts. The memo lines on the checks he negotiated both provided that the checks were for settlement proceeds for N.T. and H.P.Y., individuals to whom Laffitte owed a fiduciary duty as conservator. Thereafter, in February 2013 and continuing to September 2013, Laffitte negotiated twelve checks totaling more than $1,000,000, fraudulently diverting the money to pay off Murdaugh's personal loans, to purchase equipment and vehicles, and directly into Murdaugh's account at PSB. The memo lines on all twelve checks referenced that the funds were for the Estate of D.B. and A.B., individuals to whom Laffitte owed a fiduciary duty as personal representative of the Estate of D.B. Laffitte negotiated these checks all while collecting hundreds of thousands of dollars in conservator and personal representative fees.

During a hearing on Laffitte's Motion for Reconsideration of Bond, Laffitte alluded to a potential advice-of-counsel defense during both his direct and cross examination. Laffitte testified and admitted that he negotiated each one of the checks set forth above. However, Laffitte claimed that he did so because his "attorney," Alex Murdaugh, told him to do so. *See* Bond Reconsideration Hr'g Trans. 13:7–9, 37:5, 55:19–56:7, 58:7–11. For example, when the Government questioned

Laffitte about his negotiating $1,325,000 from the Estate of D.B. and A.B. settlement funds, Laffitte stated: "I listened to my attorney when he brought in checks and I did what he asked me." Trans. at 55:19–25. Therefore, the Government expects Laffitte to assert an advice-of-counsel defense during the trial.

## II.     Analysis

If Laffitte intends to assert an advice-of-counsel defense, he must give the Government notice and disclose any evidence he possesses in support of that defense before he is entitled to present that defense to the jury. The Fourth Circuit has acknowledged the existence of an "advice of counsel" legal defense, "which is generally raised in cases involving specific intent crimes, whereby a defendant seeks to rely on the 'advice of counsel' *as a shield from guilt* regarding the crimes charged in the indictment." *United States v. Perry*, 30 F. Supp. 3d 514, 541 (E.D. Va. 2014); *see also United States v. Powell*, 680 F.3d 350, 356 (4th Cir. 2012) ("A defendant may use his reliance on the legal advice of counsel 'to refute the government's proof that [he] intended to commit the offense.'" (quoting *United States v. Miller*, 658 F.2d 235, 237 (4th Cir. 1981))) (alteration in original); *United States v. Swafford*, 512 F.3d 833, 839 (6th Cir. 2008) (noting that the "partial defense of 'advice of counsel,' . . . disproves the *mens rea* element of the offense, by showing that [the defendant] had spoken with a lawyer . . . about the legality" of his actions). That is, "[t]he defense may be relevant [if] 'the defendant, on the basis of counsel's advice, believed his conduct to be lawful and thus could not be found to have had unlawful intent.'" *United States v. Impastato*, 543 F. Supp. 2d 569, 573 (E.D. La. 2008) (quoting *United States v. Beech-Nut Nutrition Corp.*, 871 F.2d 1181, 1194 (2d Cir. 1989)).

A defendant, however, cannot assert an advice-of-counsel defense unless there are sufficient facts in the record to support such a defense. Although the Government bears the burden

of proof in terms of establishing the willfulness of defendants' conduct, "[t]he general rule is that advice of counsel is no excuse for violation of law," *Miller v. United States*, 277 F. 721, 726 (4th Cir. 1921), and defendants have "a burden of production to establish a prima facie [advice-of-counsel] defense," *United States v. Westbrooks*, 780 F.3d 593, 596 (4th Cir. 2015). Raising an advice-of-counsel defense thus requires defendants to establish the following five showings with "more than a scintilla of evidence":

> (i) the advice was sought and received before taking action, (ii) [the defendant] in good faith sought the advice of a professional whom they considered competent, (iii) the purpose of securing advice was to determine the lawfulness of future conduct, (iv) a full and accurate report was made to the professional of all material facts which the defendants knew and (v) [the defendant] acted strictly in accordance with the advice of the professional who had been given a full report.

*United States v. O'Connor*, 158 F. Supp. 2d 697, 728 & n.55 (E.D. Va. 2001).

The Fourth Circuit has distilled the aforementioned five factors into two main elements: "'the defendant must establish (a) full disclosure of all pertinent facts to an attorney, and (b) good faith reliance on the attorney's advice.'" *Westbrooks*, 780 F.3d at 596 (quoting *Powell*, 680 F.3d at 356). "Therefore, although the government must *prove* the element of willfulness, the court may require the defendant to *produce* evidence supporting the advice-of-counsel defense." *Id.* When a defendant establishes a proper evidentiary foundation for such an "advice-of-counsel defense" at a trial, the court will instruct the jury on the law governing such defense. *See Powell*, 680 F.3d at 356–57.

