IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION

| | |
|---|---|
| United States of America, | Case No. 9:22-cr-00658-RMG |
| v. | |
| Russell Lucius Laffitte, | |
| Defendant. | |

**Defendant Russell Laffitte's Motion to Compel the Production of the Harris Report from Palmetto State Bank**

Pursuant to Rule 17(c) of the Federal Rules of Criminal Procedure, Mr. Russell Laffitte, by and through undersigned counsel, moves the Court to compel Palmetto State Bank ("the Bank") to produce the Harris Report. The Harris Report is, unquestionably, an important document that is needed for the reparation of Mr. Laffitte's defense, and it purportedly contains exculpatory evidence that undermines the Government's case against Mr. Laffitte. In addition, the Harris Report was purportedly disclosed to law enforcement and the Federal Deposit Insurance Commission ("FDIC"), the disclosure of which waives any privilege that the Bank may now claim. Accordingly, Mr. Laffittee respectfully requests that the Court grant his Motion to Compel the Production of the Harris Report from Palmetto State Bank and order to the Bank to immediately disclose it.

**Factual and Procedural Background**

A. **Mr. Laffitte's Indictments**

On July 19, 2022, a federal grand jury returned a five-count Indictment against Mr. Laffitte, charging him with (1) conspiracy to commit wire fraud and bank fraud, in violation of 18 U.S.C. § 1349 (Count 1); (2) bank fraud, in violation of 18 U.S.C. § 1344(2) (Count 2); wire fraud, in

1

violation of 18 U.S.C. § 1343 (Count 3); and two counts of misapplication of bank funds, in violation of 18 U.S.C. § 656 (Counts 4 and 5). He was arraigned on July 27, 2022.

On August 16, 2022, the grand jury returned a six-count Superseding Indictment against Mr. Laffitte. According to the Government, the Superseding Indictment supplemented conduct to the scheme and artifice of the conspiracy to commit wire fraud and bank fraud charge (Count 1) and added another count for the misapplication of bank funds, in violation of 18 U.S.C. § 656 (Count 6). Mr. Laffitte was arraigned on the Superseding Indictment on August 24, 2022.

After the Government conceded that there were inaccuracies within the Superseding Indictment, the Government decided to fix its errors by filing a Second Superseding Indictment. (Mr. Laffitte's Mot. to Dismiss Second Superseding Indictment 2–3, ECF No. 73 at 2–3.) Eventually, in its third attempt, the Government presented the Second Superseding Indictment to the grand jury on September 20, 2022. Mr. Laffitte was arraigned on the Second Superseding Indictment on September 23, 2022.

**B. The Subpoena to the Bank Concerning the Harris Report**

Pursuant to Rule 17 of the Federal Rules of Criminal Procedure, Mr. Laffitte's undersigned counsel transmitted a subpoena to the Bank on September 16, 2022. Ex. 1. Within the subpoena, Mr. Laffitte specifically requested that the Bank disclose the Harris Report. *Id.* The Harris Report is a document that the Bank had prepared in the Fall of 2021, and it was prepared as part of an internal investigation into the crimes of Alex Murdaugh. Greg Harris, a former federal prosecutor who is now in private practice, conducted the internal investigation and authored the Report for the Bank. After the Report was completed, the Bank's Board of Directors decided to produce and share the Harris Report with law enforcement and the FDIC in March 2022.

Pursuant to the subpoena, the Bank was given until September 30, 2022, to provide the Harris Report to Mr. Laffitte, but Mr. Laffitte's undersigned counsel conferred with the Bank and agreed to wait on requiring the Report's production. By October 26, 2022, however, Mr. Laffitte's undersigned counsel learned that the Harris Report likely contains information that is critical to preparing Mr. Laffitte's defense. Particularly, the Harris Report likely contains information about how the Bank's Board of Directors authorized the $680,000.00 check and contradicts the Government's charge, in Count 4, that Mr. Laffitte issued the check without any involvement from the Bank's Board. (Second Superseding Indictment ¶ 18, ECF No. 61.) Further, it was also revealed that the Harris Report was disclosed to other parties and was not kept internally at the Bank. On that same day that Mr. Laffitte's undersigned counsel requested the Harris Report from the Bank, the Bank refused to disclose the Harris Report and has yet to produce it to Mr. Laffittee, despite trial being in approximately one week.

