UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| UNITED STATE OF AMERICA, | ) | Case No. 9:22-cr-00658-RMG |
| | ) | |
| Versus | ) | **PALMETTO STATE BANK'S MOTION TO** |
| | ) | **QUASH IN PART DEFENDANT'S** |
| RUSSELL LUCIUS LAFFITTE, | ) | **SUBPOENA DATED SEPTEMBER 16,** |
| | ) | **2022, AND FOR ENTRY OF A** |
| Defendant. | ) | **PROTECTIVE ORDER** |

Non-party, Palmetto State Bank (hereinafter, the "Non-party" or the "Bank"), by and through its undersigned counsel, moves the Court, pursuant to Fed. R. Crim. P.17(c) and applicable law, for an Order quashing a subpoenas duces tecum, dated September 16, 2022 (the "Subject Subpoena") and protecting the Non-party, for the reasons stated herein.[1] The Subject Subpoena is directed to, but was never formally served on, the Non-party. Rather, counsel for the Defendant sent the undersigned a copy of the Subject Subpoena in a letter dated September 16, 2022. The Subject Subpoena is attached as Exhibit 1. This Motion is based on the following grounds:

1. As noted above, defense counsel provided a copy of the Subject Subpoena to the undersigned by letter dated September 16, 2022. Undersigned counsel did not, and has not, waived service on behalf of the Non-party. Nonetheless, the undersigned counsel and defense counsel have communicated at length about the Subject Subpoena and the documents responsive thereto.

2. The Subject Subpoena called for the Non-party to produce six categories of documents, in addition to requesting what is described as the "Harris Report," prior to trial, by September 30, 2022. See Ex. 1 at p. 4, Item 5.

---

[1] A supporting memorandum is not included. It would serve no useful purpose because a full explanation of the Motion is contained within. See Local Rim. Rule 12.03 (D.S.C.)

1

3. In the same fashion, undersigned counsel received a second subpoena from defense counsel as an enclosure to a letter dated September 20, 2022. This second subpoena was also not properly served on the Non-party. Undersigned counsel did not, and has not, waived service of the second subpoena on behalf of the Non-party but has communicated with defense counsel about it and the documents responsive thereto.

4. The second subpoena called for the Non-party to produce two categories of documents prior to trial, by October 4, 2022.

5. Undersigned counsel has cooperated with defense counsel since receiving the two subpoenas and produced to them the requested documents except for those that are privileged and protected.

6. On behalf of the Non-party, the undersigned attorneys objected to and withheld the Harris Report sought by the Subject Subpoena. See Ex. 1 at p. 4. The Harris Report was prepared by an attorney retained by the bank, Gregory Poole Harris, Esq., to advise and counsel the bank on legal matters. The attorney's confidential report to the bank is subject to the attorney-client privilege and work product protection.

7. By letter dated October 5, 2022, counsel for the Non-party informed defense counsel that the Non-party objects to the Subject Subpoena to the extent it seeks the Harris Report, on the grounds that the report is protected from disclosure by the attorney-client privilege and work product doctrine.

8. The Non-party retained Attorney Harris in early November 2021, as outside legal counsel, to investigate and advise it as to certain matters involving Alex Murdaugh that had come to light in the preceding months that were, and likely would be, the basis of pending and future litigation and claims against the Non-party. At the outset of the engagement, Attorney Harris and

the Non-party entered into a written agreement that formally establishes their attorney-client relationship and that the investigation and any report done by him was in the performance of the legal representation of the Non-party.

9. The Harris Report is the product of the investigative work performed by Attorney Harris in his role as outside legal counsel. The report he rendered gives his impressions, findings, and advice to his client, the Bank.

10. As a confidential communication between attorney and client, the entire Harris Report is protected from disclosure by the attorney-client privilege. See Hawkins v. Stables, 148 F.3d 379, 383 (4th Cir.1998) (explaining the elements to attorney-client privilege).

11. The Non-party holds and asserts its privilege over the Harris Report. The report is absolutely protected from disclosure, as a result. See id. (stating that, when it applies, the attorney-client privilege affords "complete protection from disclosure").

12. The work product doctrine also protects the Harris Report from disclosure. The report constitutes materials prepared in anticipation of litigation by or for a party. See United States v. Nobles, 422 U.S. 225, 237-38, 95 S.Ct. 2160 (1975) (explaining the work product doctrine as a "qualified privilege," held by lawyer and client, "for certain materials prepared by an attorney acting for his client in anticipation of litigation") (internal citations omitted).

13. The Harris Report includes findings and opinion work product, "represent[ing] the actual thoughts or impressions of the attorney." See In re Grand Jury Subpoena, 870 F.3d 312, 316 (4th Cir. 2017) (internal quotation marks omitted). Opinion work product "enjoys nearly absolute immunity" and is discoverable "only in rare and extraordinary circumstances." Id. This case does not present rare and extraordinary circumstances.

