IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION

**UNITED STATES OF AMERICA**

      **vs.**     CRIMINAL. NO. 9:22-cr-00658

**RUSSELL LUCIUS LAFFITTE**

**GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S SECOND
MOTION TO DISMISS THE SECOND SUPERSEDING INDICTMENT**

The Defendant, Russell Lucius Laffitte, has filed a Second Motion to Dismiss the Second Superseding Indictment. He asks the Court to usurp the role of the jury and weigh conflicting evidence to make findings of fact before any such evidence has been fairly presented in a neutral forum. The Government respectfully requests the Court deny the motion.

**I.     Background**

On September 20, 2022, the grand jury returned a Second Superseding Indictment charging the Defendant with conspiracy to commit wire fraud and bank fraud (Count One); bank fraud (Count Two); wire fraud (Count Three); and three counts of misapplication of bank funds (Counts Four, Five, and Six). *Second Superseding Indictment*, ECF No. 61. The Defendant first moved to dismiss the Second Superseding Indictment on September 26, arguing the Government exceeded its authority by superseding. ECF No. 73. The Court denied that motion, holding "[t]he Government was within its right to file the Second Superseding Indictment." ECF No. 94 at 4.

On October 31, the Defendant filed a second motion to dismiss, this time based on alleged "factual errors" in the indictment. *Second Mot. to Dismiss*, ECF No. 137 at 1. The Defendant's claims are simply a dispute about the weight of the evidence against him. He has identified no

legal or factual error in the Second Superseding Indictment. The indictment sufficiently puts him on notice of the charges against him and the essential facts underlying those charges, and his motion should be denied.

**II.     The Defendant's challenge to Count Four is a premature Rule 29 motion asking this Court to weigh evidence before any evidence has been introduced.**

The Defendant's claim that Count Four's allegations are false is not a valid basis for dismissal of an indictment. The problem with the Defendant's argument "is that it conflates pleading with proof." *United States v. Ring*, 628 F. Supp. 2d 195, 223 (D.D.C. 2009) (quotation marks omitted). "On a motion to dismiss an indictment, the question is not whether the government has presented sufficient evidence to support the charge, but solely whether the allegations in the indictment, if true, are sufficient to establish a violation of the charged offense." *United States v. Todd*, 446 F.3d 1062, 1068 (10th Cir. 2006); *see United States v. Thomas*, 367 F.3d 194, 197 (4th Cir. 2004) ("Despite [the defendant's] claim that he is appealing the denial of his motion to dismiss the indictment, his argument to us concerns not the sufficiency of the indictment allegations, but rather, the sufficiency of *the record* to support a finding that [the defendant] was guilty." (emphasis in original)). The question at issue here—whether the allegations in the indictment are sufficient—"does not involve any examination of the evidence."[1] *Todd*, 446 F.3d at 1068. The proper time to argue the evidence is insufficient to sustain a

---

[1] *Todd* explained that in "limited circumstances," district courts may dismiss a charge at the pretrial stage if "the operative facts are undisputed and the government fails to object to the district court's consideration of those undisputed facts in making the determination regarding a submissible case." 446 F.3d at 1068. "Dismissals under this exception are not made on account of a lack of evidence to support the government's case, but because undisputed evidence shows that, as a matter of law, the Defendant could not have committed the offense for which he was indicted." *Id.* Because the evidence in this case is disputed, it would be improper to rely on the Defendant's proffered version of events to conclude the case should not proceed to trial. Instead, the Defendant should have the same opportunity as any other defendant to contest the Government's evidence at a jury trial.

conviction is, under Rule 29, "[a]fter the government closes its evidence or after the close of all the evidence," or after a guilty verdict. Fed. R. Crim. P. 29. The Defendant's disputes with the Government's evidence do not entitle him to take this case from the jury.

Count Four alleges that the Defendant willfully misapplied bank funds, with the intent to injure and defraud PSB, by distributing $680,000 of PSB funds to Alex Murdaugh's former law firm without notice to or consent from the PSB Board of Directors. *Second Superseding Indictment*, ECF No. 61 at 14. The Defendant's claim that his evidence will show PSB's Executive Committee did consent to the payment does not demonstrate an error in the indictment; it demonstrates that there are questions of fact and credibility for the jury to resolve.

For example, the Defendant argues he testified at the September bond reconsideration hearing that "himself, his father, and his sister" were involved in making the decision to write a check for $680,000 to the law firm. *Second Mot. to Dismiss*, ECF No. 137 at 7–8. But the Defendant's own story on this issue has evolved over time. In an October 29, 2021 email to the PSB Board of Directors, the Defendant informed the Board that the bank had taken "a $680,000 loss." Exhibit 1 at 1 (Oct. 29, 2021, 3:22 pm email). He said, "*I* negotiated with the law firm to pay part [of the $1,172,945.76 in improperly converted checks] and they pay the balance to make their client whole." *Id.* (emphasis added).

