IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION

| | |
|---|---|
| United States of America, | Case No. 9:22-cr-00658-RMG |
| v. | |
| Russell Lucius Laffitte, | |
| Defendant. | |

**Defendant's Response About the Use of Audio Recordings**

Earlier today, the Court ordered Defendant Russell Lucius Laffitte to identify the portions of the audio recordings involving Palmetto State Bank that he proposes to use at trial and to explain the relevancy of each portion. As directed by the order, Mr. Laffitte notifies the Court, Government, and Palmetto State Bank's counsel that it intends to use the four audio recordings originally identified in its October 18th response brief in full. (Ex. B to Mot. to Seal at 3 n.1, ECF No. 103.)

Mr. Laffitte had previously intended to only utilize portions of the four audio recordings relevant to the transactions the Government claims are at issue. Since that time, however, the Bank has waived any attorney-client privilege that *may* have attached to those recordings. *See In re Martin Marietta Corp.*, 856 F.2d 619, 622 (4th Cir. 1988) (citing *In re Subpoenas Duces Tecum*, 738 F.2d 1367 (D.C. Cir. 1984)) (discussing subject-matter waiver of attorney-client privilege).[1]

_____

[1] Mr. Laffitte does not concede the recordings are privileged. Contrary to the Bank's contentions, (Bank's Mem. Opp. Pl.'s Mot. Compel at 5, Nov. 2, 2022), the purpose of the discussions on those recordings—like the Harris Report—was, at best, to receive mixed guidance on potential legal claims, regulatory compliance issues, public relations, and business practices. *Cf. Hawkins v. Stables*, 148 F.3d 379, 383 (4th Cir. 1998) (referencing classic test for attorney-client privilege and quoting *United States v. United Shoe Machinery Corp.*, 89 F.Supp. 357, 358–59 (D.Mass.1950), but declining to expressly adopt "primary purpose" test). Regardless, any

Given the Bank's implied waiver, the full contents of the four audio recordings may properly be introduced as substantive evidence or used for impeachment.

The Government has placed the full contents of the recordings at issue in three primary ways. First, the Government has notified Mr. Laffitte that it is offering Deputy Regional Director Timothy Rich of the Atlanta Regional Office of the Federal Deposit Insurance Corporation to testify as an expert on "Safe and Sound Banking Practices." (Gov. Expert Discl., Oct. 27, 2022.) Although the expert's focus will be on Mr. Laffitte's banking practices, he intends to establish during cross examination that his banking practices were consistent with local custom and banking standards, as well as the Bank's own practices. The crimes for which Mr. Laffitte has been changed require an examination of the Bank's relaxed standards consistent with a community bank of its size and customer-base. Insight into the Bank's board meetings and decision-making practices through use of the recordings is integral to Mr. Laffitte's ability to present such a defense and properly educate the jury on the applicable banking standards and practices.

Second, the recordings are necessary to establish the Bank's motivations and to judge the credibility of its board members. The Bank's viability, as well as its reputation—including the family's reputation which at least one board member references in the recording on January 4, 2022—was of paramount concern to the Bank's board. This leads to the conclusion that it was easier for the board to serve Mr. Laffitte up for sacrifice for the benefit of preserving the Bank and other members of the family, several members of which the Government has identified as witnesses for trial. Such motivations are sufficiently weighty to warrant a close examination by the jury of the bank-witnesses' credibility. And credibility is always relevant. *United States v.*

---

privilege has been waived, does not apply, or must yield to Mr. Laffitte's constitutional rights as explained in his previous briefing, incorporated here. (*See* ECF Nos. 103, 134.)

*Turner*, 198 F.3d 425, 429 n.2 (4th Cir. 1999) ("The partiality of a witness is always relevant as discrediting the witness and affecting the weight of his testimony."). Limiting Mr. Laffitte's ability to cross-examine these witnesses about their biases using the recordings would violate his right of confrontation. *Delaware v. Van Arsdall*, 475 U.S. 673, 680 (1986).

Third, the Government is asserting that Mr. Laffitte is criminally liable because he intended to defraud the Bank by engaging in transactions without "notice to or consent from the [Bank's] Board of Directors . . ." (Gov. Jury Instr. at 38, ECF No. 131.) The recordings will confirm this is not the case. For example, discussions in the recordings establish that the Bank and members of its Board were notified of the $680,000 transactions with Peters Murdaugh and Mr. Arthur Badger before any check was provided to Peters Murdaugh and before those funds were even offered to Mr. Badger. There was sufficient time in advance of the distribution for the Bank to rescind the transaction had it not been in the Bank's best interests to use those funds to try to avoid potential liability. Although many of the recordings post-date the Bank's settlement with Peters Murdaugh and Mr. Badger, those recordings further evidence the Bank's knowledge of the transactions and the degree to which it benefited, contrary to Count Four's assertions. The same is true for other transactions, including the $750,000 loan referenced in Count Five. That the Bank was notified of these transactions by attorneys is immaterial—the knowledge is what is relevant. *United States ex rel. Lutz v. BlueWave Healthcare Consultants, Inc.*, No. 9:11-CV-1593-RMG, 2017 WL 11621327, at *2 (D.S.C. Nov. 16, 2017).

## Conclusion

Given (1) the Government has placed the full Bank's practices, standards, and decision-making process at issue, (2) the witnesses have biases properly examined by their discussions on the recordings, and (3) the discussions confirm the Bank's knowledge of the transactions, the

recordings meet the low bar for relevancy.  The discussions will have at least *some* tendency to make it more probable that (1) Mr. Laffitte complied with community banking standards and the standards for the Bank, (2) the witnesses stand to gain from Mr. Laffitte being a scapegoat so as to support the Bank's survival, and (3) the Bank, through its Board, knew of the transactions and allowed them to proceed because they benefitted the Bank.  *See Jones v. Ford Motor Co.*, 204 F. App'x 280, 283 (4th Cir. 2006) ("Relevance is typically a low bar to the admissibility of evidence[.]").[2]

NELSON MULLINS RILEY & SCARBOROUGH LLP

By: */s/ E. Bart Daniel*
    E. Bart Daniel, Federal Bar No. 403
    E-Mail: bart.daniel@nelsonmullins.com
    Matt Austin, Federal Bar No. 11435
    E-Mail: matt.austin@nelsonmullins.com
    151 Meeting Street / Sixth Floor
    Post Office Box 1806 (29402-1806)
    Charleston, SC  29401-2239
    (843) 853-5200

    Christian J. Myers, Federal Bar No. 13096
    E-mail:  josh.myers@nelsonmullins.com
    Phone: (202) 689-2800
    101 Constitution Avenue NW, Suite 9000
    Washington, DC 20001

    *Attorneys for Russell Lucius Laffitte*

Charleston, South Carolina
November 4, 2022

---

[2] The Court also asked that Mr. Laffitte provide it with transcripts of the recordings.  No complete transcriptions exist at this time.  Mr. Laffitte is working to have the audio recordings transcribed in time for use at trial, however.