IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION

| | |
|---|---|
| United States of America, | Case No. 9:22-cr-00658-RMG |
| v. | |
| Russell Lucius Laffitte, | **Supplement to Defendant's Renewed Rule 29 Motion** |
| Defendant. | |

Mr. Laffitte, by and through his undersigned counsel, files this supplement to his oral renewed Rule 29 motion made after the close of his case. This motion concerns Counts Two and Three, which require dismissal because they are premised on a fiduciary duty owed by Mr. Laffitte to Mr. Badger and false pretenses the evidence has shown do not exist. Mr. Laffitte incorporates by reference his arguments made in his Rule 29 motion made at the close of the Government's case-in-chief.

**Background and Relevant Facts/Evidence**

The Government has tried to conflate the settlement obtained by Mr. Laffitte as personal representative of Donna Badger with the settlement Arthur Badger obtained independently. It does so to impute a fiduciary duty owed to Mr. Badger that Mr. Laffitte simply did not have. The Government improperly treats the two settlements as one and the same, as reflected in a footnote in the Second Superseding Indictment—a footnote which did *not* exist in any previous version. The footnote reads: "[Arthur Badger], a beneficiary of the Estate of [Donna Badger] and a person known to the grand jury, and the Estate of [Donna Badger], both obtained settlements following civil lawsuits. [Arthur Badger] and the Estate of [Donna Badger] will be referred to collectively as the 'Estate of [Donna Badger]' throughout this Second Superseding Indictment."  (2d Superseding

1

Indictment at 3 n.1, ECF No. 61.) The Government treats this distinction between the settlements as if it is of no consequence. Yet, the evidence presented at trial establishes the distinction is critical, requiring dismissal of Counts Two and Three.

Mr. Laffitte served as personal representative ("PR") for the estate of Mr. Badger's deceased wife, Donna Badger. As the Defendant's expert, Tiffany Provence, explained: as PR for Donna Badger's estate, Mr. Laffitte's responsibility was "to disburse the assets to whomever is the beneficiary of the estate or the beneficiaries of the estate." (Rough Trial Tr. 29:5–30:2, Nov. 18, 2022). As a result of the lawsuit filed on behalf of Donna Badger's estate and the settlement reached, $4.6 million was designated to wrongful death recovery and $500 was designated as survival proceeds. Tiffany Provence explained the distinction:

> [Survival] is money that represents the conscious pain and suffering of the decedent before they pass. And so because it's money owed to them for their conscious pain and suffering, the survival proceeds go into their estate, because it was money owed to them and therefore, it's part of their estate.
>
> Wrongful death proceeds, on the other hand, are for the loss of the companionship, you know, there's this long list of losses we suffer when someone that we care about is killed. And so that portion is the wrongful death portion. And that goes directly to that person's intestate beneficiaries, meaning statutorily, it says who receives that. It doesn't matter what their will says, what their estate says, it goes to the people who have suffered the loss. And so in this situation, we are putting the majority of the funds towards the wrongful death which goes directly to the statutory beneficiaries as opposed to money towards conscious pain and suffering [of Donna Badger], which would go towards the estate.

(Rough Trial Tr. 66:25–67:18, Nov. 18, 2022.)

Therefore, the $500 went into Donna Badger's estate, and the remaining $4.6 million was disbursed directly to her beneficiaries. The Government is correct that Arthur Badger originally was a statutory beneficiary of these proceeds along with Donna Badger's six children. As reflected

in the Probate Court record introduced into evidence by the Government, however, Mr. Badger "specifically renounced his right as a statutory beneficiary," (*see* Donna Badger Probate File, Gov't Ex. 218 at 46, 47), and therefore only Donna Badger's six children took the proceeds:

- "The statutory beneficiaries of the wrongful death claim are Arthur Badger, Tejwanna Hay, Antonio Badger, Arthur Badger III, Fantasia Badger, Shadonna Badger and Shanteria Badger who will take these proceeds according to South Carolina law (**with the exception of Arthur Badger who has specifically renounced his right as a statutory beneficiary**) after deduction of attorneys fees and costs." Gov't. Ex. 218 at 46 ¶ 10 (emphasis added).

- "The beneficiaries of the survival action are Arthur Badger, Tejwanna Hay, Antonio Badger, Arthur Badger III, Fantasia Badger, Shadonna Badger, and Shanteria Badger who will take these proceeds according to South Carolina law **with the exception of Arthur Badger who has specifically renounced his right as a statutory beneficiary**." *Id.* at 47 ¶ 11 (emphasis added).

Therefore, because Mr. Badger renounced his right as a statutory beneficiary of Donna Badger's estate, Mr. Laffitte (as PR of Donna Badger's estate) owed him *no* fiduciary duty.

The evidence in this case also reflects that Arthur Badger obtained his own settlement. Mr. Badger did not obtain this settlement in his status as a beneficiary of Donna Badger, but rather as a separate party also injured in the car accident. The settlement money he obtained was distinct from Donna Badger's lawsuit—belonging to him independently. The lawsuit was not brought by Russell Laffitte as PR for Donna Badger but by Arthur Badger against United Parcel Services and Matthew Fields. (Gov't Ex. 23.) Accordingly, only Mr. Badger and Alex Murdaugh signed his disbursement sheet—Mr. Laffitte did not. (*Id.*) Mr. Badger's disbursement sheet allocated $35,000 to Mr. Laffitte, for serving as PR for Donna Badger, and $1.325 million to Palmetto State Bank to fund a structured settlement for Mr. Badger. (*Id.*)

As expert Tiffany Provence testified, the fact that Russell served as PR of Donna Badger's estate did *not* create any fiduciary duty as to Arthur Badger's independently obtained $1.325

3

million. She explained the duty Russell owed to all the beneficiaries of Donna Badger's estate (which originally included Arthur Badger):

> is separate and unique from owing Arthur Badger a fiduciary duty within his own settlement or his own, you know, individual action. So they are two different things and, you know, to the extent that Arthur Badger was a beneficiary of the estate of Donna Badger and Russell was the PR, then he would owe a fiduciary duty to him with regards to any assets that came into that estate.

