1

```
                    IN THE UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF SOUTH CAROLINA
                             CHARLESTON DIVISION
```

```
  _____
                                 )   Docket No. 9:22-658
  UNITED STATES OF AMERICA,      )
                                 )   Charleston, SC
            Plaintiff,           )
                                 )   Portion of Trial Testimony
            vs.                  )   Regarding the Replacement
                                 )   of Jurors
  RUSSELL LUCIUS LAFFITTE,       )
                                 )
            Defendant.           )
  _____)   DATE:  November 22, 2022
```

```
              BEFORE THE HONORABLE RICHARD M. GERGEL
              UNITED STATES DISTRICT JUDGE, PRESIDING
                             JURY TRIAL
```

A P P E A R A N C E S:

For the Plaintiffs:

EMILY EVANS LIMEHOUSE
U.S. Attorney's Office
151 Meeting Street, Suite 200
Charleston, SC 29401-2238
843-266-1663
emily.limehouse@usdoj.gov

WINSTON D. HOLLIDAY and KATHLEEN MICHELLE STOUGHTON
U.S. Attorney's Office
1441 Main Street, Suite 500
Columbia, SC 29201
803-929-3000
winston.holliday@usdoj.gov
kathleen.stoughton@usdoj.gov

COURT REPORTER:                       KAREN V. ANDERSEN, RMR, CRR
                                      United States Court Reporter
                                      901 Richland Street
                                      Columbia, SC  29201

```
 1   A P P E A R A N C E S:

 2   For the Defendant:

 3   EDWARD BART DANIEL, MARSHALL AUSTIN, and MATT ABEE
     Nelson Mullins Riley and Scarborough
 4   151 Meeting Street
     Charleston, SC 29401
 5   843-534-4123
     bart.daniel@nelsonmullins.com, matt.austin@nelsonmullins.com
 6
     CHRISTIAN JOSHUA MYERS
 7   Nelson Mullins Riley and Scarborough
     101 Constitutional Avenue NW, Suite 900
 8   Washington, DC 20001
     202-689-2001
 9   josh.myers@nelsonmullins.com

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1            THE COURT:  Y'all, please be seated.  Let me
2  provide you two notes I am receiving -- I have now received
3  from a juror.  One of them says, "Need antibiotic at 19:21.
4  I could delay one to two hours."
5            Second note, "Feeling pressured to change my vote."
6  Same juror.
7            MR. DANIEL:  I'm sorry?
8            THE COURT:  "Feeling pressured to change my vote."
9            I don't have any idea, no indication, as we should
10 not have, about which way that's going.  Let me tell you, my
11 instinct is that we have alternates and we should get to a
12 verdict, and that it is not practical to get her medicine and
13 drive back.  I don't like this because I'm going to bring the
14 jury back and tell them they've got to begin their
15 deliberations again.  But I don't know of any other choice I
16 have.  I welcome any thoughts anyone may have.
17           MS. LIMEHOUSE:  The Government agrees, Your Honor.
18           MR. DANIEL:  Judge, can they just come back in the
19 morning?
20           THE COURT:  Well, we don't have an issue of them not
21 deliberating.  They are deliberating.  I mean, we haven't had
22 any message from them saying that we are having -- we are
23 stuck or we need -- you know, I haven't gotten where I would
24 give an Allen charge.  I haven't gotten any of that.  I get
25 those from time to time, and I don't have that.

1            You know, you are in the same position.  I'm in a
2   position just trying to be fair.  You don't -- you know,
3   could that person be holding out for you or could convict
4   you?  I mean, you know, it's a tough choice.  And, you know,
5   it just strikes me that under this sort of situation, the
6   better course is -- that's why we have alternates.  But I
7   want to hear from you about this.
8            MR. AUSTIN:  Is that the same juror for both notes?
9            THE COURT:  Yes, both notes were from the same
10  juror.  I have no idea who it is.
11           MS. LIMEHOUSE:  Your Honor, the Government believes
12  that especially since there's been no indication from the
13  jury that they are having issues deliberating, that we would
14  like them to continue to deliberate.  Especially with the
15  impending holiday ahead of us, we would like for them to
16  continue to deliberate tonight.
17           THE COURT:  I could just tell you right now that if
18  I tell people that they have to come back tomorrow, I don't
19  think that's in anybody's interest.  Okay?  And I'm going to
20  be honest, I'm kind of trying to protect defendants here in
21  this situation.  And I don't think it's in your interest to
22  try to force people to come back tomorrow.  I don't like the
23  effect that has on pushing people to a verdict.
24           (Whereupon, a jury note is handed to the judge.)
