IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | |
| ) | CRIMINAL NO. 9:22-658-RMG |
| ) | |
| **vs.** ) | |
| ) | |
| ) | |
| **RUSSELL LUCIUS LAFFITTE** ) | |
| ) | |

## GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S SECOND MOTION FOR NEW TRIAL

Defendant Russell Lucius Laffitte's Second Motion for a New Trial, ECF No. 274, should be denied. He argues he is entitled to a new trial based on "newly discovered evidence" of his innocence, pointing to recent testimony of his unindicted coconspirator, Richard Alexander Murdaugh, that the Defendant "did nothing wrong and did not have any knowledge of Mr. Murdaugh's criminal activity." *Id.* at 2. Although Murdaugh's testimony may be newly available to the Defendant, it is not "newly discovered evidence" within the meaning of Federal Rule of Criminal Procedure 33, and it is not likely to produce an acquittal on any of the Defendant's counts of conviction. Murdaugh's testimony is therefore insufficient to meet the high bar for a new trial set by Rule 33.

To receive a new trial based on newly discovered evidence, Rule 33 requires a defendant to show "(1) the evidence is newly discovered; (2) he has been diligent in uncovering it; (3) it is not merely cumulative or impeaching; (4) it is material to the issues involved; and (5) it would probably produce an acquittal." *United States v. Lighty*, 616 F.3d 321, 374 (4th Cir. 2010). "[A] jury verdict is not to be overturned except in the rare circumstance when the evidence weighs heavily against it," *United States v. Wilson*, 624 F.3d 640, 660 (4th Cir. 2010) (quotation marks

omitted), and unless the defendant satisfies all five parts of this test, "a new trial is not appropriate," *United States v. Chavis*, 880 F.2d 788, 793 (4th Cir. 1989). The Defendant's claim fails—at least—at the first and fifth prongs.[1]

## I.     Murdaugh's testimony is not newly discovered evidence.

Fourth Circuit case law forecloses the Defendant's claim that Murdaugh's testimony is newly discovered evidence warranting a new trial. At the final pretrial conference, the Defendant indicated he intended to call Murdaugh as a witness, despite knowing that Murdaugh would invoke his Fifth Amendment privilege against self-incrimination. *See Govt's Br. Regarding Witness Invocation of Fifth Amendment Privilege Against Self-Incrimination*, ECF No. 169 at 1. At the end of the first day of trial, defense counsel notified the Court that Murdaugh's attorney had previously indicated "that Mr. Murdaugh was very willing to testify on Russell's behalf and say that he had nothing to do with this. He ultimately reconsidered that and said that his lawyers, or through his lawyers, have said that they have advised him not to do that." *Nov. 8, 2022 Tr.*, ECF No. 204 at 224:16–21. Following up on an earlier written ruling, *Sealed Order*, ECF No. 184, the Court stated, "the law is very clear on the issue that you cannot call a witness in a criminal case strictly to have him take the Fifth. . . . He's not going to be a witness so long as he's going to take the Fifth." *Nov. 8, 2022 Tr.*, ECF No. 204 at 225:9–15. Murdaugh did not testify at the Defendant's trial.

Murdaugh later testified in his own defense during his murder trial in state court. He testified, "Russell Laffitte never conspired with me to do anything, whatever was done was done

---

[1] Given the extensive post-trial briefing in this case, the Government dispenses with a recitation of the facts and procedural history and incorporates by reference its Response to Defendant's Motion for a New Trial and for Judgment of Acquittal, ECF No. 238, including its arguments regarding the sufficiency of the evidence, as well as the Court's findings on the sufficiency of the evidence in its Order denying the Defendant's first Rule 33 and Rule 29 motion, ECF No. 267.

by me." Day 1 Testimony[2] at 7:57:10–19. He also said, "Russell Laffitte didn't do anything," "Russell Laffitte was not involved in helping me [take people's money] knowingly," and "If he did it, he did it without knowing it." Day 1 Testimony at 8:00:11–38. The Defendant argues Murdaugh's testimony entitles him to a new trial because it is not merely cumulative, is material, and is likely to produce an acquittal. *Def.'s Second Mot. for New Trial*, ECF No. 274 at 3. But the Fourth Circuit has held that it is not "newly discovered evidence" under Rule 33.[3]

