# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF SOUTH CAROLINA
# BEAUFORT DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>RUSSELL LUCIUS LAFFITTE,<br><br>Defendant. | Case No.: 9:22-cr-00658-RMG |

### REPLY TO GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT RUSSELL LUCIUS LAFFITTE'S SECOND MOTION FOR A NEW TRIAL

Defendant Russell Lucius Laffitte ("Mr. Laffitte"), by and through undersigned counsel, respectfully replies to the Government's Response in Opposition (ECF No. 280) to Mr. Laffitte's Second Motion for New Trial (ECF No. 274).[1] Undersigned counsel notified the Court of its intention to file a reply and sought leave from this Court to do so. *See* ECF 284. The Court granted this request for leave to file a reply and allowed until April 3, 2023 to file such a reply. *See* ECF No. 285.

The Government argues that the recent testimony of Mr. Laffitte's unindicted coconspirator, Richard Alexander Murdaugh ("Mr. Murdaugh"), given under oath during his state murder trial a few months after Mr. Laffitte's trial is not "newly discovered evidence" within the meaning of Federal Rule of Criminal Procedure 33, and, the Government argues, is not likely to

---

[1] While this Second Motion for New Trial alone provides sufficient grounds upon which a new trial should be granted, this Motion supplements Mr. Laffitte's previous Motion for New Trial (*see* ECF Nos. 224, 254, and 261). Mr. Laffitte understands that the Court has ruled on the prior Motion (*see* ECF No. 267) and he respectfully disagrees with the Court's ruling. However, the grounds in this Motion, combined with the prior issues raised, is yet another reason why Mr. Laffitte did not receive a fair trial and why, under the totality of the circumstances, Mr. Laffitte is entitled to a new trial. While the Government argues that Mr. Murdaugh's testimony is "insufficient to meet the high bar for a new trial set by Rule 33," the Government spends 15 pages responding to a seven-page Motion, arguably protesting a bit too much.

produce an acquittal. As previously discussed, Mr. Murdaugh testified: (1) "**Russell Laffitte never conspired with me to do anything, whatever was done was done by me**": (2) "This is stuff that I did. I did these things wrong. **Russell Laffitte didn't do anything**…" and (3) "You keep talking about stuff I did with Russell Laffitte, but what **I want to let you know is that I did this and I am the one that took people's money that I shouldn't have taken and that Russell Laffitte was not involved in helping me do that knowingly… If he did it, he did it without knowing it**." ECF No. 274 at 2. However, as discussed further herein, this specific testimony, previously unknown to Mr. Laffitte, would have, at the very least, created reasonable doubt as to Mr. Laffitte's guilt. Therefore, as discussed in Second Motion for New Trial (ECF No. 274), Mr. Laffitte is entitled to a new trial.

## ARGUMENT

### I. Mr. Murdaugh's testimony is newly discovered evidence warranting a new trial.

First, Mr. Laffitte did not know exactly how Mr. Murdaugh was going to testify. It is true that Mr. Laffitte's trial counsel notified the Court and the Government that Mr. Murdaugh's attorney had previously indicated "that Mr. Murdaugh was very willing to testify on Russell's behalf and say that he had nothing to do with this." ECF No. 280 at 5. However, as Mr. Murdaugh's murder trial was scheduled to begin just a few months after Mr. Laffitte's trial and the state court had not yet ruled on the admissibility of Mr. Murdaugh's financial crimes, Mr. Murdaugh's counsel was required to notify the Court that Mr. Murdaugh would be forced to exercise his Fifth Amendment rights during Mr. Laffitte's November 2022 trial.[2] As such, Mr. Murdaugh did not

---

[2] Indeed, it could be argued that trial counsel's decision to push for a November 2022 trial rather than wait until after Mr. Murdaugh's trial (where Mr. Murdaugh might provide favorable testimony under oath) was, at best, ill advised—and ultimately, particularly when combined with other errors made by trial counsel, highly damaging to Mr. Laffitte.

2

testify at Mr. Laffitte's trial. Mr. Murdaugh's counsel's statement referred to above was very general in nature and there is no evidence that Mr. Laffitte was aware of what Mr. Murdaugh's testimony was going to be prior to hearing it in Mr. Murdaugh's own trial. On February 23, 2023, Mr. Murdaugh, for the first time, stated clearly and directly under oath that Mr. Laffitte was not his coconspirator[3] and was not a knowing participant in Mr. Murdaugh's financial crimes. As such, it should be considered newly discovered evidence.

