# MEMORANDUM

**TO:** United States Probation Office

**FROM:** AUSAs Emily Limehouse, Katie Stoughton, and Winston Holliday

**DATE:** July 25, 2023

**RE:** *United States v. Russell Lucius Laffitte*, 9:22-658 – Revised Restitution and Forfeiture Request

---

## Restitution

On May 10, 2023, the Government submitted a memorandum requesting that the Court order the Defendant Russell Lucius Laffitte to pay restitution to Peters Murdaugh Parker Eltzroth and Detrick ("PMPED") in the amount of $1,521,513.33 and to Palmetto State Bank ("PSB") in the amount of $2,831,069.45, for a total of $4,352,582.78.[1] After reviewing the Defendant's objections to the restitution request and consulting with counsel for PMPED and PSB, the Government now files this amended request, seeking a total restitution order of **$3,555,884.80**, including $1,207,016.14 for PMPED and $2,348,868.66 for PSB.

### PMPED's Restitution Request

| | |
|---|---|
| Count 1 | $175,122.54 (Half of $325,000 and $25,245.08 Checks Stolen from Natasha Thomas) |
| | $154,790.73 (Half of $309,581.46 Check Stolen from Hakeem Pinckney) |
| | $60,000    (Conservator Fees from Hakeem Pinckney) |
| | $15,000    (Conservator Fees from Natasha Thomas) |
| | $1,325,000 (Money Stolen from Arthur Badger) |
| | $35,000    (Personal Representative Fee from Arthur Badger) |
| Count 1 Total | **$1,764,913.27** |
| Investigation Costs | **$122,102.87** |
| Subtotal | $1,887,016.14 |
| Offset | $680,000 (check from PSB to PMPED) |
| TOTAL RESTITUTION | **$1,207,016.14** |

---

[1] Attorneys for the remaining victims in this case—Natasha Thomas, Pamela Pinckney, Arthur Badger, and Hannah and Alaina Plyler—notified the Government that they do not intend to seek restitution in light of related civil settlements.

1

Palmetto State Bank's Restitution Request

| | |
|---|---|
| Count 4 | $680,000 (Unauthorized PSB Check to PMPED Totaling ½ of Badger Settlement Funds plus ½ of RLL PR Fee) |
| Offset | $17,500   (RLL Check to PSB for ½ of RLL PR Fee) |
| Count 4 Total | **$662,500** |
| Count 5 | $750,000 (Unauthorized Sham Loan RLL Extended to RAM) |
| Offset | $250,000 (PSB Recovery from Sale of Green Swamp) |
| Count 5 Total | **$500,000** |
| Count 6 | $284,787.52[2] |
| Offset | Outstanding amount following sale of Moselle |
| Count 6 Total | **$150,000** |
| Investigation Costs | **$706,455.39** |
| Pinckney Settlement | **$154,790.73** (Half of $309,581.46 Check Stolen from Hakeem Pinckney) |
| Thomas Settlement | **$175,122.54** (Half of $325,000 and $25,245.08 Checks Stolen from Natasha Thomas) |
| TOTAL RESTITUTION | **$2,348,868.66** |

The Mandatory Victim Restitution Act

The Mandatory Victim Restitution Act (MVRA), 18 U.S.C. § 3663A, sets forth that, in sentencings for convictions of an offense against property, the court shall order that the defendant make restitution to the victims of the offense. A victim is defined as "a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered including, in the case of an offense that involves as an element a scheme, conspiracy, or pattern of criminal activity, any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern. 18 U.S.C. § 3663A(a)(2). The order of restitution shall require that the defendant, in the case of an offense resulting in loss of property, pay an amount equal to the value of the property on the date of the loss. 18 U.S.C. § 3663A(b)(1).

