IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | CRIMINAL NO. 9:22-658-RMG |
| | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| | ) | |
| **RUSSELL LUCIUS LAFFITTE** | ) | |
| | ) | |

**GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION
FOR A DISTRICT-WIDE JURY PANEL**

Defendant Russell Lucius Laffitte is scheduled for a retrial beginning on May 5, 2025. He cannot show good cause for a district-wide jury panel, and his motion should be denied. Interest in his and related cases is nationwide, and exposure to media coverage has not been limited to the Beaufort and Charleston Divisions. But this Court's recent jury selection in *Nautilus Insurance Company v. Fleming et. al*, No. 2:22-cv-1307-RMG, shows that *voir dire* is sufficient to ensure a fair and impartial jury is drawn, and pretrial publicity will not hamper the Court's ability to do so. Moreover, Laffitte's concerns with media coverage do not outweigh the burden and expense his request would impose on the public and the Court. His alternative request for a venue transfer should be denied for the same reasons.

## BACKGROUND

In November 2022, Laffitte was tried and convicted before the Court of six counts charging various financial crimes arising out of a conspiracy with Alex Murdaugh to steal client and bank funds. The jury was selected in accordance with this District's Jury Selection Plan, providing that juries are to be drawn from the divisions that align with the proximate operating courthouse. *In the Matter of the Review of the Amended Jury Selection Plan Submitted by the United States District*

Court for the District of South Carolina ("District's Jury Selection Plan"),[1] No. 3:24-mc-406-RBH, ECF No. 2-1 at 6 (D.S.C. Oct. 4, 2024). The Court empaneled a fair and impartial jury drawn from the Beaufort and Charleston Divisions. The Fourth Circuit overturned Laffitte's convictions, and the case is set for retrial.

## LEGAL FRAMEWORK

Defendants have "neither a constitutional nor statutory right to a district-wide jury." *United States v. Florence*, 456 F.2d 46, 50 (4th Cir. 1972). Under the Jury Selection and Service Act, "all litigants in Federal courts entitled to a trial by jury shall have the right to grand and petit juries selected at random from a fair cross section of the community in the district or division wherein the court convenes." 28 U.S.C. § 1861. The Act "gives no right to a jury from the entire district where there is a plan encompassing divisions." *Florence*, 456 F.2d at 49. As the Fourth Circuit has recognized, the validity of that restriction is well-established:

> [E]ven before the Act, district courts had power under 28 U.S.C.A. § 1865(a) (1966 Ed.) to select jurors from 'such parts of the district as the court directs so as to be most favorable to an impartial trial, and not to incur unnecessary expense or unduly burden the citizens of any part of the district with jury service.' The validity of a selection less encompassing than districtwide was repeatedly upheld against attacks that a defendant was entitled to a jury selected from the entire district and not from just the division or area surrounding the place of trial where trial was held.

*Id.* "[B]oth district-based and division-based jury selections comport with the Sixth Amendment right to trial by a fair and impartial jury randomly drawn from a fair cross-section of the community." *United States v. McGregor*, No. 2:10-cr-186-MHT, 2011 WL 1344189, at *3 (M.D. Ala. Apr. 8, 2011) (citing *Ruthenberg v. United States*, 245 U.S. 480, 482 (1918); *United States v. Grisham,* 63 F.3d 1074, 1081 (11th Cir. 1995)).

---

[1] https://www.scd.uscourts.gov/StandingOrders/Jury/Jury_Selection_Plan.pdf

The District's Jury Selection Plan says "[a] district-wide petit jury may be used when ordered by the Chief Judge for good cause shown." *District's Jury Selection Plan* at 6.

## ARGUMENT

**I. This Court's recent jury selection in a related matter shows pretrial publicity will not jeopardize the ability to draw a fair and impartial jury from the Beaufort and Charleston Divisions.**

Laffitte cannot establish good cause to warrant a district-wide jury panel. As an initial matter, Laffitte's claim that a district-wide panel is needed because "it is unlikely that potential jurors from" the Beaufort and Charleston Divisions—as opposed to those from the rest of the district—"have remained uninfluenced by pretrial publicity," *Mot.*, ECF No. 366 at 15, is unpersuasive. As Laffitte acknowledges, his and the other Murdaugh-related cases received extensive *statewide* and *national* media attention. *Id*. at 2, 7. For example, his motion cites to "at least thirteen books," "[v]iral podcasts," and blogs, all of which presumably have national audiences. *See id*. at 9–10 (emphasis omitted). In fact, Laffitte himself participated in a two-part interview released on YouTube the Friday before his first trial began and then during the trial. They've garnered nearly 400,000 total views.[2] Interest in and coverage of Laffitte and Murdaugh's cases spans the nation. Exposure to that content is not limited to the Beaufort and Charleston Divisions, and using a district-wide jury pool will not increase the odds of summoning potential jurors who have not encountered coverage of the Murdaugh-related matters.[3]

---

[2] *See* https://www.youtube.com/watch?v=wZzT0KXGL2A; https://www.youtube.com/watch?v=QxUFs_M4S8w.

