IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>RUSSELL LUCIUS LAFFITTE,<br><br>Defendant. | Case No.: 9:22-cr-00658-RMG |

**DEFENDANT RUSSELL LUCIUS LAFFITTE'S REPLY TO GOVERNMENT'S RESPONSE TO MOTION FOR A DISTRICT-WIDE JURY PANEL**

Defendant Russell Lucius Laffitte ("Mr. Laffitte"), by and through undersigned counsel, respectfully replies to the Government's Response in Opposition to his Motion for a District-Wide Jury Panel (ECF No. 368). As stated in the Motion (ECF No. 366), a district-wide jury panel is necessary to protect Mr. Laffitte's constitutional rights to a fair and impartial jury or, in the alternative, an intra-district transfer of venue to a new division would also serve the same purpose.

**INTRODUCTION**

The Government, in its Response, acknowledges the extensive publicity received by Alex Murdaugh and Mr. Laffitte, but nevertheless argues that it will not jeopardize the ability to draw a fair and impartial jury from the Beaufort and Charleston Divisions ("Area C"). The Government essentially ignores the media saturation analysis found in Exhibit A of Mr. Laffitte's opening motion (ECF No. 366-1), an analysis which clearly demonstrates that jurors in Area C have been exposed to substantially more media coverage with respect to all things Murdaugh than jurors in Areas A, B, and D. Instead, the Government devotes much of its response to the fact that this Court was recently able to empanel a jury in a *civil* case naming Murdaugh as a defendant, but where the Court previously entered default judgment against Murdaugh and Murdaugh was not a part of the

trial.[1] *See* Response at 2-5. Mr. Laffitte's case is, however, a *criminal* case – and the Sixth Amendment of the United States Constitution applies here. Indeed, our Constitution commands the protection of a defendant's right to an "impartial jury" in "all criminal prosecution," – a right not applicable to a civil insurance case. U.S. Const. amend. VI. Moreover, the Government also argues that the potential burdens imposed by a district-wide jury panel weighs against granting the Motion (*see* Response at 5-6). This again minimizes the protections granted by the Sixth Amendment, which are among the most fundamental rights envisioned by the framers of the Constitution. *See Cox v. Turlington*, 648 F. Supp. 1553, 1555 (E.D.N.C. 1986) ("There are few principles more vitally important to our system of criminal justice than the right to trial by an impartial jury."). Finally, the Government essentially ignores the alternative offered in Mr. Laffitte's Motion – a transfer within this District to another division, which would provide for an impartial jury panel while also minimizing the burden on the Court and potential jurors. The Government's response misses the mark and fails to persuasively rebut Mr. Laffitte's arguments. Therefore, Mr. Laffitte's Motion should be granted.

## ARGUMENTS

**I.     The Sixth Amendment Requires Additional Protections to Ensure an Impartial Jury.**

Unlike the *Nautilus* insurance case relied on by the Government, this is a criminal proceeding with the potential for a substantial term of imprisonment (along with substantial restitution and other financial penalties) and Mr. Laffitte's liberty is again in jeopardy. For all criminal proceedings, the Sixth Amendment "guarantees to the criminally accused," like

---

[1] Mr. Murdaugh's liability was not at issue in the *Nautilus* trial as default judgment had been entered against Murdaugh prior to trial. Mr. Murdaugh was not listed on the witness list and there is no indication he would have testified in the *Nautilus* trial. Mr. Murdaugh will likely be called to testify as a defense witness at this retrial, further complicating the ability to pick a jury comprised solely from residents of Area C.