At this time, Laffitte's defense team has not notified the Government that it intends to present an advice-of-counsel defense. Importantly, however, an assertion of the advice-of-counsel defense requires a defendant to produce discovery to the Government. A defendant who raises an advice-of-counsel defense must affirmatively produce to the Government the advice upon which

5

the defendant relies, including all otherwise-privileged communications concerning the same subject matter. *United States v. Bilzerian*, 926 F.2d 1285, 1292–94 (2d Cir. 1991); *United States v. Moazzeni*, 906 F. Supp. 2d 505, 512 (E.D. Va. 2012); *United States v. Bowman*, No. CR S-98-205, 2009 WL 1605332, at *4 (E.D. Cal. June 8, 2009); *United States v. Cooper*, 283 F. Supp. 2d 1215, 1225 (D. Kan. 2003). This is so that the Government can contest the facts raised by such a defense. *See Bilzerian*, 926 F.2d at 1292 ("[A] defendant may not use the privilege to prejudice his opponent's case or to disclose some selected communications for self-serving purposes."). In fact, defendants raising an advice-of-counsel defense must not only produce documents that support their claimed defense but also those that might impeach or undermine such a defense. *United States v. Crowder*, 325 F. Supp. 3d 131, 138 (D.D.C. 2018) ("[E]ven otherwise privileged communications that defendants do not intend to use at trial, but that are relevant to proving or undermining the advice-of-counsel defense, are subject to disclosure in their entirety." (internal quotations omitted)); *United States v. Hatfield*, No. 06-cr-0550, 2010 WL 183522, at *13 (E.D.N.Y. Jan. 8, 2010).

The Government has not uncovered any evidence that Laffitte acted in good faith reliance on the advice of counsel. Moreover, Laffitte's defense team has not produced any discovery in support of that defense, as required before properly asserting such defense. Because the assertion of an advice-of-counsel defense affords the Government discovery rights and cannot be offered prior to a defendant's case-in-chief, the parties need to resolve any dispute of whether the defendant has such a defense well before the trial begins. When, as here, the assertion of an advice-of-counsel defense could impact the scope of discovery or cause additional briefing or pre-trial issues, courts have imposed a deadline by which the defendants must provide appropriate discovery. *See, e.g.*, *Crowder*, 325 F. Supp. 3d at 138–39 (noting "[a]lthough the Federal Rules of

Criminal Procedure do not specifically require defendants to provide pretrial notice of an advice-of-counsel defense, courts have broad discretion to impose disclosure and notice requirements outside the rules" and ordering defendants to identify and disclose all materials relevant to assertion of advice-of-counsel defense not later than two weeks before trial) (citing *United States v. Armstrong*, 517 U.S. 456, 474 (1996)); *United States v. Crinel*, No. 15-61, 2016 WL 6441249, at *12 (E.D. La. Nov. 1, 2016).[2]

In an effort to avoid any unnecessary delay during the trial, the Government now requests that the Court order Laffitte to notify the Government whether he intends to assert an advice-of-counsel defense and to produce any and all materials and documents, including communications, in support of that defense. The Government further requests any engagement letters evincing an attorney-client relationship between Murdaugh and Laffitte, as well as any documents outlining the purpose, scope, and any other details of the claimed representation. Before Laffitte can present an advice-of-counsel defense to the jury, he must produce evidence to support a prima facie showing that he acted in good faith reliance on advice of counsel before committing the conduct in the Second Superseding Indictment.

### III.     Conclusion

For the foregoing reasons, the Government respectfully asks the Court to (1) order Laffitte to properly notify the Government whether he intends to assert the advice-of-counsel defense by October 28, 2022; (2) hold that by doing so, Laffitte has waived attorney-client privilege; (3) order Laffitte to produce all documents and records related to the subject matter of the advice relied

---

[2] Courts have not uniformly imposed pretrial notice and discovery requirements on advice-of-counsel defenses. *See, e.g.*, *United States v. Meredith*, No. 3:12CR-143-S, 2014 WL 897373 (W.D. Ky. Mar. 6, 2014). But the Government seeks to resolve the issue of whether Laffitte can properly assert the defense avoid any unnecessary delay in the trial.

upon, including but not limited to any communications and engagement letters, to the Government by October 28, 2022; and (4) find that the Government is authorized to review any otherwise potentially privileged documents obtained during the investigation of the case and may do so without a filter team or similar precautions. Such notice and disclosure will allow the parties sufficient time to proceed with the case with more clarity as to each party's rights, responsibilities, and burdens, and minimize unnecessary disruptions and delay during trial.

                            ADAIR F. BOROUGHS
                            UNITED STATES ATTORNEY

                   By: s/ *Emily Limehouse*
                            Emily Evans Limehouse (Federal ID #12300)
                            Winston D. Holliday, Jr. (Federal ID #7597)
                            Kathleen Michelle Stoughton (Federal ID #12161)
                            Assistant United States Attorney
                            151 Meeting Street, Suite 200
                            Charleston, South Carolina, 29402
                            (843) 266-1663
                            Emily.Limehouse@usdoj.gov

October 20, 2022