**Legal Standard**

Under Rule 17 of the Federal Rules of Criminal Procedure, "[a] subpoena may order the witness to produce any books, papers, documents, data, or other objects the subpoena designates." Fed. R. Crim. P. 17(c)(1). "The court may direct the witness to produce the designated items in court before trial or before they are to be offered in evidence." *Id.* Additionally, "[w]hen the items arrive, the court may permit the parties and their attorneys to inspect all or part of them." *Id.* A district court may only quash or modify a lawful subpoena if it finds that "compliance would be unreasonable or oppressive." Fed. R. Crim. P. 17(c)(2).

Although "Rule 17(c) 'is not intended to provide a means of pretrial discovery," it still possesses a primary purpose that seeks to "expedite the trial by providing a time and place <u>before</u> trial for the inspection of subpoenaed materials." *United States v. Rand*, 835 F.3d 451, 462 (4th Cir. 2016) (quoting *United States v. Richardson*, 607 F.3d 357, 368 (4th Cir. 2010)). In *United*

3

*States v. Nixon*, the Supreme Court stated that party issuing a subpoena in a criminal case bears the burden of showing:

> (1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general "fishing expedition."

418 U.S. 683, 699–700 (1974). The Fourth Circuit noted that the Supreme Court "distilled this showing into three requirements: '(1) relevancy; (2) admissibility; [and] (3) specificity.'" *Rand*, 835 F.3d at 462 (quoting *Nixon*, 418 U.S. at 700). These requirements apply to third-party subpoenas. *See id.* at 462–63; *see also United States v. Doty*, No. 2:18-00034, 2018 WL 3543068, at *1–2 (S.D.W. Va. July 23, 2018).

**Argument**

**A. The Bank Must Produce the Harris Report Because Mr. Laffitte's Request Complies with *Nixon* and *Rand***

Mr. Laffitte's request for the Harris Report satisfies the standard for receiving documents from third parties in a criminal proceeding. Again, this Court must consider whether the Harris Report is relevant, admissible, and specific. *Rand*, 835 F.3d at 462 (quoting *Nixon*, 418 U.S. at 700).

First, the Harris Report is extremely relevant to Mr. Laffitte's defense. If the Harris Report includes exculpatory information about the $680,000.00 check, or about any other charges, the Harris Report is certainly relevant to determining Mr. Laffitte's innocence and the true strength of the Government's Second Superseding Indictment. *See In re Martin Marietta Corp.*, 856 F.2d 619, 622 (4th Cir. 1988) (holding that *Nixon*'s relevancy prong was satisfied when a defendant sought an internal audit that was a basis for his indictment, which was "clearly of evidentiary

4

value," and also sought notes that were of "evidentiary value" to preparing a defense). Second, the Harris Report is admissible because, as explained below, the Bank has waived any privilege that it previously possessed over the Harris Report by disclosing the Report to outside parties. As such, the Harris Report would be admissible at trial in support of Mr. Laffitte's defense. And lastly, Mr. Laffitte's request is extremely specific. Mr. Laffitte is not asking for multiple reports created by the Bank, and nor is he seeking hundreds of documents that could amount to a "fishing expedition" for evidence. Mr. Laffitte is looking for one specific document, by a specific author, that likely contains exculpatory information regarding the charges within the Government's Second Superseding Indictment. *See id.* at 622 (finding that a request for an internal audit, interview notes, transcripts, electronic records, and other correspondence "were described with sufficient specificity").

As such, the Court should find that Mr. Laffitte's subpoena satisfies the standard set forth by *Nixon* and fully employed by the Fourth Circuit in *Rand* for subpoenas to third parties.