14. Accordingly, the work product doctrine protects the Harris Report from disclosure

15. The attorney-client privilege is a cardinal protection that is deeply embedded in the law. Without the privacy of communication between attorney and client, and the "full and frank" exchange of information that flows therefrom, "a lawyer could be deprived of the information necessary to prepare and present his client's defense." In re Search Warrant Issued June 13, 2019, 942 F.3d 159, 174 (4th Cir. 2019), as amended (Oct. 31, 2019) (citing Upjohn Co. v. United States, 449 U.S. 383, 389, 101 S.Ct. 677 (1981).

16. The work product doctrine is similarly vital to our adversary system. As the Supreme Court of the United States explained, eighty years ago, in Hickman v. Taylor, 329 U.S. 495, 511, 67 S. Ct. 385, 393–94 (1947)(emphasis added):

> . . . It is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel. Proper preparation of a client's case demands that he assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference. That is the historical and the necessary way in which lawyers act within the framework of our system of jurisprudence to promote justice and to protect their clients' interests. ***This work is reflected, of course, in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways***— aptly though roughly termed by the Circuit Court of Appeals in this case (153 F.2d 212, 223) as the 'Work product of the lawyer.' Were such materials open to opposing counsel on mere demand, much of what is now put down in writing would remain unwritten. An attorney's thoughts, heretofore inviolate, would not be his own. Inefficiency, unfairness and sharp practices would inevitably develop in the giving of legal advice and in the preparation of cases for trial. The effect on the legal profession would be demoralizing. And the interests of the clients and the cause of justice would be poorly served.

17. In a recent communication requesting the Harris Report, the attorneys for the Defendant suggested that the Non-party may have produced the Harris Report to law enforcement agencies or bank regulators, which they contended would result in waiver of the attorney-client and work product protections over the report.

18. The Non-party now moves to quash the Subject Subpoena, to the extent it seeks the Harris Report, under Rule 17 of the Federal Rules of Criminal procedures, which provides: "On motion made promptly, the court may quash or modify the subpoena if compliance would be unreasonable or oppressive." Fed. R. Crim. P. 17(c)(2). The Non-party also moves for a protective order, pursuant to the Court's inherent authority and under Rule 16, to prevent any future attempts by the Defendant to obtain its privileged document, the Harris Report. Fed. R. Crim P. 16(d)(1) (providing that "[a]t any time the court may, for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate relief.").

19. "Rule 17(c), which governs the issuance of subpoenas duces tecum, is not a discovery device." United States v. Fowler, 932 F.2d 306, 311 (4th Cir. 1991) (citing Bowman Dairy Co. v. United States, 341 U.S. 214, 220, 71 S.Ct. 675, 678, 95 L.Ed. 879 (1951).

20. Courts may quash subpoenas under Rule 17(c) if "unreasonable or oppressive." Fed. R. Crim. P. 17(c)(2). A Rule 17(c) subpoena is deemed "unreasonable or oppressive" unless the requesting party shows:

> (1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general 'fishing expedition.'

United States v. Caro, 597 F.3d 608, 620 (4th Cir.2010) (quoting United States v. Nixon, 418 U.S. 683, 699–700, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974)).

21. In addition, "Courts have often considered privileges and privacy interests in determining whether or not Rule 17(c) subpoenas should be quashed." United States v. Shrader, No. CRIM 1:09-0270, 2010 WL 2836752, at *4 (S.D.W. Va. July 20, 2010), aff'd, 716 F. Supp. 2d 464 (S.D.W. Va. 2010).

22.     Here, the Harris Report is the product of an internal investigation conducted by an outside attorney retained as counsel by the Non-Party that is protected from disclosure by both the attorney-client privilege and work product doctrine.

23.     The Non-party has not produced the Harris Report to any law enforcement agency. Although the report has been subpoenaed by at least one law enforcement agency, the Bank has steadfastly objected to its production as being privileged and protected from disclosure. It has not been disclosed to state or federal prosecuting authorities or state lawyer disciplinary authorities.

24.     Moreover, the Non-party, a bank, is insured and regulated by the FDIC. It is prohibited from making certain disclosures under 12 C.F.R. § 309.6, which provides: "**no person shall disclose or permit the disclosure of any exempt records, or information contained therein**, to any persons other than those officers, directors, employees, or agents of the Corporation who have a need for such records in the performance of their official duties." (Double emphasis added); see also 12 C.F.R. § 309.2 (defining [t]he terms Corporation or FDIC [to] the Federal Deposit Insurance Corporation").

25.     Federal regulation defines the term "record" broadly, to include "(1) [a]ny information that would be an agency record subject to the requirements of this section when maintained by the FDIC in any format, including electronic format; and (2) [a]ny information described under paragraph (e)(1) of this section that is maintained for the FDIC by an entity under Government contract, for purposes of records management." 12 C.F.R. § 309.2(a). If there were communications with the FDIC about the Harris Report, or if the Harris Report was reviewed by or provided to the FDIC, the Harris Report, along with any related communications, would meet this definition of "record."