Then, in a November 2, 2021 email, the Defendant notified PSB's counsel and the members of the bank's Litigation Committee that "[t]he bank is paying this amount [$680,000]," and "[t]he verbal contract between PSB and PMPED was done with the approval of *the Chairman of the Board and the CEO*." *See* Exhibit 2 at 1 (Nov. 2, 2021, 5:35 pm email) (emphasis added). The CEO at the time was the Defendant, and the Chairman of the Board was his father.

3

In a June 2022 interview, the Defendant's story changed again. He first claimed he, his father, *and* his sister had discussed paying $680,000 to the firm. *See* Exhibit 3 at 104–05 (excerpt of June 23, 2022 interview transcript) **(under seal)**. Later in the interview, though, he says he and his father were in his office discussing the stolen Badger money: "we talked about it, we wanted to offer $680." *Id.* at 109–10. In that discussion, there was no mention of the Defendant's sister. *Id.* Then, in the September 2022 bond reconsideration hearing, the Defendant again said that he, his father, and his sister had discussed paying $680,000 to the firm. *See* 9/6/22 Bond Hr'g Trans. at 91:2–13.

Similarly, the Defendant argues in his motion to dismiss that he cut the check "under the supervision of the Board's attorney." *Second Mot. to Dismiss*, ECF No. 137 at 7. But in a follow-up to his October 29 email informing the Board he had agreed to pay the firm $680,000, the Defendant said, "Attorney's [*sic*] were informed, but not consulted." Exhibit 1 at 3 (Oct. 29, 2021, 3:57 pm email). The Defendant's story regarding the $680,000 payment—including in sworn statements—has changed several times, and it is "within the sole province of the jury" to determine which version of that story, if any, is credible.[2] *United States v. Burgos*, 94 F.3d 849, 863 (4th Cir. 1996) (en banc).

"An indictment returned by a legally constituted and unbiased grand jury . . . if valid on its face, is enough to call for trial of the charge on the merits." *Costello v. United States*, 350 U.S. 359, 363 (1956). As set forth below, Count Four sufficiently alleges that the Defendant willfully misapplied money in the care and custody of PSB, with the intent to injure and defraud PSB, when

---

[2] The examples cited above are meant only to establish that the Government's evidence directly contradicts the version of events the Defendant has proffered in his motion. The additional evidence the Government will introduce at trial—including bank documents, internal communications, and witness testimony—will establish the Defendant's guilt beyond a reasonable doubt.

4

he distributed $680,000 of PSB funds to Murdaugh's former law firm without notice to or consent from the PSB Board of Directors, knowing he had fraudulently transferred the money to Murdaugh. *See Second Superseding Indictment*, ECF No. 61 at 14. The Defendant's disputes with the Government's evidence do not warrant dismissal of the indictment. Competing questions of fact and credibility are classic questions for the jury to resolve. The Court should decline the Defendant's invitation to act as the finder of fact and weigh evidence that has not yet been introduced. His motion to dismiss should be denied.

### III.     The Defendant has not shown any error before the grand jury.

The Defendant's challenges to the Government's grand jury presentation boil down to two claims: he argues (1) the Government failed to present the grand jury with evidence supporting his claim that the PSB Executive Committee approved the $680,000 payment to the law firm; and (2) witness testimony before the grand jury included "misstatements" caused by "misunderstandings of the law." *Second Mot. to Dismiss*, ECF No. 137 at 6, 9–13. Both claims are without merit.

The Defendant's first claim fails because the Government has no duty to present the defense to the grand jury. The grand jury has "twin historical responsibilities": "bringing to trial those who may be justly accused and shielding the innocent from unfounded accusation and prosecution." *United States v. Williams*, 504 U.S. 36, 51 (1992). "It is axiomatic that the grand jury sits not to determine guilt or innocence, but to assess whether there is adequate basis for bringing a criminal charge." *Id.* To make that assessment, the Supreme Court has acknowledged, "it has always been thought sufficient to hear only the prosecutor's side." *Id.* The Government is therefore not required to present exculpatory information to the grand jury, *id.* at 52, or to anticipate and present a defendant's affirmative defenses to the grand jury, *United States v. Gardner*, 860

F.2d 1391, 1395 (7th Cir. 1988).  Requiring the Government to present the defense's argument (without the target of the investigation present) would turn the grand jury proceeding into the trial itself.  Moreover, the only evidence the Defendant claims should have been presented to the grand jury is his own self-serving statement and evidence he did not disclose he had until after the Second Superseding Indictment had been issued.  *See Second Mot. to Dismiss*, ECF No. 137 at 7–8.  The time for the Defendant to present his evidence is in trial, before a petit jury.  The Court should reject the argument that the indictment is defective because the grand jury presentation did not include evidence the Defendant believes supports his defense.