(Rough Trial Tr. 53:11–20, Nov. 18, 2022.) Thus, because Mr. Badger renounced his status as a beneficiary of Donna Badger's estate, Russell owed him no duty regarding the proceeds from Donna Badger's settlement. And because Mr. Badger independently obtained $1.325 million, Mr. Laffitte owed him no fiduciary duty in that settlement.

This evidence directly contradicts the Second Superseding Indictment's allegation that the $680,000 check (representing PSB's part in the $1.325 million meant for Mr. Badger) was written for "Mr. Laffitte's role in negotiating the checks from the Estate of [Donna Badger] settlement" and that the checks were "disbursement checks from the Estate of [Donna Badger]." 2d. Superseding Indictment § 8k. The negotiated checks were from the $1.325 million Arthur Badger settlement, which had nothing to do with the estate of Donna Badger. And, as Mr. Laffitte testified, he had no involvement in Mr. Badger's disbursement sheet and did not see the sheet until 2021 when he was in Jeanne Seckinger's office researching Alex's misconduct. (*See* Rough Trial Tr. 142:13–143:5, Nov. 18, 2022.) His testimony also revealed Alex Murdaugh previously him he would receive $35,000 if he served as PR for Donna Badger's estate, thus he expected a check for $35,000. (*See id.* Tr. 144:1–13.) There is no evidence, however, that he expected a check for 1.325 made to PSB for funding a structured settlement, when he had not seen the disbursement sheet and PSB does not fund structured settlements. (*Id.* at 143:11–25.)

4

**Analysis**

The evidence presented calls for dismissal of Counts 2 and 3, because even under the Government's theory of the case, the allegations cannot be sustained.

- Count 2, Bank Fraud alleges Mr. Laffitte "by means of false and fraudulent pretenses, representations and promises, aided and abetted the Bank Customer, by negotiating and distributing a check totaling $101,369.49 to [Hannah Plyler], **knowing the funds belonged to the Estate of D.B. and/or the Estate's beneficiaries.**" (2d Superseding Indictment ¶ 14 (emphasis added).)

- Count 3, Wire Fraud alleges Mr. Laffitte "by means of false and fraudulent pretenses . . . . obtained funds, as personal representative [of Donna Badger], **belonging to the Estate of D.B. and/or the Estate's beneficiaries**, and distributed $33,789.83 to the Bank Customer's personal account, affecting a financial institution." (*Id.* ¶ 16 (emphasis added).)

The Government asserted during the colloquy surrounding Defendant's first Rule 29 motion, that:

> Mr. Laffitte is, of course, charged with a duty as a personal representative of the estate of Donna Badger. And because of his role as the personal representative for the estate of Donna Badger, it put[] him in a position where he was able to steal the money. And so but for those false pretenses, we wouldn't be here today.

(Rough Trial Tr. 254:9–15, Nov. 15, 2022.) This is inaccurate. The funds involved in Counts Two and Three did not "belong[] to the Estate of [Donna Badger]" because they came from the $1.325 million Mr. Badger obtained independently. And the Government's artful pleading of "and/or the Estate's beneficiaries" fails because Arthur Badger was not owed any money as a beneficiary of Donna Badger's estate. Further, Mr. Laffitte was able to process those funds because they came to the Bank in the form of checks made to PSB, and he was a PSB employee—not due to his role as PR for Donna Badger. Mr. Laffitte did not hold himself out as PR for Donna Badger (or a fiduciary of Arthur Badger) when sent the email about recutting the 1.325m check. There is no mention of either Donna or Arthur Badger on the related emails, and Mr. Laffitte had not seen (nor had the Bank received) the original check for $1.325 million.

5

In sum, Mr. Laffitte's status as PR of the estate of Donna Badger did not "put him in a position where he was able to steal the money"; he never held himself out as a fiduciary of Arthur Badger; and the Government has failed to identify a false pretense that allowed him to distribute funds from that check.[1]  Therefore, the evidence is insufficient to sustain a conviction on Counts Two and Three and Mr. Laffitte moves for dismissal.

        NELSON MULLINS RILEY & SCARBOROUGH LLP

By: */s/ E. Bart Daniel*
    E. Bart Daniel, Federal Bar No. 403
    E-Mail: bart.daniel@nelsonmullins.com
    Matt Austin, Federal Bar No. 11435
    E-Mail: matt.austin@nelsonmullins.com
    151 Meeting Street / Sixth Floor
    Post Office Box 1806 (29402-1806)
    Charleston, SC  29401-2239
    (843) 853-5200

    Christian J. Myers, Federal Bar No. 13096
    E-mail:  josh.myers@nelsonmullins.com
    Phone: (202) 689-2800
    101 Constitution Avenue NW, Suite 9000
    Washington, DC 20001

*Attorneys for Russell Lucius Laffitte*

Charleston, South Carolina
November 21, 2022

---

[1] If the Government's theory on Count Three is that the $33,789.83 came from the $35,000 Mr. Laffitte was paid as PR of Donna Badger's estate, those were Mr. Laffitte's to spend and deposit at his discretion.  The fact that the funds came from Arthur Badger's settlement money—a settlement agreed drafted by an attorney, signed by Alex and Arthur Badger, and approved by the court—does not somehow render those funds belonging to "D.B. and/or the Estate's beneficiaries."