25           THE COURT:  Let me read the third note I now

1   received, which raises an entirely different issue.  "Dear
2   Judge, we are writing this to express a shared concern."
3           This appears to be -- I can't quite figure out.  May
4   be all the other jurors.  "On page --"
5           (Whereupon, a jury note is handed to the judge.)
6           THE COURT:  Is there another note?
7           THE COURT DEPUTY:  Yes, sir.
8           THE COURT:  "On page 11, your final charge to us
9   states that if you let fear or prejudice or bias or sympathy
10  interfere with your thinking, there is a risk that you will
11  not arrive at a true and just verdict.  A juror's previous
12  court experience is influencing that juror's ability to
13  discuss the trial in a group setting.  That juror has made
14  comments on having been bullied as a juror on previous trials
15  and will not consider the evidence in this trial.  The juror
16  is hostile to hearing any debate from certain other jurors,
17  and the juror disagrees with your final charge and
18  specifically the definitions you've provided.  We
19  respectfully ask that you consider speaking to this issue so
20  that we are able to proceed with deliberations."
21          Now, I do not know that's the same juror.  Okay?  I
22  have no idea.  Okay?
23          Here's the next one.  "Your Honor, can you please
24  call an alternate as I am experiencing anxiety and unable to
25  clearly make my decision?"  That's a different juror.

1                MR. DANIEL: The same one that has the medication?
2                THE COURT: I think I've now fully disclosed all my
3    notes. Let me just say this. If a juror told me that she
4    was unable or he was unable -- was unwilling to consider the
5    evidence because of prior court experience, I would remove
6    that juror, whatever that is. I have no idea how that falls.
7    I just would remove someone, because we don't allow people to
8    serve on juries that don't follow the Court's instructions.
9    I have no idea if that's the same juror as the one who has
10   written me about her medicine. I welcome suggestions from
11   the parties.
12               MS. LIMEHOUSE: Your Honor, we believe that you need
13   to put two alternates to replace both of those jurors.
14               THE COURT: I mean, we've got three alternates for a
15   reason.
16               MS. LIMEHOUSE: Also, based on where it's headed, it
17   seems there's a risk if you only replace the one who says she
18   can't follow the law, that we might be here again and have to
19   restart --
20               THE COURT: It could end up, of course, being three
21   jurors before we know it. And, you know, I don't want to
22   read tea leaves. I don't know if -- I can't -- you know, we
23   shouldn't know what they're deliberating. And they are
24   appropriately not telling me what they are doing. And I have
25   no idea what they are doing.

1    	Mr. Daniel, your suggestions?  I value your
2    experience.
3    	MR. DANIEL:  Your Honor, just the one about the
4    hostile juror, can you just read that one last time?
5    	THE COURT:  I'll be glad -- let me read them all
6    again.  How about that?  Okay.  The hostile -- it is, "Dear
7    Judge, we are writing this to express a shared concern.  On
8    page 11, your final charge to us states that if you let fear
9    or prejudice or bias or sympathy interfere with your
10   thinking, there is a risk that you will not arrive at a true
11   and just verdict.  A juror's previous court experience is
12   influencing that juror's ability to discuss the trial in a
13   group setting.  That juror has made comments about having
14   been bullied as a juror on previous trials and will not
15   consider the evidence in this trial.  The juror is hostile to
16   hearing any debate from certain other jurors, and the juror
17   disagrees with your final charge and specifically the
18   definitions you've provided.  We respectfully ask you to
19   consider speaking to this issue so that we are able to
20   proceed with deliberations."
21   	MR. DANIEL:  Disagrees with your final charge?  The
22   final charge, that means the whole charge?
23   	THE COURT:  I take it that "disagrees with your
24   final charge and specifically the definitions you've
25   provided."

1  MR. HOLLIDAY: Your Honor, I think that's an easy
2  one. That's on the jury questionnaire. They are asked if
3  they can follow the law as they are instructed --
4  THE COURT: This person would be struck. You know,
5  all I can say is, whether we are talking about two jurors or
6  three jurors, I haven't any idea. And, you know, if somebody
7  was calculating this and said, oh, I think they are going to
8  help me, and you end up keeping them on and, you know,
9  whatever, you end up convicting your person, you end up with
10 a conviction, somebody is going to feel pretty silly, and
11 vice-versa. I mean, so the result, I don't worry about the
12 result myself. I worry about do I have effective jurors.
13 And I've got at least a report -- I haven't confirmed it
14 yet -- that someone won't deliberate. Okay? That's a
15 problem. That's a problem.