*United States v. Griffin*, 489 F. App'x 679 (4th Cir. 2012) (unpublished), is directly on point. There, the defendant notified the district court before his trial that he intended to call a codefendant as a witness for the defense. *Id.* at 680. The codefendant notified the court and the defendant that if called to testify, he would invoke his Fifth Amendment right against self-incrimination. *Id.* at 680–81. After the defendant was convicted, he produced a sworn declaration

---

[2] ABC News 4, *LIVE: Alex Murdaugh Murder Trial, Day 23 – Feb. 23*, YOUTUBE (Feb. 23, 2023), https://www.youtube.com/watch?v=L49TchwK9N0 (accessed Mar. 20, 2023) ("Day 1 Testimony"). As defense counsel noted, an official transcript of Murdaugh's testimony is not yet available. The Government will provide the transcript as soon as it is received.

[3] Additionally, Murdaugh's specific testimony that "Laffitte never conspired with [him] to do anything" cannot be the basis for a new trial because it is inadmissible. *See United States v. MacDonald*, 779 F.2d 962, 964 (4th Cir. 1985) ("To obtain a new trial on the basis of after discovered evidence, that evidence must be admissible in a new trial.").

Murdaugh's belief about whether the Defendant "conspired" is inadmissible under Federal Rules of Evidence 701 and 704. As the Defendant explained in his Motion to Exclude Opinion Testimony as to His Guilt or Innocence, "[t]he ultimate issue of Mr. Laffitte's guilt or innocence is one reserved for the jury," and "testimony that inappropriately draws a legal conclusion" should be excluded. ECF No. 124 at 1; *see also Govt.'s Resp. to Def.'s Mot. in Limine*, ECF No. 150. "[T]he district court's task is to distinguish helpful opinion testimony that embraces an ultimate fact from unhelpful opinion testimony that states a legal conclusion." *United States v. Perkins*, 470 F.3d 150, 158 (4th Cir. 2006) (quotation marks and alteration omitted). And witness testimony as to whether a defendant "conspired"—a "term[] that demand[s] an understanding of the nature and scope of the criminal law"—"would not be helpful to the trier of fact." *United States v. Baskes*, 649 F.2d 471, 478 (7th Cir. 1980). "The witness, unfamiliar with the contours of the criminal law, may feel that the legal standard is either higher or lower than it really is," and "[i]f either event is true the jury may accord too much weight to such a legal conclusion." *Id.* Testimony about whether the Defendant "conspired" is inadmissible and cannot be the basis for a new trial.

3

from the codefendant stating the codefendant would testify that the defendant did not take part in the crimes for which he had been convicted. *Id.* at 680. The Fourth Circuit held the codefendant's sworn declaration "does not constitute newly discovered evidence within the meaning of Rule 33." *Id.* at 681.

*Griffin* based its holding on two main points. First, as in this case, it was undisputed that the defendant knew of the codefendant when he went to trial and tried to call the codefendant as a defense witness. *Id.* Second, as in this case, "logic dictates" that the defendant sought to call the codefendant as a witness during trial "to give the very same exculpatory testimony . . . that he now argues should afford him a new trial." *Id.* "A fortiori," the Fourth Circuit concluded, "such testimony is not newly discovered evidence." *Id.*

*Griffin* rejected the argument that the codefendant's prior invocation of his Fifth Amendment right and later willingness to testify somehow transformed his potential testimony into newly discovered evidence. *Id.* The court noted that the Second, Third, Fifth, Sixth, Seventh, Ninth, Tenth, and Eleventh Circuits all agreed that "when a defendant is aware of the substance of exculpatory testimony that a codefendant could provide during the defendant's trial, the codefendant refuses to testify at the defendant's trial by invoking the Fifth Amendment, and, post-trial, the codefendant expresses a willingness to testify, the codefendant's potential testimony is not newly discovered evidence within the meaning of Rule 33." *Id.* (citing *United States v. Owen*, 500 F.3d 83, 89 (2d Cir. 2007); *United States v. Jasin*, 280 F.3d 355, 367–68 (3d Cir. 2002); *United States v. Freeman*, 77 F.3d 812, 817 (5th Cir. 1996); *United States v. Theodosopoulos*, 48 F.3d 1438, 1448–49 (7th Cir. 1995); *United States v. Glover*, 21 F.3d 133, 138 (6th Cir. 1994); *United States v. Muldrow*, 19 F.3d 1332, 1339 (10th Cir. 1994); *United States v. Reyes-Alvarado*, 963 F.2d 1184, 1188 (9th Cir. 1992); *United States v. DiBernardo*, 880 F.2d 1216, 1224–25 (11th Cir.