In arguing that Mr. Murdaugh's highly-relevant testimony is not newly-discovered evidence within the meaning of Rule 33, the Government primarily relies on a distinguishable **unpublished**[4] decision from the Fourth Circuit as there are no published cases in this circuit that adopt the Government's reasoning  *See United States v. Griffin*, 489 F. App'x 679, 681 (4th Cir. 2012) *(*unpublished). In *Griffin*, the defendant, years after conviction, submitted a single-sentence declaration from one of his former codefendants, which stated: "I Mr. Darrick Fraling Jr. would testify that Mr. Griffin did not take part in the October 31 event that me and two other individuals

---

[3] The Government's argument that Mr. Murdaugh's testimony that Mr. Laffitte was not his coconspirator is not admissible is arguably specious—and clearly wrong. The Government charged Mr. Laffitte in Count One with conspiracy—and the only person identified as a co-conspirator in the Second Superseding Indictment is referred to as "the Bank Customer," who the Government has confirmed is Mr. Murdaugh. *See* ECF No. 280 at 1. At trial, the Government took the position that Mr. Laffitte conspired directly with Mr. Murdaugh and the Government argued (both directly and indirectly) at trial that Mr. Murdaugh was the architect and prime mover in this alleged conspiracy. Clearly, the testimony of the primary founder and mover of the alleged conspiracy that Mr. Laffitte did not join the conspiracy is not only admissible—it is highly probative and crucial evidence.

[4] Under Fourth Circuit rules, unpublished decisions "do[] not constitute binding authority." *United States v. Morris*, 917 F.3d 818, 826 (4th Cir. 2019); *see also Edmonson v. Eagle Nat'l Bank*, 922 F.3d 535, 545–46 n.4 (4th Cir. 2019) ("Unpublished decisions, of course, do not constitute binding precedent in this Circuit." ); *Pressley v. Tupperware Long Term Disability Plan,* 553 F.3d 334, 339 (4th Cir. 2009) (reaching a decision at odds with unpublished precedent, noting that the Fourth Circuit is "not bound by" unpublished precedent, and ordinarily does "not accord precedential value to our unpublished decisions."). There do not appear to any reported district court cases in this district that follow *Griffin*.

3

took part in." *Id.* at 680. The Fourth Circuit agreed that the specific declaration at issue in that case did "not constitute newly discovered evidence within the meaning of Rule 33." *Id.* at 680.

Of course, this case differs substantially from the Fourth Circuit's unpublished decision in *Griffin*. First, the potential testimony offered in *Griffin* was in the form of a one-sentence declaration from a codefendant, roughly two and a half years after Griffin's trial. *See id.* at 681. Here, Mr. Murdaugh was not a codefendant of Mr. Laffitte and has not, as of the date of this filing, ever been charged by the federal government. Mr. Murdaugh did not submit a one-sentence declaration, but rather, gave live testimony *under oath and subject to cross examination* during his own murder trial just months after Mr. Laffitte's own trial concluded. Further, Mr. Laffitte was not involved in procuring Mr. Murdaugh testimony about him (Mr. Laffitte) in the murder trial nor was Mr. Laffitte at all involved in generating the testimony at issue. Moreover, the facts of the case at bar are far much more complicated than those in *Griffin*. Here, the crimes charged are financial in nature and the key issue here is one of intent, while the *Griffin* case involved a car-jacking where a codefendant pled guilty during the trial and then indicated he would invoke his Fifth Amendment rights if called as a witness by Griffin.

In *Griffin*, the Fourth Circuit's unpublished *per curiam* opinion indicated that it relied on "the plain and unambiguous term 'newly discovered evidence' found in Rule 33(b)(1)" – if "the defendant knew about the evidence prior to the conclusion of his trial, by definition, the evidence cannot be newly discovered after such trial." 489 F. App'x at 681. And, while the *per curiam* opinion in *Griffin* indicates that it relied on multiple decisions of other circuits in reaching that conclusion (and those cases are string cited by the Government, *see* ECF No. 280 at 4-5), at least three circuits (not just one, as argued in the Government's Response) have reached contrary conclusions.

4

As the Government acknowledges, the First Circuit's precedent supports Mr. Laffitte's argument. *See Vega Pelegrina v. United States*, 601 F.2d 18, 21 (1st Cir. 1979) (holding that the "newly discovered" language of Rule 33 encompasses evidence that was "unavailable."). In *United States v. Montilla-Rivera*, 115 F.3d 1060 (1st Cir. 1997), the First Circuit noted that "given the '[i]n the interests of justice' standard of Fed. R. Crim. P. 33, there seems little distinction between evidence which a defendant could not present because he did not know of it and evidence which he could not present because the witness was unavailable despite exercising due diligence." 115 F.3d at 1066. These two well-reasoned decisions from the First Circuit are also supported by cases from the Sixth Circuit, *see United States v. Garland,* 991 F.2d 328, 335 (6th Cir.1993) (ordering a new trial where "although the defense knew of [witness's] existence before and during the trial, [the witness] was not located until after the trial."), and from the Second Circuit, *see United States v. Ouimette,* 798 F.2d 47, 51-52 (2d Cir.1986) (ordering hearing on new trial where witness, while known of at trial, was unavailable after police allegedly pressured him not to testify).