---

[2]     PSB originally requested $500,000 for Count 6 to account for the full value of the line of credit, based on testimony that the Defendant misapplied those funds by transferring the money to cover Alex Murdaugh's overdraft rather than for purposes of farming. *See* Trial Tr. 563:1-569:16. Although the $500,000 is attributable to the Defendant's loss amount as relevant conduct under U.S.S.G. § 1B1.3, the Court should only include $284,787.52 in its restitution order as the conduct of conviction. *See United States v. Freeman*, 741 F.3d 426, 434 (4th Cir. 2014) (interpreting the restitution statutes to authorize restitution for the offense of conviction and not for relevant conduct).

<u>Direct and Proximate Loss to PSB</u>

The Government first requests that the Court order restitution to PSB for the losses incurred from Counts 4, 5, and 6. Counts 4, 5, and 6 each charged the Defendant with misapplication of bank funds. They relate to an unauthorized $680,000 payment the Defendant made to PMPED (Count 4), a $750,000 sham loan the Defendant extended to Alex Murdaugh (Count 5), and an unauthorized $284,787.52 advance the Defendant made on Murdaugh's $500,000 line of credit (Count 6). PSB was directly and proximately harmed by the Defendant's conduct. His misapplication of PSB funds resulted in a financial loss to the bank.

*Count 4*

The Government originally requested the Defendant be ordered to repay PSB $680,000 for Count 4, representing the loss PSB incurred when the Defendant misapplied bank funds to pay PMPED in October 2021. The Defendant's unauthorized $680,000 payment represented half of the $1,325,000 in settlement funds stolen from Arthur Badger, plus half of the Defendant's $35,000 personal representative fee. During the trial, the Defendant presented Defense Exhibit 83, a personal check for $17,500 that the Defendant drafted to PSB, dated November 1, 2021. Def.'s Exhibit 83. The $17,500 was to repay PSB for the half of the Defendant's personal representative fee that the Defendant had included in the unauthorized $680,000 check he wrote to PMPED.

The back of the check and the deposit slip reflect that the $17,500 was deposited into PSB's losses other than loans account on December 17, 2021. *Id.* The Government has confirmed with counsel for PSB that the $17,500 check was deposited into PSB's accounts. The $680,000 should be offset to account for the Defendant's repayment of half of the personal representative fee. Therefore, the Government now requests that the Court order the Defendant to pay PSB $662,500 in restitution related to Count 4.[3]

---

[3]     Although the Government agrees that the restitution should be reduced to reflect the

*Count 5*

As to Count 5, the Governments renews its request that the Court order the Defendant to pay restitution to PSB in the amount of $500,000. PSB incurred a loss of $750,000 when the Defendant extended a sham loan to Murdaugh. However, the restitution order should be offset by $250,000, the amount PSB recovered when the collateral on the loan (a share of Green Swamp) was sold. *See* Exhibits 1 and 4; *See also Robers v. United States*, 572 U.S. 639 (2014) (sentencing court must reduce restitution by amount of money victim received in selling the collateral).

*Count 6*

As to Count 6, the Government amends its request and seeks a reduction in the corresponding restitution amount to account for the money PSB collected from the sale of Moselle. Count 6 charged the Defendant with misapplication of $284,787.52 in bank funds from a $500,000 line of credit for "farming" that the Defendant used to pay off Murdaugh's personal loans. The line of credit was secured by property owned by Murdaugh, called Moselle. The line of credit was thereafter extended into a million-dollar line of credit, also secured by the Moselle property. When the loan was charged off, it had a principal balance of $1,020,535.60. Exhibit 3 There was also a corresponding loan secured by the Moselle property, with a principal balance of $840,320.62. Exhibit 3.

In September 2022, PSB entered into an agreement with the Receiver of Murdaugh's assets to settle its claims against the Moselle property. *See* Exhibit 2. Pursuant to the agreement, the Receiver transferred $1,696,775.47 from the proceeds of the sale of Moselle to PSB. *See* Exhibit 3. In exchange, PSB agreed to pay the Receiver $150,000. *Id.* While the Government originally requested the full $284,787.52 in restitution, it now amends its request to offset the loss from the

---

Defendant's repayment of half of his personal representative fee, the loss amount under the Guidelines should not be reduced. As is fully set forth in the Government's sentencing memorandum, because the Defendant repaid PSB these funds *after* detection of his conduct, the loss amount associated with Count 4 remains $680,000. *See* U.S.S.G. §2D1.1 application Note 3(E)(i).

sale of the Moselle property and requests the $150,000 PSB was required to pay following the sale of Moselle. The total restitution request for Count 6 is therefore $150,000.