[3] Laffitte's alternative argument—that his case calls for a district-wide jury pool because the allegations against him "are of at least state-wide interest and the potential impact of the verdict in this case extends well beyond the boundaries of Area C," *Mot.*, ECF No. 366 at 6—underscores this point. Jurors outside of the Beaufort and Charleston Divisions are just as likely to have encountered Murdaugh-related media coverage, and they are just as likely to be from communities that might have an interest in the outcome of the case.

But more importantly, jurors "are presumed to be impartial, absent indications to the contrary." *Wells v. Murray*, 831 F.2d 468, 472 (4th Cir. 1987). And "the existence of a preconception is insufficient to rebut this presumption if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court." *Poynter by Poynter v. Ratcliff*, 874 F.2d 219, 221 (4th Cir. 1989) (quotation marks omitted). Even if the potential jurors called from the Beaufort and Charleston Divisions have seen reports on Laffitte's case, as the cases he cites indicate, the appropriate way to avoid juror bias based on pretrial publicity is "through adequate *voir dire* examination of the jurors." *Wells*, 831 F.2d at 472; *Mu'Min v. Virginia*, 500 U.S. 415, 427 (1991) ("[O]ur own cases have stressed the wide discretion granted to the trial court in conducting *voir dire* in the area of pretrial publicity and in other areas of inquiry that might tend to show juror bias. Particularly with respect to pretrial publicity, we think the primary reliance on the judgment of the trial court makes good sense.").

This Court's recent jury selection in *Nautilus Insurance Company v. Cory Fleming et. al*, No. 2:22-cv-1307, shows that *voir dire* can easily ensure a fair and impartial jury is drawn from the Beaufort and Charleston Divisions in a Murdaugh-related matter. The *Nautilus* case is a civil matter in which Alex Murdaugh's insurer sued Murdaugh coconspirator Cory Fleming and Fleming's law firm for various claims related to Murdaugh and Fleming's theft of client funds.[4] Like Laffitte, Fleming conspired with Murdaugh to steal money from clients. Fleming pleaded guilty in federal court to conspiracy to commit wire fraud in May 2023. Like Laffitte's proceedings, Fleming's attracted significant media attention.

---

[4] Although *Nautilus* was a civil case, the question this Court asks of potential jurors in civil trials is the same in criminal trials: can the potential juror be fair and impartial.

On January 6, 2025, 65 potential jurors from the Beaufort and Charleston Divisions reported for jury selection for the *Nautilus* trial.[5] During *voir dire*, the Court read a brief factual summary outlining the allegations against Fleming and Murdaugh and then asked the jury panel whether anyone had heard or read about the case.[6] Of the pool of 65, only 19 potential jurors reported having some knowledge of the case based on media coverage, including television, newspaper, or podcasts. The Court asked those 19 potential jurors whether their prior knowledge of the case impacted their ability to be fair and impartial. The Court excused only eight potential jurors—12.3% of the jury pool—based on their responses.

Given that less than a third of the jury panel reported having *any* knowledge of a Murdaugh coconspirator's case from media coverage, and that more than half of those individuals represented that they could remain fair and impartial, Laffitte has "provided no suitable evidence that a *fair and impartial* jury cannot be drawn" from the Beaufort and Charleston Divisions. *See McGregor*, 2011 WL 1344189, at *3 (citing Fed. R. Crim. P. 21 (a "court must transfer the proceeding . . . to another district if the court is satisfied that so great a prejudice against the defendant exists in the transferring district that the defendant cannot obtain a fair and impartial trial there"); *Skilling v. United States*, 561 U.S. 358, 377 (2010) ("The Sixth Amendment secures to criminal defendants the right to trial by an impartial jury.")). The *Nautilus* jury selection directly undermines Laffitte's argument that "pervasive and prejudicial media coverage" in the Lowcountry "will make it difficult for Mr. Laffitte to receive a fair and impartial trial in the Beaufort Division." *Mot.*, ECF No. 366 at 8. Through *voir dire*, the Court can ensure—as it did in *Nautilus* and in Laffitte's first trial—that his case is tried in front of a fair and impartial jury.

---

[5] The Court shared the relevant information regarding the *Nautilus* jury selection with the parties via email on February 12, 2025.

[6] The parties received a rough transcript of jury selection from the court reporter.

**II.    The interests of the public and the judicial system weigh against a district-wide jury panel.**

As Judge Learned Hand explained in 1948, "the district and circuit courts have had power since the first Judiciary Act of 1789 to divide a district territorially in the interest of an impartial trial, of economy, and of lessening the burden of attendance." *United States v. Gottfried*, 165 F.2d 360, 364 (2d Cir. 1948). The Fourth Circuit echoed the importance of those interests in 1972, citing district courts' power "to select jurors from such parts of the district as the court directs so as to be most favorable to an impartial trial, and not to incur unnecessary expense or unduly burden the citizens of any part of the district with jury service." *Florence*, 456 F.2d at 49 (quotation marks omitted). Laffitte's claimed interests in a district-wide panel do not outweigh the interests of the Court and the public in selecting a jury drawn according to the District's Jury Selection Plan.