Mr. Laffitte, "a fair trial by a panel of impartial, 'indifferent' jurors." *Irvin v. Dowd*, 366 U.S. 717, 722 (1961). It also "requires that the 'jury's verdict must be based upon the evidence developed at the trial.'" *Robinson v. Polk*, 438 F.3d 350, 359 (4th Cir. 2006) (quoting *Turner v. Louisiana*, 379 U.S. 466, 472 (1965)). At its core, these Sixth Amendment rights are designed to ensure "'that the evidence developed against a defendant shall come from the witness stand in a public courtroom where there is full judicial protection of the defendant's right[s].'" *Id.*

The civil case on which the Government primarily relies for its contention that a fair jury and impartial jury can be empaneled from the Area C box, *Nautilus Insurance Company v. Cory Fleming et. al*, No. 2:22-cv-1307, is not an appropriate comparator as the heightened protections of the Sixth Amendment did not apply in that case and there were no allegations like the ones at issue here where Mr. Laffitte is alleged to be a criminal co-conspirator of Alex Murdaugh. Even so, it is deeply concerning that eight of the nineteen jurors drawn from Area C who reported some knowledge of that particular case indicated they could *not* render a fair and impartial verdict in that civil suit, which comes nearly two years after the Murdaugh double-murder trial. *See* Response at 5. That more than 42 percent of those who reported some knowledge of the case could not be fair shows how pervasive media coverage has been in Area C and that such coverage impacts potential jurors to the level where they cannot deliberate impartially on the evidence presented at a trial that is in any way related to Murdaugh.

The Government does not meaningfully address, engage with or attempt to refute the comprehensive media analysis set out in Mr. Laffitte's original motion; instead, it attempts to sidestep the issue by claiming (without any support) that "[j]urors outside of the Beaufort and Charleston Divisions are just as likely to have encountered Murdaugh-related media coverage." Response at 3 n.3. But this ignores the unchallenged saturation of Murdaugh-related stories in

3

Area C set out in Mr. Laffitte's Motion. As noted in Mr. Laffitte's opening Motion, the media saturation detailed in Exhibit A (ECF No. 366-1) shows that news coverage in Area C was *nearly four times more prevalent* than in any other area. *See* ECF No, 366 at 12. The sheer amount of media coverage that inundates residents of Area C alone requires a district-wide jury panel to ensure a fair and impartial jury. However, in addition to the sheer volume of the coverage, the incendiary and prejudicial tone of much of that media coverage[2] is specifically focused in Area C and thus dramatically heightens the likelihood that Mr. Laffitte's constitutional rights will be prejudiced.[3] The Government's failure to address this issue is telling—the Government does not

---

[2] Demonstrative of the continuing media saturation, podcasts and articles have continued to be published even on Mr. Laffitte's original Motion, And, it is very likely that there will be additional media posts and comment once this Reply is entered with the Court. One of those podcasts, "Cup Of Justice" recently devoted substantial time, energy and effort to bash Mr. Laffitte and our opening Motion following the filing of that Motion. And, while the Government is correct that multiple books have been written about Mr. Murdaugh, two of the principals in the "Cup of Justice" podcast have not only written their own books, but they have held book signings in Area C, which they advertise on social media. Ms. Matney held her first book signing at the Barnes and Noble store in Hilton Head in 2023. Mr. Bland announced that his very first signing was held in Beaufort on December 7, 2024, an event also attended and publicized by Ms. Matney. See Bland, Eric, X, https://x.com/TheEricBland/status/1864092065971228954, (Dec. 3, 2024). In addition, initially Ms. Matney and Mr. Bland scheduled a joint book signing for the aforementioned Barnes and Noble store on Hilton Head Island on February 22, 2025, an event which, upon information and belief, has been delayed but is now planned for April, 2025—in the month before this trial. While it is true that the Murdaugh related cases have received extensive statewide and national media attention, the media saturation analysis discussed in Mr. Laffitte's opening Motion and herein makes clear that the residents of Area C have been exposed to significantly greater negative media coverage than the other residents of this state. And is its significantly more likely that those either directly or indirectly impacted by the acts or omissions giving rise to the Murdaugh related cases are individuals and those close to them who live and work in Area C.