## B. The Bank Waived any Privilege to the Harris Report by Disclosing it to Third Parties

Mr. Laffitte expects the Bank will argue or suggest that the Harris Report is protected by the work-product doctrine or attorney-client privilege, making the Harris Report inadmissible. But the Court should reject the Bank's attempt to shield the Harris Report from Mr. Laffitte.

It is well established that a party can waive the work-product doctrine or attorney-client privilege by sharing information with outside parties. *See In re Grand Jury 16-3817 (16-4)*, 740 F. App'x 243, 246 (4th Cir. 2018) ("Any voluntary disclosure of privileged or protected information typically waives both attorney-client privilege and work-product protection." (citing *In re Martin Marietta Corp.*, 856 F.2d at 622–23)). Generally, "implied waiver occurs when the party claiming the privilege has made *any disclosure* of a confidential communication to *any*

5

*individual* who is not embraced by the privilege." *In re Grand Jury Subpoena*, 341 F.3d 331, 336 (4th Cir. 2003) (emphases added) (quoting *Hawkins v. Stables*, 148 F.3d 379, 384 n.4 (4th Cir. 1998)); *see also In re Mut. Funds Inv. Litig.*, 251 F.R.D. 185, 187–88 (D. Md. 2008) (holding that a party waived the attorney-client privilege and work-product protection by disclosing documents to regulators). Specifically for work-product protection, "when an attorney freely and voluntarily discloses the contents of otherwise protected work product to someone with interests adverse to his or those of the client, knowingly increasing the possibility that an opponent will obtain and use the material, he may be deemed to have waived the work product protection." *In re Doe*, 662 F.2d 1073, 1081 (4th Cir. 1981) (citations omitted). Even more importantly for the waiver of the work-product doctrine, "release of otherwise protected material without an intent to limit its future disposition might forfeit work product protection, *regardless of the relationship between the attorney and the recipient of the material*." *Id.* (emphasis added).

Here, the Bank purportedly provided the Harris Report to law enforcement and to the FDIC. Under Fourth Circuit precedent, the Bank was waived any privilege that it believes it possesses over the Harris Report as a matter of law. *See In re Grand Jury Subpoena*, 341 F.3d at 336–37 (holding that statements made to FBI agents about protected communications waived the attorney-client privilege); *In re Doe*, 662 F.2d at 1081–82 (holding that a party's work-product protection was forfeited after the representation to a client was over and the attorney likely possessed any "control over the client's use or disposition of the[] documents"); *In re Mut. Funds Inv. Litig.*, 251 F.R.D. at 187–88 (holding that disclosures to the Securities and Exchange Commission and New York Attorney General's Office were not protected by the attorney-client privilege or work-product doctrine). Accordingly, the Court should reject any attempt by the Bank to claim a privilege or protection to the Harris Report.

## Conclusion

For the reasons set forth above, the Court should grant the Government's Motion to Compel the Production of the Harris Report.

Respectfully Submitted,

*/s/ E. Bart Daniel*

E. Bart Daniel
Federal Bar No. 403
Nelson Mullins Riley & Scarborough LLP
E-mail:  bart.daniel@nelsonmullins.com
Phone: (843) 853-5200
151 Meeting Street, 6th Floor
P.O. Box 1806 (29402-1806)
Charleston, SC 29401-2239

*/s/ Matt Austin*

Matt Austin
Federal Bar No. 11435
Nelson Mullins Riley & Scarborough LLP
E-mail:  matt.austin@nelsonmullins.com
Phone: (843) 853-5200
151 Meeting Street, 6th Floor
P.O. Box 1806 (29402-1806)
Charleston, SC 29401-2239

*/s/ Christian Joshua Myers*

Christian J. Myers
Federal Bar No. 13096
Nelson Mullins Riley & Scarborough LLP
E-mail:  josh.myers@nelsonmullins.com
Phone: (202) 689-2800
101 Constitution Avenue NW, Suite 9000
Washington, DC 20001

*Attorneys for Russel Lucius Laffitte*

Charleston, South Carolina
October 31, 2022