26. If the Harris Report, or its substance, were shared with the FDIC, federal regulation would also deem the Harris Report and any related communications to be "exempt records" because they would be "[r]ecords that are contained in or related to examination, operating, or condition reports prepared by, on behalf of, or for the use of the FDIC or any agency responsible for the regulation or supervision of financial institutions[.]" 12 C.F.R. 309.5(g)(8). As exempt records, federal regulation would prohibit the Bank from disclosing, or permitting the disclosure of, the Harris Report and related communications, to the extent provided to the FDIC.

27. Further, if the Harris Report were provided to federal or state bank regulators, this disclosure would not constitute a waiver of any applicable privileges or protections, as a matter of law.

28. The Federal Deposit Insurance Act contains a statutory safe harbor that allows privileged information to be disclosed to certain government bank regulators, whether state or federal, without resulting in a waiver of the applicable privileges and protections.

29. Specifically, Title 12 of the United States Code, Section 1828 provides:

**(x) Privileges not affected by disclosure to banking agency or supervisor**

**(1) In general**

**The submission by any person of any information to** the Bureau of Consumer Financial Protection, **any Federal banking agency, State bank supervisor**, or foreign banking authority **for any purpose in the course of any supervisory or regulatory process** of such Bureau, agency, supervisor, or authority **shall not be construed as waiving, destroying, or otherwise affecting any privilege such person may claim with respect to such information under Federal or State law** as to any person or entity other than such Bureau, agency, supervisor, or authority.

12 U.S.C.A. § 1828 (double emphasis added).

30. If the Harris Report were reviewed by state or federal bank regulators, this limited disclosure, as a matter of law, does not constitute a waiver of the Non-party's attorney-client privilege or the work product protection.

31. Additionally, to the extent that the Defendant may ask this Court to weigh his need for information potentially contained within the Harris Report against the importance of the attorney-client privilege and work product protections of the Non-party, the Supreme Court of the United States has expressly rejected the use of such a balancing test with respect to the attorney-client privilege. See <u>Swidler v. Berlin U.S.</u>, 524 U.S. 399 (1998).

32. Moreover, the Harris Report contains much privileged and work product information unrelated to the charges at issue in this case. For that additional reason, it would be improper to invade and sacrifice the legitimate privilege of the Non-party that protects against compelled disclosure of a confidential report prepared by its legal counsel on legal matters.

33. Further, the disclosure of work product to a third party does not necessarily result in waiver of the privilege over the material. See <u>U.S. ex rel. Purcell v. MWI Corp.</u>, 209 F.R.D. 21, 25 (D.D.C. 2002) ("[A] party does not automatically waive the work product privilege by disclosure to a third party.").

34. Rather, to waive work product protection, a party must disclose the material in circumstances under which there is significant likelihood that an adversary or potential adversary will obtain it. <u>United States v. Stewart</u>, 287 F. Supp. 2d 461, 468 (S.D.N.Y. 2003) ("Most courts that have analyzed the question whether a party has waived work product protection over documents by disclosing them to third parties have found waiver only when the disclosures substantially increased the opportunities for potential adversaries to obtain the information."). No

such disclosure has occurred here. The Bank and its attorneys have been vigilant on maintaining the confidentiality of the Harris Report.

35. Particularly in light of the protections of the Federal Deposit Insurance Act, which provides a safe harbor provision protecting privilege, if the Harris Report were disclosed to a bank regulator, such disclosure would not have been under circumstances presenting a significant likelihood that an adversary or potential adversary would obtain the report, and therefore, would not result in waiver, even under the common law.

Considering the foregoing, the Non-party, Palmetto State Bank, respectfully requests that the Court grant this Motion and issue an Order:

a) finding that the Harris Report is protected from disclosure by the attorney-client privilege and work product doctrine;

b) quashing the Subject Subpoena to the extent it seeks production of the Harris Report; and

c) prohibiting any other attempts by the Defendant to compel disclosure of the Harris Report through legal process.

Respectfully submitted,

s/ Trenholm G. Walker
**G. Trenholm Walker (Fed ID# 5777)**
Direct: (843) 727-2208
Email: Walker@WGLFIRM.com
**Thomas P. Gressette, Jr. (Fed ID# 7261)**
Direct: (843) 727-2249
Email: Gressette@WGLFIRM.com
**James W. Clement (Fed ID# 12720)**
Direct: (843) 727-2224
Email: Clement@WGLFIRM.com

**WALKER GRESSETTE & LINTON, LLC**
Mail: P.O. Drawer 22167, Charleston, SC 29413
Office: 66 Hasell Street, Charleston, SC 29401
Phone: (843) 727-2200

*ATTORNEYS FOR PALMETTO STATE BANK*

October 28, 2022
Charleston, South Carolina