The Defendant's second challenge is another attempt to recast a dispute about the weight of the evidence into a legal error in the indictment.  The Defendant's disagreements with the case agent's grand jury testimony are not a basis for dismissal.  Even assuming the Defendant has correctly identified any misstatement in the grand jury testimony (and to be clear, he has not), the Supreme Court has squarely held that "the mere fact that evidence itself is unreliable is not sufficient to require a dismissal of the indictment," and "a challenge to the reliability or competence of the evidence presented to the grand jury *will not be heard*."  *Williams*, 504 U.S. at 54 (quotation marks omitted, emphasis added).  "A complaint about the quality or adequacy of the evidence can always be recast as a complaint that the prosecutor's presentation was 'incomplete' or 'misleading,'" but, the Supreme Court has emphasized, "[r]eview of facially valid indictments on such grounds would run counter to the whole history of the grand jury institution, and neither justice nor the concept of a fair trial requires it."  *Id.* at 54–55 (quotation marks and alterations omitted).

"After indictment, the judiciary's role in policing the credibility of witnesses before a grand jury is minimal."  *United States v. Strouse*, 286 F.3d 767, 771 (5th Cir. 2002).  Courts may

6

use their supervisory power to dismiss an indictment because of *misconduct*, *Williams*, 504 U.S. at 46, but the Defendant has acknowledged there was no such misconduct here. *Second Mot. to Dismiss*, ECF No. 137 at 9 ("Mr. Laffitte does not claim that these misstatements were intentional."). And the Defendant has cited no authority for the proposition that courts may dismiss indictments based on factual disputes regarding grand jury testimony. *Williams* expressly disclaims that notion. 504 U.S. at 54.

The Defendant's claims amount to factual disputes for the jury to resolve. He argues the case agent's grand jury testimony that a reasonable personal representative (PR) fee is 1% to 1.5% "is unhelpful, misleading, and fails to reference any standard or source relied upon." *Second Mot. to Dismiss*, ECF No. 137 at 10. The Defendant is free to cross-examine the agent on his testimony at trial. The Defendant also disputes the agent's characterization of a 5% PR fee as high and argues the agent failed to inform the jury that a PR fee above 5% can be approved by the court "for extraordinary services." *Id.* Whether the PR and conservator fees the Defendant collected from Murdaugh's clients were reasonable, and whether the Defendant sought court approval for taking a higher fee in exchange for extraordinary services (he did not), are questions of fact for the jury to decide.[3]

Next, the Defendant argues there are "inaccuracies and *critical* omissions surrounding the disbursement of Donna Badger's estate" because, as personal representative for the estate, the Defendant was not responsible for managing the $1.325 million disbursed to Arthur Badger.

---

[3] For example, the Defendant argues that as the PR for Donna Badger's estate, he was responsible for managing only $500 in settlement funds. *Second Mot. to Dismiss*, ECF No. 137 at 11. He disclaims any responsibility for managing the $1.325 million that went to Arthur Badger (a beneficiary of Donna's estate). *Id.* Whether it was reasonable for the Defendant to collect a $35,000 PR fee from Arthur Badger given that he was allegedly only responsible for managing $500 in settlement funds is a jury question. *See* Exhibit 5 (Arthur Badger Disbursement Sheet).

7

*Second Mot. to Dismiss*, ECF No. 137 at 10–11 (emphasis in original). This claim ignores that the Defendant has admitted to negotiating hundreds of thousands of dollars in checks with "Estate of Donna Badger" written on the memo line. *See* Exhibit 4 (Badger checks); 9/6/22 Bond Hr'g Trans. 42:19–24 ("Q: At the time you negotiated checks with the memo line, 'Estate of Donna Badger,' as PR for the estate of Donna Badger to pay off Hannah Plyler loans? A: I did not realize it was her money, no, ma'am. Q: But you negotiated those checks? A: I did negotiate the checks, yes, ma'am.").

The Defendant also disagrees with the case agent's testimony that the Defendant, his sister, and his father informally approved loans "outside the norms of the Executive Committee." *Second Mot. to Dismiss*, ECF No. 137 at 12. He contends this was an accepted practice. The Government's witnesses will testify that it was not.