16 And my inclination would be to speak to that juror
17 and to -- I'm very hesitant to bring the juror into the
18 courtroom to do that. I think that's a huge mistake. And it
19 might really be best -- I mean, there's no rule book for this
20 right now, how do we do this. It may well be that maybe the
21 best way for me to do it is for me and a court reporter and
22 my deputy, just to create a record of this, and simply ask
23 the juror in a conference room, you know, is there a problem.
24 And if there's not, I'm going to keep her deliberating. You
25 know, if she says, oh, no, I'm talking, I mean, I am not

1     going to remove somebody.  But if there seems to be a feeling
2     among the group that this juror is not deliberating, whether
3     that is also the juror -- I mean, I think the one with the
4     medicine we need to send home.  She needs her medicine.  I
5     understand that.  If that happens to be the same person, that
6     happens to be the same person.
7              The person with the anxiety, that's a concern for me
8     too.  I don't want someone who is not functioning to be --
9     I've got 12 jurors for a reason.  The defendant's rights are
10    protected by having 12 functioning jurors.  And it's got to
11    be unanimous.  So I've got a problem having somebody who says
12    I can't do it anymore.  That's my concern.
13             But I want to hear from everybody before I make a
14    decision, because I think we are on virgin territory.  Mr.
15    Holliday, I've tried a hundred cases myself and then I've
16    been on the bench for 13 years, I've never had this
17    experience.
18             MR. HOLLIDAY:  That's true.  Your Honor, I think we
19    have three different situations.  I would suggest, the person
20    with the medicine, cannot risk someone's health.  So I think
21    they should be allowed to go home.  The person who cannot
22    follow the law, then they are basically -- they would be
23    struck for cause.  And I think they've indicated now that
24    they should be struck for cause.  The person --
25             THE COURT:  If true.  If true.

1          MR. HOLLIDAY:  Well, nobody --
2          THE COURT:  I don't want anybody else ganging up on
3   somebody and trying to bump them off a jury.  I need to
4   confirm that.
5          MR. HOLLIDAY:  Right.  And then the third one, your
6   suggestion as far as speaking -- speaking to the juror,
7   finding out whatever, I think that's still a viable juror,
8   the third one.
9          THE COURT:  The anxious one?
10         MR. HOLLIDAY:  Yes.  But I think if someone has
11  indicated that they cannot follow the law, that's a toxic
12  juror, Your Honor.  And I don't think there's any redemption
13  from writing that.
14         THE COURT:  Well, I've got to confirm that.  I can't
15  let a juror be bumped out one way or the other who says,
16  that's not accurate, I'm fully participating, they just don't
17  agree with me.  That -- you know, that's not a juror I
18  remove.  I mean, that's a -- you know, I tell them in my
19  charge hold your convictions whatever that is.  So --
20         MR. HOLLIDAY:  What bothered me about that, Your
21  Honor, though, is the indication that there was some prior
22  experience --
23         THE COURT:  Well, that bothers me a lot.  If that
24  is, in fact, true that someone's prior experience -- you
25  know, we've heard about this, that people get in a jury room

1  and they say, I never told anyone but I was sexually abused
2  and, you know, kind of it creates -- just blows up the whole
3  case.  Right?  We can't have that.  But I've got to confirm
4  it.  I can't rely on someone else's account.  I will need --
5  with the consent of the parties, we are going to set up a
6  place where I will take a court reporter, and without anyone
7  present but the court reporter, I will create a record.  And
8  with my deputy and my court reporter, I will ask the juror if
9  there's a problem.
10              MS. LIMEHOUSE:  Your Honor, we would request that
11  you maybe do the same thing with the juror who's reporting
12  being anxious.  There could be a contribution.  This sort of
13  environment could be contributing to the anxiety that could
14  be alleviated depending on how you decide to handle the
15  jurors.
16              THE COURT:  Do I have the consent of the parties for
17  me creating a record to question the juror?
18              MS. LIMEHOUSE:  Yes, as long as it's on the record,
19  we have no objection, Your Honor.
20              THE COURT:  Mr. Daniel?
21              MR. DANIEL:  Yes, you do have the consent, Your
22  Honor.
23              THE COURT:  Okay.  Let me ask Ms. Perry.  Crystal,
24  where can we go?
25              MR. DANIEL:  Does the note use a pronoun, with the

1  juror that's got a strongly held conviction or just will not
2  budge because of some previous jury --
3           THE COURT:  No gender.
4           MR. DANIEL:  Is there a pronoun?
5           THE COURT:  No pronoun.
6           MR. DANIEL:  So we don't know if it's a he or she?
7           MR. HOLLIDAY:  How is that even relevant?
8           THE COURT:  Thank you.  You shouldn't know that, but
9  there is not.  I published the thing to you.  Of course, I've
10 got to figure out a way I can discern who this juror is.