4

1989)). The Eight Circuit has adopted the same rule. *United States v. Bell*, 761 F.3d 900, 911 (8th Cir. 2014) ("[A] witness's failure to appear before trial to exculpate a defendant, especially where the moving party knows about the involvement of that witness, does not constitute newly discovered evidence.").[4]

Only the First Circuit has disagreed and held "newly available evidence" in the form of a codefendant who previously asserted his Fifth Amendment privilege at trial can be "newly discovered evidence" under Rule 33. *See United States v. Montilla-Rivera*, 115 F.3d 1060, 1066–67 (1st Cir. 1997).[5] But *Griffin* held that the First Circuit's approach was "inconsistent with the plain and unambiguous term 'newly discovered evidence' found in Rule 33(b)(1)." 489 F. App'x at 681. "If the defendant knew about the evidence prior to the conclusion of his trial," the Fourth Circuit reasoned, "by definition, the evidence cannot be newly discovered after such trial." *Id.*

This case presents the same facts as *Griffin*. The Defendant both knew of Murdaugh when he went to trial and tried to call him as a witness. *See Def.'s Second Mot. for New Trial*, ECF No. 274 at 1 n.2 ("Mr. Murdaugh asserted his Fifth Amendment rights in Mr. Laffitte's federal case and did not testify."); *see Griffin*, 489 F. App'x at 681. The record also shows, and "logic dictates," that the Defendant sought to call Murdaugh for "the very same exculpatory testimony (*i.e.*, denial of [the Defendant's] involvement)" he now argues warrants a new trial. *See Griffin*, 489 F. App'x at 681. Defense counsel advised the Court that Murdaugh would testify that the Defendant "had

---

[4] The Fourth Circuit has reached the same conclusion in considering a state habeas petition based on assertedly newly discovered evidence. *See Cagle v. Branker*, 520 F.3d 320, 325–26 (4th Cir. 2008) (holding state court did not act unreasonably in deciding not to reopen capital sentencing to hear exculpatory testimony of a codefendant who invoked his Fifth Amendment right not to testify during trial because, among other reasons, the codefendant's potential testimony was not newly discovered).

[5] The First Circuit noted, however, that "there is a greater need for caution in considering Rule 33 motions where the new evidence comes from a codefendant who was 'unavailable' at trial because he chose to exercise his privilege." *Id.* at 1067.

nothing to do with this." *Nov. 8, 2022 Tr.*, ECF No. 204 at 224:16–18. And his motion for a new trial relies on precisely that testimony from Murdaugh's trial—that the Defendant "didn't do anything" and "was not [knowingly] involved in helping" Murdaugh steal. *Def.'s Second Mot. for New Trial*, ECF No. 274 at 2.

Murdaugh's testimony may be newly *available*, but overwhelming precedent from nearly every federal appellate court, including the Fourth Circuit, establishes that it is not newly *discovered* within the meaning of Rule 33. *See United States v. Salazar*, No. 1:06-cr-123-MBS, 2008 WL 8652215, at *2 (D.S.C. Apr. 7, 2008), *aff'd*, 396 F. App'x 44 (4th Cir. 2010) (unpublished) ("Although the statement may be newly available, the statement does not constitute newly discovered evidence within the meaning of Rule 33."). It therefore cannot be the basis for the grant of a new trial, and the Defendant's motion should be denied.

**II.     It is not probable that Murdaugh's testimony would produce an acquittal.**

The Defendant's motion should also be denied because it is not probable that Murdaugh's testimony would result in an acquittal on any of the counts of conviction. "Courts are justifiably leery of post-trial statements by [coconspirators] purporting to exonerate a cohort," *United States v. Bynum*, 3 F.3d 769, 773 (4th Cir. 1993), and the question of whether the ostensibly new evidence would probably produce an acquittal requires the district court to make a credibility determination, *Lighty*, 616 F.3d at 374. In doing so, the court "should focus on whether a jury probably would reach a different result upon hearing the new evidence," and it "cannot view the proffered testimony in a vacuum." *Id.* Instead, the court "must weigh the testimony against all of the other evidence in the record, including the evidence already weighed and considered by the jury in the defendant's first trial." *Id.* "Of course, if the district court does not find a witness credible, it follows that the district court would not find the witness sufficiently persuasive to enable the