While there may be cases from other circuits which stand in contrast to these well-reasoned decisions from the First, Second, and Sixth Circuits, there is not "overwhelming precedent from nearly every federal appellate court, including the Fourth Circuit" (Government Response, ECF No. 280 at 15) holding that newly-available evidence is not newly discovered. First, as for the Fourth Circuit, the *Griffin* case is unpublished, so it is not binding precedent—and the *Salazar* case cited by the Government, *see* ECF No. 280 at 6, is not only unpublished, it is a one paragraph opinion which does not mention or refer in any way to the quotation from the unpublished district court which it summarily affirmed. *See United States v. Salazar*, 396 F. App'x 44, 45 (4th Cir. 2010). Second, as noted above, at least three circuits have rejected arguments like the one made here.

5

In this case, the evidence here was in fact newly-discovered, not just newly-available. In any event, the Court should follow the highly persuasive reasoning of the First Circuit's decision in *Montillo-Rivera* and hold that, in the interests of justice, the evidence in question here is newly-discovered and entitles Mr. Laffitte to a new trial.

II. **Mr. Murdaugh's testimony is sufficient to at least create reasonable doubt because his testimony undercuts the government's evidence that Mr. Laffitte had the *mens rea* necessary to be convicted of the crimes with which he was charged.**

While the Government spends pages of its Response rehashing the evidence it presented at trial against Mr. Laffitte, its Response fails to address the standard of proof in a criminal case. The Due Process Clause of the United States Constitution "requires the prosecution to prove beyond a reasonable doubt **all of the elements** included in the definition of the offense of which the defendant is charged." *Patterson v. New York*, 432 U.S. 197, 210 (1977) (emphasis added). Mr. Murdaugh testified unequivocally that "**Russell Laffitte was not involved in helping me [take people's money] knowingly… If he did it, he did it without knowing it**." *See* ECF 274 at 2. As discussed in the Motion, each count that Mr. Laffitte is charged with has a *scienter* or *mens rea* element, which the Government must prove beyond a reasonable doubt for each count. *See id.* at 4-6. Mr. Murdaugh's testimony is that he, and he alone, committed the financial crimes and Mr. Laffitte had no knowledge of such crimes. While the impact of this testimony on jury is unknown at this point, it is probable that this testimony would at least create reasonable doubt in the mind of some jurors, if not all jurors, thereby resulting in an acquittal.

The Government argues that "is difficult to imagine…a less credible witness" than Mr. Murdaugh. ECF No. 280 at 7. However, the Government surely finds Mr. Murdaugh's testimony that he committed numerous financial crimes to be credible—and, indeed, the Government and its state partners may well intend to seek to use Mr. Murdaugh's admissions concerning his financial

crimes against him at some point. As such, the Government may well be talking out of both sides of its mouth here.

According to the South Carolina Attorney General's Office, Mr. Murdaugh has been indicted on 99 different charges related to financial crimes. The federal government has acknowledged that Mr. Murdaugh is the "Bank Customer" listed in Mr. Laffitte's indictment, ECF No. 61 at 2, and is Mr. Laffitte's "unindicted coconspirator," ECF No. 280 at 1. And even when weighed against the evidence that the Government details in its Response, the sworn testimony of Mr. Murdaugh, incriminating himself as the mastermind behind his own financial crimes, while simultaneously testifying that Mr. Laffitte had no role and no knowledge of wrongdoing, would surely introduce reasonable doubt into the mind of jurors.

Indeed, Mr. Murdaugh had covered up his financial crimes and had deceived numerous people in the process, including his close friends, who, like Mr. Laffitte, had no knowledge of Mr. Murdaugh's financial crimes. For example, during Mr. Murdaugh's trial, attorney Chris Wilson, a close friend of Mr. Murdaugh, testified on February 9, 2023 regarding a confrontation he had with Mr. Murdaugh on the morning of September 4, 2021.[5] Mr. Wilson testified under oath that Mr. Murdaugh "admitted he had been stealing money…from his law firm and from clients" during this meeting, but that Mr. Murdaugh said he had "been good about covering it up." According to Mr. Wilson's testimony, Mr. Murdaugh told him, "I've shit you up. I'm sorry. I've shit you up. **I've shit a lot of people up**," (emphasis added) which is a euphemism for taking advantage of others

---

[5] As with the previous testimony from Mr. Murdaugh's trial, the official transcript is not currently available. However, video of Mr. Wilson's testimony is available online at https://www.youtube.com/watch?v=YXh2YvCiaGY, with the relevant testimony beginning at about 2:14:57 in the linked video. Once an official transcript is available, it will be provided to the Court.

without their knowledge. Mr. Wilson also testified that he felt shocked, betrayed, mad, and numb when he first found out that Mr. Murdaugh was stealing money.