### Restitution for Attorney's Fees for PMPED and PSB

The Government also renews its request that the order of restitution require the Defendant to reimburse PMPED and PSB for fees incurred during their participation in the investigation and prosecution of this case. 18 U.S.C. § 3663A(b)(4); *see also* Gov't's Memorandum in Support of Restitution Request. The Government previously submitted PMPED and PSB's itemized bills outlining the fees sought and their direct relationship to the investigation and prosecution of the federal case, attached to the May 10, 2023 memorandum in support of the restitution request. The Defendant originally contested the Government's request. Counsel for the Defendant, as well as counsel for PSB, have informed the Government that the Defendant does not contest the fees and costs to PSB, totaling **$706,455.39**. It is the Government's understanding that the Defendant also does not contest the **$122,102.87** in fees and costs requested by PMPED.

### Restitution to PMPED and PSB under the Collateral Source Rule

Finally, the Government requests the Court include in its restitution order the losses incurred by PMPED and PSB associated with their payments to the other victims under the collateral source rule, 18 U.S.C. § 3664(j)(1). The jury convicted the Defendant of Count 1, which charged him with conspiracy to commit wire fraud and bank fraud, that is to defraud Alex Murdaugh's personal injury clients and PMPED and to obtain money held by PSB by means of materially false and fraudulent pretenses, representations, and promises. Count 1 outlined the Defendant's scheme with Murdaugh to steal $1,325,000 from Arthur Badger, $350,245.08 from Natasha Thomas, and $309,581.46 from Hakeem Pinckney. The Indictment further outlined the Defendant's ill-gotten gains from this conspiracy, including $15,000 in conservator fees from Natasha Thomas, $60,000 in conservator fees from Hakeem Pinckney, and $35,000 in personal representative fees from Arthur Badger.

As fully set forth in the Government's previous memorandum in support of its restitution request, Title 18 U.S.C. § 3664(j)(1) provides that if a victim has received compensation from insurance or any other source with respect to a loss, the court shall order that restitution be paid to the person who provided or is obligated to provide the compensation, but the restitution order shall provide that all restitution of victims required by the order be paid to the victims before any restitution is paid to such a provider of compensation. 18 U.S.C. § 3664(j)(1). The MVRA's definition of "victim" "includes third parties otherwise responsible for the costs of assisting a principal victim." *United States v. Dungee*, 228 F. App'x 298, 300 (4th Cir. 2007) (citing *United States v. Johnson*, 400 F.3d 187, 200-01 (4th Cir. 2005)).

Here, PMPED and PSB both paid Natasha Thomas, Pamela Pinckney,[4] and Arthur Badger to settle claims related to the Defendant's conduct charged in Count 1 and to make those victims whole. PMPED paid Badger for the stolen $1,325,000 in settlement funds and the $35,000 in personal representative fees. Therefore, PMPED is entitled to the full restitution amount for Arthur Badger. However, because PMPED still retains the $680,000 in PSB funds, their restitution should be reduced by $680,000, to prevent a windfall for PMPED.

PMPED and PSB each paid Pinckney and Thomas for the stolen $309,581.46, $325,000, and 25,45.08 checks. Because PMPED and PSB each paid Pinckney and Thomas to make them whole, the Government requests that the Court split the cost between PMPED and PSB, as reflected in the charts above. This ensures the Defendant pays restitution only in the amount stolen from Pinckney and Thomas, not double that amount.

---

[4] Hakeem Pinckney passed away shortly after his lawsuit was settled. His mother, Pamela, represents his estate.