Jury selection plans seek to ensure a fair and impartial trial while also minimizing unnecessary expenses and the burden—particularly on jurors—of attending court in distant locations. *See id.* at 49. In accordance with those long-recognized interests, the District's Jury Selection Plan serves "to minimize juror travel time and cost to the court . . ." *District's Jury Selection Plan* at 6. But a district-wide jury panel in this case would require jurors to travel from distant parts of the state and remain in Charleston—away from their homes and families—for weeks, at significant personal expense to the jurors and significant financial expense to the Court. Laffitte's claim that "it is *unlikely* that potential jurors from [the Beaufort and Charleston Divisions] have remained uninfluenced by pretrial publicity," *Mot.*, ECF No. 366 at 15 (emphasis added), does not outweigh the clear and undeniable burden and expense his request would impose

6

on the public and the Court.[7] Laffitte cannot demonstrate good cause to overcome the long-recognized interests undergirding the District's Jury Selection Plan.

### III. Laffitte's alternative request that the Court transfer venue should be denied for the same reasons.

"It is well settled that a change in venue for the selection of a jury in a criminal case is warranted only where the prejudice against the defendant is so great that the defendant cannot obtain a fair and impartial trial." *Moore*, No. 2:13-cr-330-RMG, ECF No. 284 at 1 (citing Fed. R. Crim. P. 21(a)). "The determination of whether a change of venue is required as a result of pretrial publicity involves a two-step process." *United States v. Higgs*, 353 F.3d 281, 307 (4th Cir. 2003). "First, the district court must determine whether the publicity is so inherently prejudicial that trial proceedings must be presumed to be tainted, and, if so, grant a change of venue prior to jury selection." *Id*. (quotation marks omitted). However, "[s]uch a finding should be made 'only in extreme circumstances' and the far more preferable course is for the trial court to conduct *voir dire* and determine if actual prejudice exists." *Moore*, No. 2:13-cr-330-RMG, ECF No. 284 at 1 (quoting *Higgs*, 353 F.3d at 307–08; *United States v. Bakker*, 925 F.2d 728, 733 (4th Cir. 1991)) (alteration omitted). Second, "[i]f *voir dire* reveals that an impartial jury cannot be impanelled, the trial court should then grant the motion." *Higgs*, 353 F.3d at 308.

As discussed above, these are not the "extreme circumstances" in which a court could reasonably presume that pretrial publicity "is so inherently prejudicial that trial proceedings must

---

[7] Laffitte's identification of two cases in the past 21 years that have used district-wide jury pools does not, as he claims, demonstrate "South Carolina district courts' propensity to grant requests for a centralized jury panel when a case is of statewide interest." *See Mot.*, ECF No. 366 at 19. Indeed, this Court has presided over cases of statewide and national interest and found *voir dire* sufficient to ensure the defendant was tried in front of a fair and impartial jury. *E.g.*, *United States v. Roof*, No. 2:15-cr-472-RMG, ECF No. 255 at 1–2 (D.S.C. July 18, 2016) (attached as Exhibit A); *United States v. Moore*, No. 2:13-cr-330-RMG, ECF No. 284 (D.S.C. Nov. 21, 2013) (attached as Exhibit B).

7

be presumed to be tainted." *See id*. at 307. Laffitte's claim that it is "unlikely that potential jurors . . . have remained uninfluenced by pretrial publicity," *Mot.*, ECF No. 366 at 15, is insufficient to make that showing. And the *Nautilus* jury selection demonstrated that a fair and impartial jury panel can easily be drawn from the Beaufort and Charleston Divisions despite the media interest in Murdaugh-related cases. As the Fourth Circuit explained in *Higgs*, and as this Court agreed in *Moore*, the proper course is to proceed with jury selection as directed by the District's Jury Selection Plan and ensure through *voir dire* that a fair and impartial jury is drawn.

## CONCLUSION

Laffitte's motion for a district-wide jury panel or, in the alternative, an intra-district transfer, should be denied.

Respectfully submitted,

ADAIR F. BOROUGHS
UNITED STATES ATTORNEY

By: s/ *Emily Evans Limehouse*
Emily Evans Limehouse (Federal ID #12300)
Kathleen Michelle Stoughton (Federal ID #12161)
Winston D. Holliday, Jr. (Federal ID #7597)
Assistant United States Attorneys
151 Meeting Street, Suite 200
Charleston, South Carolina, 29402
(843) 266-1663
Emily.Limehouse@usdoj.gov

February 14, 2025