[3] In its Response, the Government attempts to use against Mr. Laffitte the fact that he made media statements that the Government knows were made at the direction and/or authorization of prior counsel. Such statements would not have been sanctioned or approved by current counsel, and the Court may well be called upon to rule on the extent to which Mr. Laffitte's statements made at the approval or direction of prior counsel will be admitted as evidence during this trial. Of course, Mr. Laffitte acknowledges that his own ill-advised media interviews (which will most assuredly not be repeated) have been viewed online at some point since they were made—however, we must note that the Government does not attempt to specify the identities of any of those viewers or the

4

respond to this argument because it has no response and so any challenge to that argument is forfeited.

Moreover, the Government's reliance on two other high-profile cases in which this Court did not recommend the use of district-wide jury panels is misplaced. *See* Response at 7 n.7 (citing *United States v. Roof*, No. 2:15-cr-472-RMG, ECF No. 255 (D.S.C. July 18, 2016); *United States v. Moore*, No. 2:13-cr-330-RMG, ECF No. 284 (D.S.C. Nov. 21, 2013)). Indeed, no defendant in either of these cases made a Sixth Amendment argument (backed up with unrefuted clear and convincing evidence of media saturation) regarding the impact of pretrial publicity on the potential jury pool. In *Roof*, the Government requested a statewide jury solely because it was "concerned that Defendant may 'attempt to challenge venue' if the jury is drawn from Area C"; given the fact that the defendant did not make such a challenge and admitted that "an impartial jury can be selected from Area C," this Court appropriately declined to recommend the empanelment of a centralized jury. ECF No. 368-1 at 1. In *Moore*, neither side sought a centralized jury; there, the Government, not the Defendant, filed a motion for change of venue and the Court denied that motion based on the filings. *See* ECF No. 368-2 at 1. Neither of these cases raise the Sixth Amendment argument based on media saturation that is present (and unrefuted) here. Moreover, the Government's response failed to address another recent case in which the Government consented to a defendant's request for a district-wide jury panel on facts far less persuasive than the facts at issue here. *See, e.g., United States v. Brandon Michael Council*, No. 4:17-CR-00866-RBH, ECF No. 145 at 2 (D.S.C. July 17, 2018) ("The government agrees with the defendant's request to draw a district wide jury").

---

dates on which those viewings occurred—or tied any recent viewings to Area C. Indeed, it is of course entirely possible that the number of views referenced in the Government's reply are skewed by out-of-state or Area C viewers.

5

A district-wide jury panel would allow not only for a potential jury panel with less overall media exposure, but also less inflammatory coverage of the matters, such coverage that has already proven to affect a substantial amount of those who had heard or read about the case to the point they cannot be fair or impartial in a civil trial. And for a criminal case, the stakes are higher, the media attention is more in-depth, and the level of personal attacks and vitriol in the media is only heightened. It is for these cases specifically, that the Sixth Amendment enshrines additional protections. In order to best protect those rights for Mr. Laffitte, a district-wide jury is necessary.

## II. These Protections Guaranteed by the Sixth Amendment Outweigh Any Potential Burdens on the Judicial System.

While there are certainly burdens associated with a district-wide jury, those burdens do not outweigh Constitutional protections that underpin the criminal justice system. Indeed, "[t]he right to a trial by an impartial jury is too important." *Smith v. Phillips*, 455 U.S. 209, 231–32 (1982) (J. Marshall, dissenting). The burdens and logistics associated with a district-wide jury are "certainly no more important than the accused's Sixth and Fourteenth Amendment rights to be tried by an impartial jury." *Brown v. Rice*, 693 F. Supp. 381, 392 (W.D.N.C. 1988*), aff'd in part, rev'd in part sub nom. Brown v. Dixon*, 891 F.2d 490 (4th Cir. 1989). When there is a conflict between a constitutional right and some other consideration, such as the burden raised by the government here, the accused's constitutional rights "prevails." *Gray v. Mississippi*, 481 U.S. 648, 663 (1987). Protecting the Sixth Amendment rights of any defendant outweighs the burdens incurred.