The Defendant's final factual dispute regards whether he was responsible for a misrepresentation to the probate court about Natarsha Thomas's age. *Second Mot. to Dismiss*, ECF No. 137 at 12–13. It is the jury's job to decide whether to believe his claim that he was merely "a neutral third party" who signed the wrong portion of the form based on his attorney's advice.[4] *See id.* at 13. Dismissal of an indictment is not warranted where the defendant's claim of false grand jury testimony "amounts to nothing more than a disagreement with the witness's

---

[4] To the extent this amounts to an advice-of-counsel defense, the Government has not conceded—and does not concede—that the Defendant has satisfied his burden to establish a prima facie case that he was acting in good faith on the advice of counsel. *See United States v. Westbrooks*, 780 F.3d 593, 596 (4th Cir. 2015) ("[T]o be entitled to an advice-of-counsel defense, the *defendant* must establish (a) full disclosure of all pertinent facts to an attorney, and (b) good faith reliance on the attorney's advice." (quotation marks omitted)).

opinions of the facts of the case."[5] *See United States v. Outlaw*, 464 F. App'x 165, 167 (4th Cir. 2012) (unpublished).

Finally, any error in the grand jury proceedings did not prejudice the Defendant and is therefore not a basis for dismissal.

The Defendant's challenges to the grand jury proceedings are a premature attempt to litigate the weight of the evidence against him. He has identified no actual error in the indictment or the grand jury proceedings. Even if he had, he has failed to show any such error prejudiced him. His motion to dismiss should be denied.

IV. **Each count in the Second Superseding Indictment tracks the language of the applicable statute and alleges the essential elements and essential facts constituting the offense.**

The Defendant has not identified any insufficiency in the Second Superseding Indictment. Federal Rule of Criminal Procedure 7(c)(1) requires an indictment to be "a plain, concise, and definite written statement of the essential facts constituting the offense charged." "A valid indictment must: (1) allege the essential facts constituting the offense; (2) allege each element of the offense, so that fair notice is provided; and (3) be sufficiently distinctive that a verdict will bar

---

[5] Even if there were some error in the grand jury proceeding, any such error would not warrant dismissal because it did not prejudice the Defendant. "[A] district court may not dismiss an indictment for errors in grand jury proceedings unless such errors prejudiced the defendant[]." *Bank of Nova Scotia v. United States*, 487 U.S. 250, 254 (1988). When, as in this case, an alleged grand jury irregularity is not of constitutional dimension, "prejudice justifying dismissal of an indictment exists only where (1) the irregularity substantially influences the decision to indict or (2) 'there is grave doubt that the decision to indict was free from the substantial influence of such irregularities.'" *United States v. Brewer*, 1 F.3d 1430, 1433 (4th Cir. 1993) (quoting *Bank of Nova Scotia*, 487 U.S. at 254) (alteration omitted). Neither circumstance is present here.

The grand jury was presented with overwhelming evidence in support of the Government's allegations against the Defendant. His conclusory claim that "there is grave doubt that the Grand Jury's decision to indict him was free from the substantial influence" of the alleged false statements ignores the wealth of evidence supporting the grand jury's finding of probable cause. Should the Court deem it necessary, the Government is prepared to supply unredacted copies of the grand jury transcripts for the Court's review.

9

a second prosecution for the same offense." *United States v. Bolden*, 325 F.3d 471, 490 (4th Cir. 2003). Ordinarily, an indictment that tracks the statutory language is sufficient. *Hamling v. United States*, 418 U.S. 87, 117 (1974). Each count in the Second Superseding Indictment contains the essential elements of the offense and fairly informs the Defendant of the charge against him. The Defendant's motion to dismiss is without merit.

**A. Count One – Conspiracy to Commit Bank Fraud and Wire Fraud – alleges each of the essential elements and the essential facts underlying the offense.**

Count One alleges that from at least July 2011 until at least October 2021, the Defendant and others conspired and agreed to commit wire fraud and bank fraud, in violation of 18 U.S.C. § 1349. *Second Superseding Indictment*, ECF No. 61 at 10. It alleges each element of the offense and sets forth the essential facts underlying the offense with sufficient specificity to put the Defendant and any future court on notice of the charge against him. *See United States v. Okun*, 453 F. App'x 364, 369–70 (4th Cir. 2011) (unpublished). The introductory charging language tracks § 1349:

| Second Superseding Indictment (ECF No. 61 at 10) | 18 U.S.C. § 1349 |
|---|---|
| From a time beginning no later than July 2011, and continuing until at least October 2021, in the District of South Carolina, the Defendant, RUSSELL LUCIUS LAFFITTE, and others, knowingly and intentionally combined, conspired, and agreed to: | Any person who attempts or conspires to commit any offense under this chapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy. |