11          MR. HOLLIDAY:  Your Honor, I would suggest -- we are
12 all just thinking here -- if you went into the room and you
13 would say, I have a series of notes and any juror who feels
14 the need to speak to me in private, I will be willing to
15 speak to them over here.  And just hear what they have to
16 say.  I think that would avoid singling anyone out that's in
17 that room who might feel uncomfortable talking to you.
18          THE COURT:  Well, I don't want other people around
19 when I speak to them.
20          MR. HOLLIDAY:  Right.  Right.
21          THE COURT:  That's why we are going to go down to
22 Courtroom 4.  But the question is --
23          MR. DANIEL:  Judge, we don't have any objection to
24 you just asking the foreperson which juror number that is.
25          THE COURT:  Well, I can get Ms. Perry to do that

1  without me going into that.
2           Okay.  Ms. Perry, I want you to go in and see if you
3  can get -- ask them to identify the juror number, because
4  that may solve several problems if there's an overlap there.
5           MR. DANIEL:  Judge, we've both been doing this
6  awhile --
7           THE COURT:  We litigated against each other and with
8  each other.  I tell you, this is a different experience.
9           THE COURT DEPUTY:  He didn't know the number.  I'm
10 going to get her number from the name.
11          MR. HOLLIDAY:  Your Honor, I would suggest that we
12 don't need to know any more.
13          THE COURT:  Okay. I'm going to take action.  Fair
14 enough?  Everybody happy with that?
15          MR. HOLLIDAY:  Yes.  Thank you, Judge.
16          (Whereupon, an in-camera interview takes place with
17 the juror.)
18          THE COURT:  Let me report back to counsel.  The
19 juror regarding the medicine has been replaced and has been
20 allowed to go home.
21          I spoke with the juror expressing anxiety.  And she
22 asked to be relieved and said she wasn't able to go forward,
23 and I removed her.  I relieved her.  I granted her request
24 to -- for an alternate.  I just basically said to her, tell
25 me, can you do your duties?  And she said, I cannot do my

1  duties.  She's got medication issues herself, anxiety issues.
2  And I relieved her.
3          And the decisions I've made resolved the other
4  issue, so I didn't have to address it.  That was the longer
5  one.  I never had to address it.  I understood that it took
6  care from those other decisions.
7          And I'm going to bring the jurors in to tell them
8  they have to begin their deliberations again because there
9  are new jurors.
10         MR. HOLLIDAY:  Thank you, Your Honor.  We appreciate
11 your thoughtfulness.
12         MR. DANIEL:  Do you know how --
13         MR. AUSTIN:  Your Honor, I couldn't hear --
14         THE COURT:  Mr. Austin, I hope you are not
15 developing hearing problems hanging around Mr. Daniel too
16 much.  So the answer was, I relieved one juror because of
17 her -- the medication issue.  And I relieved one juror
18 because of the anxiety issue.  We have replaced both of them.
19         I need to bring the jurors in, all 12, to say they
20 need to begin their deliberations again because we have
21 brought an alternate into the room.  Okay?
22         Can we bring in the jury.
23         MR. DANIEL:  Your Honor, just for the record --
24         THE COURT:  Hold a second.
25         Yes, sir, Mr. Daniel.

1     MR. DANIEL: Judge, we would object not to the juror
2  that was replaced for medication. We agreed with that. We
3  agreed with that at the time. But the second juror that was
4  replaced about the anxiety is the one we would like to
5  take -- make an objection to.
6     THE COURT: You can make an objection. That one --
7  and there's a record -- she is emotionally very fragile. She
8  could hardly speak to me. And she explained to me she was on
9  anxiety medication and that she was not physically capable or
10 emotionally capable of going forward. I didn't think I had
11 any choice. We never got into what's going on in the jury
12 room or anything like that. It was -- and she was shaking
13 when she was speaking to me. There wasn't any confusion
14 about that one. Okay?
15     Let's bring the jury in.
16     (Whereupon, the jury returns to open court at 8:31
17 p.m.)
18     THE COURT: Please be seated. Ladies and gentlemen,
19 obviously, you've had some changes in your ranks. And the
20 requirement is that you need to begin your deliberations
21 again to bring your other two, the two jurors who have not
22 been included, into those discussions, because it needs to be
23 the decision of all 12 of you. Obviously, the 10 of you are
24 more advanced than the other two, but you need to go back
25 into the deliberations and y'all need to walk through those

1  again.  Okay?  If you could return to the jury room.  Thank
2  you for your constant attention.