6

district court to conclude that the witness's testimony would probably produce an acquittal at a new trial." *Id.* Murdaugh's testimony is not likely to produce an acquittal on any count.[6]

First, it is difficult to imagine the Defendant relying on a less credible witness to support his claim for a new trial. Over two days of testimony during his murder trial, Murdaugh admitted to lying to his clients and stealing money from them for years. *See, e.g.*, Day 1 Testimony at 6:34:15–35, 7:35:54–7:36:05, 7:36:57–7:37:26, 7:38:15–21, 7:43:00–45, 8:10:14–8:11:01, 8:12:07–11, 8:14:11–29; Day 2 Testimony[7] at 0:30:46–0:31:15, 6:12:12–6:15:09. He also admitted to lying to his family, *see, e.g.*, Day 2 Testimony at 6:08:14–6:09:09, 6:45:26–6:45:33, 7:07:05–24; his friends, *see, e.g.*, Day 2 Testimony at 0:24:48–0:25:23, 6:09:09–36; his law partners and law firm employees, *see, e.g.*, Day 1 Testimony at 6:34:21–35; Day 2 Testimony at 6:09:42–6:10:01, 6:11:30–57, 7:07:26–36; and law enforcement, *see, e.g.*, Day 1 Testimony at 1:36:15–1:37:05, 6:33:40–6:34:00; Day 2 Testimony at 1:49:25–34, 3:19:48–58, 5:04:07–26, 5:33:14–33, 5:58:56–5:59:07, 6:16:58–6:17:15, 7:01:36–53, 7:07:37–50. He told the prosecutor, "I have lied well over a decade." Day 2 Testimony at 6:17:39–45. The Defendant now asks the Court to believe Murdaugh's testimony that the Defendant did not conspire with him and did not knowingly help him steal. But Murdaugh is not a credible witness, and the Court should not find

---

[6] The Defendant's claim that Murdaugh's testimony "would likely produce an acquittal because it goes directly to the elements" of the charged offenses, *Def's Second Mot. for New Trial*, ECF No. 274 at 3, conflates the materiality and probability-of-acquittal prongs of the *Lighty* test. They are two separate inquiries: whether the evidence is material to the issues involved, and whether, if put before a jury, it would probably produce an acquittal. *See Lighty*, 616 F.3d at 374. If evidence were likely to produce an acquittal simply because it is material to the issues involved, the fifth prong of the *Lighty* test would be superfluous. Instead, to satisfy the probability-of-acquittal prong, evidence must credibly undermine the verdict when weighed against other evidence in the record. *See id.* Murdaugh's testimony does not.

[7] ABC News 4, *LIVE: Alex Murdaugh Murder Trial, Day 24 – Feb. 24*, YOUTUBE (Feb. 24, 2023), https://www.youtube.com/watch?v=A3qNRufwrYU (accessed Mar. 20, 2023) ("Day 2 Testimony").

him "sufficiently persuasive" to enable the Court to conclude that his testimony "would probably produce an acquittal at a new trial." *See Lighty*, 616 F.3d at 374.

Second, Murdaugh's testimony is clearly not credible when weighed against the evidence introduced at trial. To find an acquittal probable, the Court would have to believe a jury would disregard the mountain of testimony and documentary evidence introduced at trial establishing the Defendant's guilt and instead credit Murdaugh's testimony. His testimony does not establish a probability of acquittal on any of the charged counts.

*Count One – Conspiracy to Commit Wire Fraud and Bank Fraud*

The Defendant was convicted in Count One of conspiracy to commit wire and bank fraud for engaging in a scheme to defraud Murdaugh's personal injury clients, and to obtain money and property by materially false and fraudulent pretenses, representations, and promises. *See Second Superseding Indictment*, ECF No. 61 at 10–11. As the Court has already ruled, "[t]he record contains substantial evidence" of the conspiracy between the Defendant and Murdaugh. *See Order Denying Motion for New Trial and for Judgment of Acquittal*, ECF No. 267 at 33.