This testimony is consistent with Mr. Murdaugh's testimony that he, and he alone, was responsible for the financial crimes. When Mr. Murdaugh told Mr. Wilson, "I've shit a lot of people up," this did not just refer to Mr. Wilson, but also to various other people, clearly (in light of Mr. Murdaugh's own sworn testimony) including Mr. Laffitte. Mr. Murdaugh was good at covering up his financial crimes for years and deceived many people, including Mr. Laffitte, along the way in order to keep those crimes concealed. Because the Government now challenges the credibility of Mr. Murdaugh's testimony as it relates to Mr. Laffitte (*see* ECF No. 280 at 6-8), under Federal Rule of Evidence 801(d)(1)(B), "a prior consistent statement of a person who has testified and been subject to cross-examination is not hearsay and is admissible when the statement is offered to 'rebut an express or implied charge against him of recent fabrication, improper influence or motive.'" *United States v. Hedgepeth*, 418 F.3d 411, 422 (4th Cir. 2005) (citing *United States v. Dominguez*, 604 F.2d 304, 311 (4th Cir. 1979)). In his trial, Mr. Murdaugh testified that "Russell Laffitte didn't do anything," and "I did this and I am the one that took people's money that I shouldn't have taken and that Russell Laffitte was not involved in helping me do that knowingly." ECF 274 at 2. While the Government argues that this testimony is not credible because Mr. Murdaugh lied to clients and others for over a decade, his testimony regarding his own culpability and not Mr. Laffitte's is supported by his prior consistent statement to Mr. Wilson. Mr. Murdaugh has made no prior inconsistent statements regarding Mr. Laffitte's involvement or knowledge in Mr. Murdaugh's financial crimes. As such, the issue of the credibility of Mr. Murdaugh as a witness for Mr. Laffitte should be left to a jury.

Mr. Murdaugh's testimony regarding Mr. Laffitte's involvement and knowledge, given just a few months after Mr. Laffitte's trial, is yet another reason that Mr. Laffitte should be granted a new trial. This testimony, which is both credible and consistent with prior testimony, goes directly to Mr. Laffitte's knowledge and involvement in Mr. Murdaugh's financial crimes. Along with the prior issues raised, this is one more piece of evidence showing why Mr. Laffitte did not receive a fair trial. Under the "totality of the circumstances" of a case, the Fourth Circuit has decided to "reverse and remand for a new trial." *See United States v. Evans*, 917 F.2d 800, 802 (4th Cir. 1990); *see also United States v. Lawhorne*, 29 F. Supp. 2d 292, 312-13 (E.D. Va. 1998) ("The totality of the circumstances in the record thus convinces the Court that the Juror was actually, albeit perhaps innocently, biased in favor of the prosecution. Hence, if the general Sixth Amendment attack on the partiality of a juror is used as the framework for assessing the fifth aspect of the Rule 33 test for a new trial, the Court concludes that Lawhorne's 'new evidence' likely would have produced a mistrial or a new trial if it had been made known to the Court."). Similarly, the confluence of events surrounding Mr. Laffitte's trial, including the fact that exculpatory testimony from Mr. Murdaugh has newly been discovered, entitles Mr. Laffitte to a new trial.

## CONCLUSION

In light of Mr. Murdaugh's testimony that Mr. Laffitte did not participate in a conspiracy and was not knowingly involved in any criminal activity, Mr. Laffitte respectfully requests that his Second Motion for New Trial be granted.

*[signature page follows]*

Respectfully submitted,

s/Mark C. Moore
Mark C. Moore (Fed. ID No. 4956)
Michael A. Parente (Fed. ID No. 13358)
Maynard Nexsen, PC
1230 Main Street, Suite 700
Columbia, SC 29201
Phone: 803.771.8900
Fax: 803.727.1458
MMoore@maynardnexsen.com
MParente@maynardnexsen.com

*Attorneys for Defendant Russell Lucius Laffitte*

April 3, 2023
Columbia, South Carolina

10