Forfeiture

In December 2022, the Government filed a Motion for a Preliminary Order of Forfeiture pursuant to Federal Rule of Criminal Procedure 32.2(b), seeking a forfeiture money judgment for the total fees the Defendant collected as personal representative and conservator for PMPED's clients—$458,003.57. *See* GX 198, pg. 14. In July, the Government reduced the preliminary order of forfeiture to give the Defendant credit for the fees sought in restitution, including the $35,000 from Arthur Badger, the $15,000 from Natasha Thomas, and the $60,000 from Hakeem Pinckney.

In reviewing the fees the Defendant collected, the Government has agreed to further reduce the forfeiture. The Indictment charged the Defendant with a conspiracy with Murdaugh to steal from Murdaugh's client. As part of the scheme, the Defendant mismanaged Hannah Plyler and Malik Williams' settlement funds. Specifically, the Defendant extended himself loans from Hannah Plyler's funds and used conservator and personal representative fees he collected from other victims to pay the loans back. He also extended unsecured loans to Murdaugh from Malik Williams and Hannah Plyler's conservator accounts and thereafter conspired with Murdaugh to steal from the other victims to pay off the loans. Therefore, the fees the Defendant collected from Malik Williams and Hannah Plyler were ill-gotten gains of his illegal conduct. Unlike the Arthur Badger, Hakeem Pinckney, and Natasha Thomas fees, the Defendant has never had to disgorge himself of these fees.

Although the Defendant mismanaged Malik Williams and Hannah Plyler's settlement funds, the Government did not present evidence that the Defendant mismanaged or otherwise handled the Angela, Justin, and Alania Plyler settlements improperly. Therefore, the Government is now seeking a reduced forfeiture money judgment, subtracting the fees the Defendant collected from Angela, Justin, and Alania Plyler. As set forth in the chart below, GX 198, page 14, the Government now requests a forfeiture money judgment of $116,340.03, representing the illegal proceeds the Defendant received in fees from Hannah Plyler and Malik Williams.



Ability to Pay Restitution and Forfeiture

The Mandatory Victims Restitution Act of 1996 ("MVRA") authorizes the United States to enforce restitution awards "in accordance with the practices and procedures for the enforcement of a civil judgment under Federal law or State law," 18 U.S.C. § 3613(a), and by "all other available and reasonable means," 18 U.S.C. § 3664(m)(1)(A). The Presentence Report outlines that the Defendant has assets totaling $10,514,652.00 and liabilities totaling $5,208,934.00. His assets include $6,257,393.00 in PSB stock. The Court has the authority under the statute to order the Defendant to liquidate his stock ownership to satisfy the restitution order and forfeiture money judgment. *See* 18 U.S.C. § 3664(m)(1)(A); *see also United States v. Sayyed*, 186 F. Supp. 3d 879, 883 (N.D. Ill. 2016), aff'd, 862 F.3d 615 (7th Cir. 2017); *United States v. Grigsby*, 665 F. App'x 701, 708 (10th Cir. 2016); *United States v. Dillon*, 2021 WL 27239, at *3 (D. Idaho Jan. 4, 2021); *United States v. Shkreli*, 2018 WL 3425286, at *3 (E.D.N.Y. July 10, 2018); *United States v. Mileto*, 2013 WL 5289018, at *2 (M.D. Fla. Sept. 19, 2013). The Government requests that the Court determine the total amount of restitution owed and the amount of the forfeiture money judgment during the August 1, 2023 sentencing. The Government will then seek to enforce the restitution order and forfeiture

money judgment by all available and reasonable means.

        Respectfully submitted,

        ADAIR F. BOROUGHS
        UNITED STATES ATTORNEY

        By: s/ *Emily Evans Limehouse*
        Emily Evans Limehouse (Federal ID #12300)
        Kathleen Michelle Stoughton (Federal ID #12161)
        Winston D. Holliday, Jr. (Federal ID #7597)
        Assistant United States Attorneys
        151 Meeting Street, Suite 200
        Charleston, South Carolina, 29402
        (843) 266-1663
        Emily.Limehouse@usdoj.gov

July 25, 2023