## III. In the Alternative, an Intra-District Transfer Would Also Protect Mr. Laffitte's Right to an Impartial Trial, While Reducing Burden.

If the Court is not inclined to grant Mr. Laffitte's request for a district-wide jury panel, Mr. Laffitte would respectfully request that, in the alternative, the Court transfer his criminal case to a different division – an alternative that would also alleviate the burdens feared by the

6

Government. *See United States v. Thomas,* No. CR 2018-0014, 2019 WL 3307043, at *4 (D.V.I. July 23, 2019) (granting a motion for intra-district transfer of venue because, in part it "would not present an undue burden for Defense counsel, nor would the location create a problem of accessibility."); *see also United States v. Tettleton*, 2009 WL 1307888, at *2 (W.D. La. May 8, 2009) (finding, *inter alia*, that the inconvenience of the selected division was slight because the distance between the two cities could be traveled in less than two hours).

Pretrial publicity is certainly a valid reason for an intra-district venue transfer and is shown to be appropriate by the Exhibit to the Motion showing increased media coverage in the Charleston Division specifically. *See* ECF No. 366-1 at 2. *See e.g., United States v. Lipscomb*, 299 F.3d 303, 340, 342 (5th Cir. 2002) (holding that "the district court may consider other factors" when considering an intradistrict transfer, including "docket management, courthouse space and security, and ... pretrial publicity"); *United States v. Cloud*, No. 1:19-CR-02032-SMJ-1, 2021 WL 9406685, at *2 (E.D. Wash. Dec. 14, 2021) (transferring case to neighboring division because "the pretrial publicity this case has generated is so inflammatory that the interests of justice mandate transferring this case" and finding that "transferring this matter…will best facilitate the Court's ability to seat an impartial jury untainted by pretrial publicity.); *United States v. Mathis*, No. 3:14-cr-00016, 2015 WL 5012159, at *3 (W.D. Va. Aug. 21, 2015), *aff'd*, 932 F.3d 242 (4th Cir. 2019) ("the court concludes that an intradistrict transfer … is warranted in the instant case," in part because of "extensive publicity," so "a much larger jury pool would have to be assembled … in order to seat a fair and impartial jury."); *United States v. Patton*, 2006 WL 2038628, at *1 (N.D. Miss. July 19, 2006) (finding intradistrict transfer appropriate where the "convenience of the defendants and witnesses" was outweighed by "critical security considerations and the possible prejudicial effect of pretrial publicity on potential jurors").

7

## CONCLUSION

The Government's Response: (1) seeks to diminish the importance of Mr. Laffitte's constitutional rights to a fair and impartial jury; (2) both fails to engage with or refute the evidence of substantial media prejudicial saturation in Area C as opposed to the other areas of this state. A district-wide jury panel, not one limited to those who reside in the Charleston and Beaufort Divisions, is necessary to protect those important rights. Good cause has been shown here, and Mr. Laffitte's motion should be granted.

In the alternative, a transfer of the case to a division that has not been saturated with media coverage would serve the same goal and should be ordered.

Respectfully submitted,

*s/Mark C. Moore*
Mark C. Moore (Fed. ID No. 4956)
Cheryl D. Shoun (Fed. ID No. 4761)
Michael A. Parente (Fed. ID No. 13358)
Jada T. Wilson (Fed. ID No. 14328)
MAYNARD NEXSEN PC
1230 Main Street, Suite 700
Columbia, SC 29201
Phone: 803.771.8900
Fax: 803.727.1458
MMoore@maynardnexsen.com
CShoun@maynardnexsen.com
MParente@maynardnexsen.com
JWilson@maynardnexsen.com

*Counsel for Defendant Russell Lucius Laffitte*

February 18, 2025
Columbia, South Carolina