And the indictment tracks the language of and contains the essential elements of the wire fraud and bank fraud statutes:

10

| **Second Superseding Indictment** <br> **(ECF No. 61 at 10)** | **18 U.S.C. § 1343** |
|---|---|
| [T]he Defendant, RUSSELL LUCIUS LAFFITTE, and others, knowingly and intentionally combined, conspired and agreed to: <br><br> <u>knowingly devise a scheme and artifice to defraud and to obtain money and property by means of false and fraudulent pretenses, representations, and promises, and transmit and cause to be transmitted by means of wire, radio, or television communication in interstate commerce, writings, signals, pictures or sounds for the purpose of executing the scheme and artifice</u>, in violation of Title 18, United States Code, Section 1343. | Whoever, having <u>devised</u> or intending to devise <u>any scheme or artifice to defraud</u>, or <u>for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice</u>, shall be fined under this title or imprisoned not more than 20 years, or both. |

| **Second Superseding Indictment** <br> **(ECF No. 61 at 10)** | **18 U.S.C. § 1344(2)** |
|---|---|
| [T]he Defendant, RUSSELL LUCIUS LAFFITTE, and others, knowingly and intentionally combined, conspired and agreed to: <br><br> <u>knowingly execute and attempt to execute a scheme and artifice to</u> obtain property held by PSB, a financial institution insured by the FDIC, and <u>obtain the moneys, funds, credits, assets, securities, and other property owned by and under the custody and control of PSB, by means of materially false and fraudulent pretenses, representations and promises</u> and failing to disclose material information and fraudulently concealing material information, in violation of Title 18, United States Code, Section 1344(2). | Whoever <u>knowingly executes, or attempts to execute, a scheme or artifice</u>— <br> (2) <u>to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises</u>; <br> shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both. |

The indictment also sets forth the essential facts underlying the conspiracy charge. Paragraphs 7 and 8 detail with specificity the scheme to defraud. *Second Superseding Indictment*, ECF No. 61 at 3–10. The indictment states the object of the conspiracy: for the Defendant and

11

Alex Murdaugh "to obtain money and property by means of false and fraudulent pretenses, representations, and promises," and to defraud Murdaugh's clients. *Id.* at 10–11. And it charges overt acts the Defendant committed in furtherance of the conspiracy:

> a. On or about December 21, 2011, RUSSELL LUCIUS LAFFITTE negotiated and distributed, and caused to be negotiated and distributed, checks for $309,581.46 and $325,000.00, funds belonging to H.P.Y. and N.T., as directed by the Bank Customer;
>
> b. On or about August 20, 2012, and continuing through September 4, 2012, RUSSELL LUCIUS LAFFITTE negotiated and distributed, and caused to be negotiated and distributed, a check for $25,245.06, funds belonging to N.T., as directed by the Bank Customer;
>
> c. On or about February 8, 2013, RUSSELL LUCIUS LAFFITTE negotiated and distributed, and caused to be negotiated and distributed, $151,726.05 to H.P., at the Bank Customer's direction, knowing that the money belonged to the Estate of D.B. and/or the Estate's beneficiaries.

*Id.* at 11. Count One sufficiently sets forth the elements and facts underlying the conspiracy count, and the Defendant does not argue—much less demonstrate—otherwise.

Instead, the Defendant poses two meritless challenges to the indictment. First, he argues the indictment is insufficient because it "never alleges that Mr. Laffitte 'knew about' the unlawful activity" Murdaugh pursued. *Second Mot. to Dismiss*, ECF No. 137 at 15. The wire and bank fraud conspiracy alleged in Count One requires the Defendant to have "acted knowingly." *United States v. Vinson*, 852 F.3d 333, 357 (4th Cir. 2017) (addressing bank fraud conspiracy conviction). And the indictment specifically alleges that he "knowingly and intentionally" conspired to "knowingly devise a scheme and artifice to defraud and obtain money" by false and fraudulent pretenses using wire communication, and to "knowingly execute and attempt to execute a scheme and artifice to obtain property held by PSB" by false and fraudulent pretenses. *Second Superseding Indictment*, ECF No. 61 at 10. Subparagraph c alleges the Defendant negotiated and distributed Badger money into Hannah Plyler's account "knowing that the money belonged to the Estate of

12

[Donna Badger] and/or the Estate's beneficiaries." *Second Superseding Indictment*, ECF No. 61 at 11. The indictment sufficiently alleges the mens rea required to commit wire and bank fraud conspiracy.