3           (Jury leaves open court at 8:32 p.m.)
4           THE COURT:  Folks, I think we followed the path
5  we've talked about following.  And we will be in recess.
6  Please be seated.  We will be in recess until the jury makes
7  a decision, if at all.
8           MR. DANIEL:  Thank you, Your Honor.
9           MS. LIMEHOUSE:  Thank you, Your Honor.
10          (Whereupon, recess transpired.)
11          (Whereupon the alternate is excused.)
12          THE COURT:  Yes, sir, Mr. Austin.
13          MR. AUSTIN:  Your Honor, real quickly.  Mr. Daniel
14 had noted his objection earlier to swapping out the
15 alternate.
16          THE COURT:  I did what y'all asked me to do.
17          MR. AUSTIN:  Your Honor, I am not asking you to do
18 anything differently now.  Our understanding is that's
19 essentially, with the case law, it's akin for moving to a
20 mistrial.  And just for the sake of the record, we just
21 wanted to bring that up.  We object to replacement of one
22 juror.
23          THE COURT:  On what basis?  Because I asked you what
24 did you want me to do on these?  And we agreed I would talk
25 to the juror, who could hardly speak, she was so emotionally

1  upset.  And I asked her if she could serve.  There's a record
2  of this.  And she asked me to remove her, as she had written
3  me already and asked me to remove her.  So I was doing
4  exactly what we all agreed I would do.
5           I'm a little perplexed by that, Mr. Austin, to after
6  the fact coming in and start complaining about something on a
7  procedure we had agreed to already.
8           MR. DANIEL:  I thought we did object.
9           MR. AUSTIN:  I think he did take exception to that
10 on the record, Your Honor.
11          MS. LIMEHOUSE:  Your Honor, after you had already
12 done what we agreed to do --
13          THE COURT:  Correct, I had done it.  I told you this
14 is what we were going to do.
15          MR. AUSTIN:  I thought we were just going to be
16 interviewing them, not necessarily replacing them.  We are
17 not trying to -- it's a strange, fluid situation.
18          THE COURT:  You know, I tried to be as transparent
19 as I could.  I read everybody everything.  I asked you what
20 you wanted me to do.  I interviewed the juror, who was
21 plainly incapable of continuing, and she was in an emotional
22 meltdown.  And I removed her.  And that's what I understood
23 y'all -- we had agreed that I would interview her and I would
24 make a decision.
25          Now you now, after the fact, want to change that.

1  You are a little -- moment late.  I already sent her home
2  following the procedure.
3              MR. DANIEL:  Your Honor, I think if you look at the
4  record -- we don't need to do it now, Your Honor -- but I
5  objected and took exception to it, not initially, but when
6  you came back.  We thought you were coming back to tell us
7  what the juror said or to give us what your decision would be
8  so that we could object to it and not --
9              THE COURT:  Okay.  So you are now telling me that
10 had I come back and told you that she was emotionally
11 incapable of functioning and she asked me again to remove
12 her, that you would have objected to that?
13             MR. DANIEL:  I did object to it.
14             MR. AUSTIN:  Yes, Your Honor.  I think we would
15 stated that it's a hung jury.
16             THE COURT:  It's not a hung jury.  I have
17 alternates.
18             MR. AUSTIN:  We think -- we don't see how they could
19 restart deliberations at this point this late in the game.
20             THE COURT:  Of course, they can.  That's the
21 process.  When you replace a juror, they have to restart
22 deliberations.  I brought them in here and told them to
23 restart it.
24             MR. AUSTIN:  We just want to note for the record --
25             THE COURT:  Okay.  You know, folks, to come in after

1   the fact here, after the Court laid it all out and we agreed
2   on a process, I thought it was very clear, and I did -- but
3   there's a record of her I don't think anybody would really
4   question.  It's all on the record about what she told me.
5   And I was, of course, following up on her request that she be
6   removed and told me she could explain it to me, and she did.
7   I don't want to invade her privacy.  But she is on
8   significant medication.  And she was, in my estimation, in an
9   emotional meltdown situation.  Okay?
10          Let's bring in the jury.
11                      (End of transcript.)

CERTIFICATE OF REPORTER

I, Karen V. Andersen, Registered Merit Reporter, Certified Realtime Reporter for the State of South Carolina at Large, do hereby certify that the foregoing transcript is a true, accurate and complete Transcript of Record of the proceedings.

I further certify that I am neither related to nor counsel for any party to the cause pending or interested in the events thereof.

Karen V. Andersen
Registered Merit Reporter
Certified Realtime Reporter