Extensive evidence established that the Defendant re-cut and negotiated stolen settlement checks at Murdaugh's request, and he made money for doing so. He served as the conservator for Hannah and Alania Plyler, and he extended himself and Murdaugh loans from Hannah's conservatorship. *Nov. 21, 2022 Tr.*, ECF No. 222 at 10:21–11:5 (Defendant's Testimony). He repaid his own loans using fees he collected from other clients from whom Murdaugh stole. *Id.* at 15:3–11 (Defendant's Testimony). And he repaid Murdaugh's loans using money stolen from other clients. *Id.* at 24:8–12 (Defendant's Testimony). The Defendant admitted that he negotiated every check and money order of the stolen client funds that passed through Palmetto State Bank. *Id.* at 24:13–21 (Defendant's Testimony). He admitted that he structured money Murdaugh stole

from Natasha Thomas.  *Id.* at 38:13–39:5 (Defendant's Testimony).  And in exchange, he received over $450,000 in fees for serving as either conservator or personal representative for Murdaugh's clients.  GX 198 at 14.

Testimony and documents introduced at trial established that the Defendant did not just know about Murdaugh's scheme to defraud his clients—he was the single mechanism by which it was possible.  Against that evidence, Murdaugh's testimony that the Defendant "never conspired with [him] to do anything" is simply not credible, and it is not likely to produce an acquittal.

*Count Two – Bank Fraud*

The Defendant was convicted in Count Two of bank fraud for negotiating and distributing a check totaling $101,369.49 to Hannah Plyler, knowing that the money belonged to the Badgers. *See Second Superseding Indictment*, ECF No. 61 at 12.  Murdaugh's testimony that the Defendant "didn't do anything" knowingly is belied by the testimony and evidence introduced at trial. Murdaugh had the Defendant appointed as the Personal Representative for the Estate of Donna Badger.  *Nov. 18, 2022 Tr.*, ECF No. 221 at 148:11–15 (Defendant's Testimony).  In November 2012, the same day Arthur Badger signed a disbursement sheet indicating $1,325,000 of settlement funds would go to Palmetto State Bank to fund a structure, Murdaugh had a meeting at the Bank. GX 23; GX 27.  The next day, the Law Firm issued the Defendant's $35,000 personal representative fee, drafted to "Palmetto State Bank" with "Arthur Badger – Personal Representative Fee" in the memo line.  GX 119.

A few months later, Murdaugh emailed the Defendant and asked him to email Murdaugh and ask that a check from the same day the Badger disbursement sheet was signed, made out in the same amount as Badger's intended structure, be re-cut into four smaller checks. GX 39.  The Defendant did so, creating a new email chain.  GX 38.  Murdaugh forwarded the Defendant's email

9

to the Law Firm's accounting department, and the checks were re-cut. *See id.* One of the four re-cut checks was later re-cut into several smaller checks. GX 29; GX 30.

One of those checks—the basis for Count Two—was in the amount of $101,369.49. GX 29 at 6. It said "Estate of Donna Badger" in the memo line, but the Defendant deposited it into Hannah Plyler's conservatorship to repay a loan he had extended to Murdaugh. *See* GX 29 at 6, 7. The Bank's compliance officer testified that any teller at the Bank would have known based on the memo line not to negotiate a check in that manner. *Nov. 16, 2022 Tr.*, ECF No. 220 at 24:25–25:14 (Peters Testimony). But the Defendant, at the time a senior bank official, did it anyway.

The testimony and documents introduced at trial showed beyond a reasonable doubt that the Defendant knowingly executed a scheme to obtain money or property and did so with the intent to defraud. Weighed against that evidence, Murdaugh's testimony that the Defendant did not know about the scheme is not credible, and it is not probable that it would produce an acquittal.

*Count Three – Wire Fraud*

The Defendant was convicted in Count Three of wire fraud for distributing $33,789.83 belonging to the Estate of Donna Badger and/or the Estate's beneficiaries to Murdaugh's personal account, affecting a financial institution. *See Second Superseding Indictment*, ECF No. 61 at 13. In 2013, a check for $33,789.83 was made out to Palmetto State Bank with "Estate of Donna Badger" in the memo line. GX 29 at 19. This money derived from the $1,325,000 stolen from Arthur Badger through re-cut checks. *See id.* The Defendant deposited the check into Murdaugh's account using a deposit slip that said "Donna Badger" but listed Murdaugh's account number. GX 29 at 20; *Nov. 21, 2022 Tr.*, ECF No. 222 at 49:12–20 (Defendant's Testimony).

When the stolen Badger funds were uncovered in 2021, the Defendant cut a check for $680,000 from Palmetto State Bank and delivered it to the Law Firm to cover half of the stolen

10

Badger settlement funds plus half of his personal representative fee. GX 14; GX14a. That money included half of the $33,789.83 the Defendant deposited into Murdaugh's account. *See* GX 14a.