The Defendant also argues that Count One is insufficient because it does not charge Alex Murdaugh. *Second Mot. to Dismiss*, ECF No. 137 at 15. He fails to explain how the Government's charging decisions regarding another individual in any way effect the sufficiency of the indictment against him. As this Court explained in its order denying the Defendant's first motion to dismiss, "if the government has 'probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in [its] discretion.'" ECF No. 94 at 3 (quoting *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978)). The Fourth Circuit does not require indictments to even *name* alleged co-conspirators, much less to actually indict them. *See United States v. Black*, 133 F.3d 917, 1997 WL 787090, at *1 (4th Cir. 1997) (Table) ("We join our sister circuits in finding that a conspiracy indictment under 21 U.S.C. § 846 need not allege any overt acts or name unindicted co-conspirators; it is sufficient if the indictment alleges a conspiracy to distribute drugs, identifies the time period in which the conspiracy allegedly operated, and specifies the statute allegedly violated."). That the Defendant is the only conspirator charged in this case does not render his indictment defective.[6]

Count One of the Second Superseding Indictment alleges a conspiracy to commit wire and

---

[6] The Defendant's suggestion that the charge against him should be dismissed because Murdaugh was not also indicted, like other statements by the defense, indicates he may seek to argue at trial that he should be acquitted because others are more worthy of criminal prosecution. As explained in the Government's Motion in Limine to Exclude Improper Nullification Evidence, ECF No. 106, such an argument would be irrelevant and unfairly prejudicial because it would steer the jury toward nullification.

bank fraud, tracks the language of the relevant statutes, and identifies the time period of the conspiracy, its object, and overt acts taken in furtherance of it. It is more than legally sufficient. *See id.*

**B. Count Two – Bank Fraud – alleges the Defendant executed or attempted to execute a scheme and artifice to obtain money by means of false and fraudulent pretenses.**

The Defendant's challenge to Count Two also fails. Contrary to the Defendant's argument, the indictment alleges with specificity the scheme and artifice the Defendant executed to obtain money and funds under the custody and control of PSB by means of false and fraudulent pretenses, representations, and promises.

For example, the indictment alleges:

h. The Bank Customer requested that RUSSELL LUCIUS LAFFITTE serve as personal representative for the Estate of D.B. RUSSELL LUCIUS LAFFITTE collected $35,000 for his role as personal representative, although he did not manage any money for the Estate of D.B. and had very limited interaction with the beneficiaries of the Estate.

i. As personal representative for the Estate of D.B., RUSSELL LUCIUS LAFFITTE received disbursements from the Law Firm following the settlement of a civil lawsuit. Following the settlement, the Law Firm issued one large check for $1,325,000.00 to PSB to fund a structured settlement. The Bank Customer directed RUSSELL LUCIUS LAFFITTE to email him and request that the Law Firm re-cut the check in amounts determined by the Bank Customer. RUSSELL LUCIUS LAFFITTE complied with the Bank Customer's request and sent him a separate email requesting that the disbursement check be re-cut accordingly.

j. RUSSELL LUCIUS LAFFITTE then negotiated and distributed the checks at the Bank Customer's direction, including:

   i.   $388,687.50 money order to a third-party individual to repay a private loan;

   ii.  $482,124.35 transfer to H.P.'s account to repay loans RUSSELL LUCIUS LAFFITTE extended as conservator for H.P.;

   iii. $75,000.00 money order to the Bank Customer's father;

      iv.    $7,500.00 money order to the Bank Customer's wife;

      v.    $34,000.00 wire transfer to 4M Iron LLC;

      vi.    $8,200.00 money order to third individual associated with Bank Customer;

      vii.    $29,000.00 money order to Honey Creek Motors;

      viii.    $49,500.00 wire transfer to Southern Crane; and

      ix.    $250,987.35 in deposits and transfers into the Bank Customer's personal checking accounts and cash back.

> Each check issued from the Law Firm to PSB referenced the Estate of D.B. and/or beneficiaries of the Estate on the memo lines, individuals to whom RUSSELL LUCIUS LAFFITTE owed a duty as personal representative for the Estate of D.B.

*Second Superseding Indictment*, ECF No. 61 at 6–7. The alleged misrepresentations should be clear to the Defendant, who argues in his motion to dismiss that as the personal representative for Donna Badger's Estate, he was responsible only for $500 in settlement funds, and "[i]t was not Mr. Laffitte's responsibility to ensure a settlement agreement for Alex Murdaugh's client was handled properly when the [$1.325 million] funds did not come through Mrs. Badger's estate." *Second Mot. to Dismiss*, ECF No. 137 at 11 (internal alterations omitted). As the indictment alleges, the Defendant "collected $35,000 for his role as personal representative, although he did not manage any money for the Estate of D.B. and had very limited interaction with the beneficiaries of the Estate." *Second Superseding Indictment*, ECF No. 61 at 6. And despite his own admission that it was not his "responsibility" to manage Arthur Badger's $1.325 million, the indictment alleges he requested the law firm re-cut the Badger settlement check and then negotiated and distributed the re-divided checks, each of which referenced the Estate or the Estate's beneficiaries. *See id.* at 6–7; Exhibit 4 (Badger checks). The misrepresentations contained in the indictment allege exactly the "relational component" the Defendant claims is lacking: the Defendant made