Murdaugh's testimony that the Defendant had no knowledge of Murdaugh's theft of client funds is directly contradicted by the evidence introduced at trial, which showed the Defendant deposited money clearly labeled as Donna Badger's into Murdaugh's account and then volunteered to use Bank money to repay half of it when the theft was uncovered. It is not probable that Murdaugh's testimony would produce an acquittal when weighed against the evidence.

*Counts Four, Five, and Six – Misapplication of Bank Funds*

The Defendant was convicted of misapplication of bank funds in Counts Four, Five, and Six for distributing $680,000 of Palmetto State Bank funds to the Law Firm, without notice to or consent from the Board of Directors, knowing he had fraudulently transferred the money to Murdaugh; extending Murdaugh a $750,000 sham loan; and advancing Murdaugh $284,787.52 from a farming line of credit to pay back loans the Defendant had extended Murdaugh from Hannah Plyler's conservatorship. *See Second Superseding Indictment*, ECF No. 61 at 14–16. The Government was required to show that the Defendant willfully misapplied the funds and did so with the intent to inflict financial injury to the Bank or to defraud the Bank. *See Order Denying Motion for New Trial and for Judgment of Acquittal*, ECF No. 267 at 38. Murdaugh's testimony—even if believed—has no bearing on whether the Defendant intended to defraud the Bank or misapply Bank funds.

Murdaugh testified that "Russell Laffitte never conspired with [him] to do anything. Whatever was done was done by [him]." Day 1 Testimony at 7:57:10–19. But Counts Four, Five, and Six don't relate to a conspiracy; they relate to the Defendant's misapplication of Bank funds. Murdaugh testified, "This is stuff that I did. This is stuff that -- I did these things wrong. Russell

11

Laffitte didn't do anything." Day 1 Testimony at 8:00:05–14. But that was in response to questions about the loans the Defendant extended to Murdaugh from Hannah Plyler's Conservatorship and how they were paid back, Day 1 Testimony at 7:51:58–7:57:08, not about the Defendant's $680,000 payment of Bank Funds to the Law Firm, extending Murdaugh a sham loan, or advancing Murdaugh funds from a farming line of credit to pay back Hannah Plyler. Murdaugh testified, "I did this and I am the one that took people's money that I shouldn't have taken and that Russell Laffitte was not involved in helping me do that knowingly." Day 1 Testimony at 8:00:25–36. But Counts Four, Five, and Six deal solely with the Defendant's conduct, not Murdaugh's theft. Murdaugh did not testify about the Defendant's state of mind with respect to these three counts, nor does he have any basis of knowledge for doing so. His testimony is not relevant to the Defendant's state of mind regarding Counts Four, Five, and Six, and it cannot outweigh the overwhelming evidence the Government introduced at trial showing the Defendant had sufficient intent to be convicted on all three counts.

In short, as to Count Four, the Government established that the Defendant paid the Law Firm $680,000 of Bank funds without explaining to the Board that the money included repayment for half of the $35,000 personal representative fee the Defendant collected from Arthur Badger, *see, e.g.*, *Nov. 14, 2022 Tr.*, ECF No. 218 at 274:20–275:1 (Becky Laffitte Testimony); without explaining the circumstances surrounding the check or the stolen Badger money, *see, e.g.*, *Nov. 8, 2022 Tr.*, ECF No. 204 at 198:23–199:18 (Norris Laffitte Testimony); without explaining that part of the payment included a check for $388,687.50 that the Defendant cut to one of Murdaugh's law partners, *see, e.g.*, *id.* at 204:19–24 (Norris Laffitte Testimony); and without telling the Board that the Defendant had personally negotiated hundreds of thousands of dollars in checks from the Badger settlement funds to persons and entities totally unrelated to the Badgers, including to pay

12

back loans the Defendant had extended Murdaugh from Hannah Plyler's conservatorship, *see, e.g.*, *id.* at 205:22–206:1 (Norris Laffitte Testimony). The Defendant paid the Law Firm without the knowledge or approval of the Board of Directors and without obtaining a release from the Firm. *See, e.g.*, *Nov. 14, 2022 Tr.*, ECF No. 218 at 273:11–13 (Becky Laffitte Testimony). The evidence was sufficient to show the Defendant willfully used Bank funds and did so with intent to injure or defraud the Bank. *See Second Superseding Indictment*, ECF No. 61 at 14. Murdaugh's recent testimony does nothing to establish otherwise.