15

misrepresentations in taking the PR fee despite not managing any money; misrepresentations in directing the firm—as the PR—to re-cut the Badger settlement check; and misrepresentations made in negotiating and distributing the checks—again, as the PR—to individuals and entities totally unrelated to the Badgers.  The firm could not have re-cut the checks, and the bank could not have processed these transactions, without the Defendant's misrepresentations.  The indictment sufficiently alleges a scheme and artifice by which the Defendant obtained money and funds under PSB's custody and control by means of false and fraudulent pretenses.[7]

### C. Count Three – Wire Fraud – clearly alleges conduct that affected a financial institution.

The wire fraud charge alleged in Count Three is not barred by the statute of limitations. Most federal crimes have a five-year statute of limitations.  18 U.S.C. § 3282(a).  There is an exception, however, for violations of the wire fraud statute "if the offense affects a financial institution."  18 U.S.C. § 3293.  Such offenses may be indicted within 10 years of the commission of the offense.

The Defendant asserts "the Government has not alleged fraud affecting a financial institution."  *Second Mot. to Dismiss*, ECF No. 137 at 18.  This ignores the plain language of Count Three, which states:

> On or about September 13, 2013, in the District of South Carolina, the Defendant, RUSSELL LUCIUS LAFFITTE, with the Bank Customer and others known and unknown to the Grand Jury, having devised a scheme and artifice to defraud and to obtain money and property by means of false and fraudulent pretenses, representations, and promises, transmitted and caused to be transmitted

---

[7] If the Defendant believes the indictment does not provide adequate information for the charges to be understood or to enable him to prepare a defense, his remedy is to seek a bill of particulars, not a dismissal of the indictment.  *See United States v. Am. Waste Fibers Co., Inc.*, 809 F.2d 1044, 1047 (4th Cir. 1987).  "The indictment notifies [the Defendant] of the offenses with which [he] has been charged; the bill of particulars, if granted, serves to supply the evidentiary details needed to prepare a defense." *Id.*  However, the Defendant has not alleged that the indictment is insufficiently particular to allow him to prepare a defense.

16

by means of wire in interstate commerce, writings, signs, and signals, for the purpose of executing such a scheme and artifice, in that he obtained funds, as personal representative, belonging to the Estate of D.B. and/or the Estate's beneficiaries, and distributed $33,789.83 to the Bank Customer's personal account, <u>affecting a financial institution</u>;
   In violation of Title 18, United States Code, Sections 1343 and 2.

*Second Superseding Indictment*, ECF No. 61 at 13 (emphasis added). Nothing more is needed. Count Three "apprises the accused of the charge against him so he can prepare his defense" and "enables the accused to plead the Double Jeopardy bar to reprosecution if he is later charged with the same offense." *See Am. Waste Fibers Co., Inc.*, 809 F.2d at 1046.

### D. Counts Four, Five, and Six – Misapplication of Bank Funds – sufficiently allege the Defendant willfully misapplied bank funds with the intent to injure and defraud PSB.

The Defendant's challenge to the misapplication of bank funds charges fails because—like his challenge to Count Three—it ignores the plain language of the indictment. The Defendant claims that "[a]bsent from Counts Four through Six is Mr. Laffitte's intent to defraud." *Second Mot. to Dismiss*, ECF No. 137 at 19. But each of these counts expressly alleges the Defendant acted with intent to defraud:

Count Four
   On or about October 28, 2021, in the District of South Carolina, <u>the Defendant, RUSSELL LUCUIS LAFFITTE</u>, being an officer, director, agent, and employee of PSB, a financial institution insured by the FDIC, <u>with the intent to injure and defraud PSB</u>, willfully misapplied, abstracted, and purloined moneys, funds, and credits entrusted to the custody and care of PSB, in that the Defendant, RUSSELL LUCIUS LAFFITTE, distributed $680,000.00 of PSB funds to the Law Firm, without notice to or consent from the PSB Board of Directors, knowing that he had fraudulently transferred the money to the Bank Customer;
   In violation of Title 18, United States Code, Sections 656 and 2.