As to Count Five, the Defendant extended Murdaugh a $750,000 loan—purportedly for beach house renovations—without first disclosing it to or receiving approval from the Bank's Executive Committee or Board of Directors. *Id.* at 15; *see, e.g.*, *Nov. 10, 2022 Tr.*, ECF No. 199 at 5:22–6:13 (Jan Malinowski Testimony). Instead of Murdaugh using the funds for beach house renovations, the Defendant wired $350,000 to an attorney and deposited the other $400,000 in Murdaugh's account to cover a $367,784.67 overdraft unrelated to beach house renovations. GX 10i; GX 82; GX 192; GX 220. When the loan was disclosed to the Board (after it had been fully paid out), it was represented to be for beach house renovations. *See, e.g.*, *Nov. 8, 2022 Tr.*, ECF No. 204 at 149:3–5 (Norris Laffitte Testimony). The loan was undercollateralized, and Murdaugh never made a payment on it. *Id.* at 172:23–24 (Norris Laffitte Testimony); GX 7. The evidence was sufficient to show the Defendant misapplied bank funds when he extended this sham loan, and Murdaugh's testimony—which was wholly unrelated to this loan—does not establish otherwise.

As to Count Six, the Defendant extended Murdaugh a line of credit for farming, then advanced $284,787.52—the exact amount of money Murdaugh owed Hannah Plyler—and issued a cashier's check to Plyler's conservatorship to repay Murdaugh's loans. *Second Superseding*

13

*Indictment*, ECF No. 61 at 16; GX 57; GX 87.  Notably, Murdaugh's testimony regarding the Plyler loans directly contradicts the Defendant's.  Murdaugh testified that the Plyler loans were not his idea.  Day 1 Testimony at 7:54:48–7:55:16 (Murdaugh: "I'm just telling you that Russell Laffitte gave me a loan from the Plylers.  Your question was, did I get him to do that?  And, I don't necessarily believe that to be accurate . . . .  That was, um, I think that Russell felt like that it was a sound investment for those girls to charge me a higher interest rate . . . .").  The Defendant said they were.  *Nov. 21, 2022 Tr.*, ECF No. 222 at 10:21–24 (Defendant's Testimony) (Q: "Mr. Laffitte, you testified that it was Alex's idea to take the loans from Hannah Plyler's conservatorship account; is that correct?"  A: "That's correct.").  If anything, Murdaugh's testimony inculpates the Defendant with respect to the advance from the farming line of credit.

But even if Murdaugh's general statements about the Defendant's knowledge could be construed to say that the Defendant played no role in using the farming line of credit to pay back the Plyler loans, documentary evidence introduced at trial disproves the claim.  The Defendant emailed Murdaugh *after* he had advanced the money from the line of credit and told Murdaugh he had used the money to pay back the Plyler loans.  GX 57.  Murdaugh later responded, "I need to do whatever we have to do to activate my full credit line . . . .  I had not figured the payoff for Hannah and the other loan when I was planning."  GX 58.

The evidence was sufficient to show the Defendant misapplied bank funds when he extended nearly $300,000 from a farming line of credit to cover the loans he had made to Murdaugh from Hannah Plyler's conservatorship.  Murdaugh's testimony about the Defendant's role in the Plyler loans, when weighed against contemporary, documentary evidence shown at trial, does not make an acquittal probable.

14

### III.  Conclusion

The Defendant seeks a new trial based solely on the testimony of an unindicted coconspirator who has now admitted that for years, he stole money from his clients and lied to his family, friends, law partners, employees, clients, and law enforcement. Murdaugh's testimony is not newly discovered evidence within the meaning of Rule 33. It is not credible, and there is no probability that it would result in an acquittal on any of the Defendant's counts of conviction. The Defendant's Second Motion for a New Trial should be denied.

Respectfully submitted,

ADAIR F. BOROUGHS
UNITED STATES ATTORNEY

By: s/ *Katie Stoughton*
Kathleen Michelle Stoughton (Federal ID #12161)
Emily Evans Limehouse (Federal ID #12300)
Winston D. Holliday, Jr. (Federal ID #7597)
Assistant United States Attorneys
1441 Main Street, Suite 500
Columbia, South Carolina, 29201
Kathleen.Stoughton@usdoj.gov

March 23, 2023