Count Five
   On or about July 15, 2021 and continuing until August 18, 2021, in the District of South Carolina, <u>the Defendant, RUSSELL LUCUIS LAFFITTE</u>, being an officer, director, agent, and employee of PSB, a financial institution insured by the FDIC, <u>with the intent to injure and defraud PSB</u>, willfully misapplied, abstracted, and purloined moneys, funds, and credits entrusted to the custody and care of PSB, in that the Defendant, RUSSELL LUCIUS LAFFITTE, caused PSB to fund a $750,000.00 commercial loan to the Bank Customer for beach house

17

renovations and expenses, with preferential lending terms, including insufficient collateral, knowing that the loan was essentially unsecured and that loan proceeds would be and were used for other purposes, namely to pay Attorney 1 and to cover hundreds of thousands of dollars in overdraft on the Bank Customer's personal account at PSB;

In violation of Title 18, United States Code, Sections 656 and 2.

### Count Six

On or about February 20, 2015, in the District of South Carolina, <u>the Defendant, RUSSELL LUCUIS LAFFITTE</u>, being an officer, director, agent, and employee of PSB, a financial institution insured by the FDIC, <u>with the intent to injure and defraud PSB</u>, willfully misapplied, abstracted, and purloined moneys, funds, and credits entrusted to the custody and care of PSB, in that the Defendant, RUSSELL LUCIUS LAFFITTE, caused PSB to fund a $500,000.00 line of credit to the Bank Customer for "farming," and thereafter issued a $284,787.52 cashier's check knowing that the loan proceeds would be and were used for other purposes, namely to pay off loans previously extended from H.P.'s conservatorship account;

In violation of Title 18, United States Code, Sections 656 and 2.

*Second Superseding Indictment*, ECF No. 61 at 14–16 (emphasis added). Like the first three counts, Counts Four, Five, and Six track the language of the applicable statute, apprise the Defendant of the charges against him, and enable him to plead a bar to reprosecution should he later be charged with the same offense. *See Am. Waste Fibers Co., Inc.*, 809 F.2d at 1046. The Defendant has identified no defect in the Second Superseding Indictment.

Instead, as with his first claim, the Defendant simply argues the allegations are "false" and that his evidence will disprove them. *See Second Mot. to Dismiss*, ECF No. 137 at 19–20. But neither a defendant's intention to present competing evidence nor his disagreement with an indictment's charges is a basis for dismissal. *See Todd*, 446 F.3d at 1068 (explaining evaluation of a motion to dismiss an indictment "does not involve any examination of the evidence").

The Defendant also claims the misapplication of bank funds counts are really "about Alex Murdaugh's intent to defraud his clients or the Bank and those motives being improperly imputed to Mr. Laffitte." *Id.* at 20. This argument is belied by the indictment itself, which is based solely on the Defendant's intent to defraud and injure the bank. *See Second Superseding Indictment*,

18

ECF No. 61 at 14, 15, 16.  The Defendant's own motion gives away the game:  He argues "[t]here is no *evidence* that Mr. Laffitte intended to defraud or injure the Bank."  *Second Mot. to Dismiss*, ECF No. 137 at 20 (emphasis added).  But as explained above, the question on a motion to dismiss an indictment "is not whether the government has presented sufficient evidence to support the charge;" the question is "whether the allegations in the indictment, if true, are sufficient to establish a violation of the charged offense."  *Todd*, 446 F.3d at 1068.  The allegations included in the Second Superseding Indictment, if true, establish that the Defendant misapplied bank funds, in violation of § 656.  The Defendant will have his opportunity to disprove those allegations at trial.

## V.     Conclusion

The Defendant's second motion to dismiss has not identified a single deficiency in the Second Superseding Indictment, let alone one that would warrant the "extraordinary remedy of dismissal."  *See Order Denying First Mot. to Dismiss*, ECF No. 94 at 4.  Instead, he invites the Court to determine the Government's evidence is insufficient to support a conviction before any evidence has been introduced.  The questions of fact and credibility raised in the Defendant's motion should be decided by the jury.  Each count in the Second Superseding Indictment contains the essential elements of the offense and fairly informs the Defendant of the charge against him.  The indictment is sufficient, and the motion to dismiss should be denied.

[SIGNATURE BLOCK FOLLOWING]

Respectfully submitted,

        ADAIR F. BOROUGHS
        UNITED STATES ATTORNEY

        By: s/ *Kathleen Stoughton*
        Kathleen Michelle Stoughton (Federal ID #12161)
        Emily Evans Limehouse (Federal ID #12300)
        Winston D. Holliday, Jr. (Federal ID #7597)
        Assistant United States Attorneys
        151 Meeting Street, Suite 200
        Charleston, South Carolina, 29402
        (843) 266-1663
        Kathleen.Stoughton@usdoj.gov

November 2, 2022